Source: Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > United States Code Service - Titles 1 through 50 - Selected Documents ⓘ
TOC: United States Code Service - Titles 1 through 50 > / . . . / > ORGANIZATION AND GENERAL PROVISIONS > § 24. Corporate powers of associations
Terms: 24 (Edit Search)

✦Select for FOCUS™ or Delivery

*12 USCS § 24*

UNITED STATES CODE SERVICE
Copyright    2004 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 108-428, APPROVED 11/30/04 ***
*** WITH GAPS OF 108-417, 108-422 THROUGH 108-424 and 108-426 ***

TITLE 12. BANKS AND BANKING
CHAPTER 2. NATIONAL BANKS
ORGANIZATION AND GENERAL PROVISIONS

◆ **GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

12 USCS § **24** (2004)

§ **24.**  Corporate powers of associations

Upon duly making and filing articles of association and an organization certificate the [a national banking] association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power--

First. To adopt and use a corporate seal.

Second. To have succession from the date of the approval of this Act [Feb. 25, 1927], or from the date of its organization if organized after such date of approval [Feb. 25, 1927] until such time as it be dissolved by the act of its shareholders owning two-thirds of its stock, or until its franchise becomes forfeited by reason of violation of law, or until terminated by either a general or a special Act of Congress or until its affairs be placed in the hands of a receiver and finally wound up by him.

Third. To make contracts.

Fourth. To sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons.

Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.

Sixth. To prescribe by its board of directors, by-laws not inconsistent with law, regulating the manner in which its stock shall be transferred, its directors elected or appointed, its officers appointed, its property transferred, its general business conducted, and the privileges granted to it by law exercised and enjoyed.

Seventh. To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by

5

receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title. The business of dealing in securities and stock by the association shall be limited to purchasing and selling such securities and stock without recourse, solely upon the order, and for the account of, customers, and in no case for its own account, and the association shall not underwrite any issue of securities or stock: Provided, That the association may purchase for its own account investment securities under such limitations and restrictions as the Comptroller of the Currency may by regulation prescribe. In no event shall the total amount of the investment securities of any one obligor or maker, held by the association for its own account, exceed at any time 10 per centum of its capital stock actually paid in and unimpaired and 10 per centum of its unimpaired surplus fund, except that this limitation shall not require any association to dispose of any securities lawfully held by it on the date of the enactment of the Banking Act of 1935 [enacted Aug. 23, 1935]. As used in this section the term "investment securities" shall mean marketable obligations, evidencing indebtedness of any person, copartnership, association, or corporation in the form of bonds, notes and/or debentures commonly known as investment securities under such further definition of the term "investment securities" as may by regulation be prescribed by the Comptroller of the Currency. Except as hereinafter provided or otherwise permitted by law, nothing herein contained shall authorize the purchase by the association for its own account of any shares of stock of any corporation. The limitations and restrictions herein contained as to dealing in, underwriting and purchasing for its own account, investment securities shall not apply to obligations of the United States, or general obligations of any State or of any political subdivision thereof, or obligations of the Washington Metropolitan Area Transit Authority which are guaranteed by the Secretary of Transportation under section 9 of the National Capital Transportation Act of 1969 [D. C. Code, § 1-2458], or obligations issued under authority of the Federal Farm Loan Act, as amended, or issued by the thirteen banks for cooperatives or any of them or the Federal Home Loan Banks, or obligations which are insured by the Secretary of Housing and Urban Development under title XI of the National Housing Act [12 USCS §§ 1749aaa et seq.] or obligations which are insured by the Secretary of Housing and Urban Development (hereafter in this sentence referred to as the "Secretary") pursuant to section 207 of the National Housing Act [12 USCS § 1713], if the debentures to be issued in payment of such insured obligations are guaranteed as to principal and interest by the United States, or obligations, participations, or other instruments of or issued by the Federal National Mortgage Association or the Government National Mortgage Association, or mortgages, obligations, or other securities which are or ever have been sold by the Federal Home Loan Mortgage Corporation pursuant to section 305 or section 306 of the Federal Home Loan Mortgage Corporation Act [12 USCS § 1454 or 1455], or obligations of the Federal Financing Bank or obligations or other instruments, or securities of the Student Loan Marketing Association, or obligations of the Environmental Financing Authority, or such obligations of any local public agency (as defined in section 110(h) of the Housing Act of 1949 [42 USCS § 1460(h)]) as are secured by an agreement between the local public agency and the Secretary in which the local public agency agrees to borrow from said Secretary, and said Secretary agrees to lend to said local public agency, monies in an aggregate amount which (together with any other monies irrevocably committed to the payment of interest on such obligations) will suffice to pay, when due, the interest on and all installments (including the final installment) of the principal of such obligations, which monies under the terms of said agreement are required to be used for such payments, or such obligations of a public housing agency (as defined in the United States Housing Act of 1937, as amended [42 USCS §§ 1437 et seq.]) as are secured (1) by an agreement between the public housing agency and the Secretary in which the public housing agency agrees to borrow from the Secretary, and the Secretary agrees to lend to the public housing agency, prior to the maturity of such obligations, monies in an amount which (together with any other monies irrevocably committed to the payment of interest on such obligations) will suffice to pay the principal of such obligations with interest to maturity thereon, which monies under the terms of said agreement are required to be used for the purpose of paying the principal of and the interest on such obligations at their maturity, (2) by a pledge of annual contributions under an annual contributions contract between such public housing agency and the Secretary if such contract shall contain the covenant by the Secretary which is authorized by subsection (b) of section 22 [subsection (g) of section 6] of the United States Housing Act of 1937 [42 USCS § 1437d(g)], as amended, and if the maximum sum and the maximum period specified in such contract pursuant to said subsection 22(b) [subsection 6(g)] [42 USCS § 1437d(g)] shall not be less than the annual amount and the period for payment which are requisite to provide for the payment when due of all installments of principal and interest on such obligations, or (3) by a

pledge of both annual contributions under an annual contributions contract containing the covenant by the Secretary which is authorized by section 6(g) of the United States Housing Act of 1937 [42 USCS § 1437d(g)], and a loan under an agreement between the local public housing agency and the Secretary in which the public housing agency agrees to borrow from the Secretary, and the Secretary agrees to lend to the public housing agency, prior to the maturity of the obligations involved, moneys in an amount which (together with any other moneys irrevocably committed under the annual contributions contract to the payment of principal and interest on such obligations) will suffice to provide for the payment when due of all installments of principal and interest on such obligations, which moneys under the terms of the agreement are required to be used for the purpose of paying the principal and interest on such obligations at their maturity: Provided, That in carrying on the business commonly known as the safe-deposit business the association shall not invest in the capital stock of a corporation organized under the law of any State to conduct a safe-deposit business in an amount in excess of 15 per centum of the capital stock of the association actually paid in and unimpaired and 15 per centum of its unimpaired surplus. The limitations and restrictions herein contained as to dealing in and underwriting investment securities shall not apply to obligations issued by the International Bank for Reconstruction and Development, the European Bank for Reconstruction and Development, the Inter-American Development Bank, Bank for Economic Cooperation and Development in the Middle East and North Africa, the North American Development Bank, the Asian Development Bank, the African Development Bank, the Inter-American Investment Corporation, or the International Finance Corporation, or obligations issued by any State or political subdivision or any agency of a State or political subdivision for housing, university, or dormitory purposes, which are at the time eligible for purchase by a national bank for its own account, nor to bonds, notes or other obligations issued by the Tennessee Valley Authority or by the United States Postal Service: Provided, That no associations shall hold obligations issued by any of said organizations as a result of underwriting, dealing, or purchasing for its own account (and for this purpose obligations as to which it is under commitment shall be deemed to be held by it) in a total amount exceeding at any one time 10 per centum of its capital stock actually paid in and unimpaired and 10 per centum of its unimpaired surplus fund. Notwithstanding any other provision in this paragraph, the association may purchase for its own account shares of stock issued by a corporation authorized to be created pursuant to title IX of the Housing and Urban Development Act of 1968 [42 USCS §§ 3931 et seq.], and may make investments in a partnership, limited partnership, or joint venture formed pursuant to section 907(a) or 907(c) of that Act [42 USCS § 3937(a) or (c)]. Notwithstanding any other provision of this paragraph, the association may purchase for its own account shares of stock issued by any State housing corporation incorporated in the State in which the association is located and may make investments in loans and commitments for loans to any such corporation: Provided, That in no event shall the total amount of such stock held for its own account and such investments in loans and commitments made by the association exceed at any time 5 per centum of its capital stock actually paid in and unimpaired plus 5 per centum of its unimpaired surplus fund. Notwithstanding any other provision in this paragraph, the association may purchase for its own account shares of stock issued by a corporation organized solely for the purpose of making loans to farmers and ranchers for agricultural purposes, including the breeding, raising, fattening, or marketing of livestock. However, unless the association owns at least 80 per centum of the stock of such agricultural credit corporation the amount invested by the association at any one time in the stock of such corporation shall not exceed 20 per centum of the unimpaired capital and surplus of the association: Provided further, That notwithstanding any other provision of this paragraph, the association may purchase for its own account shares of stock of a bank insured by the Federal Deposit Insurance Corporation or a holding company which owns or controls such an insured bank if the stock of such bank or company is owned exclusively (except to the extent directors' qualifying shares are required by law) by depository institutions or depository institution holding companies (as defined in section 3 of the Federal Deposit Insurance Act [12 USCS § 1813]) and such bank or company and all subsidiaries thereof are engaged exclusively in providing services to or for other depository institutions, their holding companies, and the officers, directors, and employees of such institutions and companies, and in providing correspondent banking services at the request of other depository institutions or their holding companies (also referred to as a "banker's bank"), but in no event shall the total amount of such stock held by the association in any bank or holding company exceed at any time 10 per centum of the associations capital stock and paid in and unimpaired surplus and in no event shall the purchase of such stock result in an association's acquiring more than 5 per centum of any class of voting securities of such bank or company. The limitations and restrictions contained in this paragraph as to an association

purchasing for its own account investment securities shall not apply to securities that (A) are offered and sold pursuant to section 4(5) of the Securities Act of 1933 (15 U.S.C. 77d(5)); (B) are small business related securities (as defined in section 3(a)(53) of the Securities Exchange Act of 1934 [15 USCS § 78c(a)(53)]); or (C) are mortgage related securities (as that term is defined in section 3 (a)(41) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(41)). The exception provided for the securities described in subparagraphs (A), (B), and (C) shall be subject to such regulations as the Comptroller of the Currency may prescribe, including regulations prescribing minimum size of the issue (at the time of initial distribution) or minimum aggregate sales prices, or both. A national banking association may deal in, underwrite, and purchase for such association's own account qualified Canadian government obligations to the same extent that such association may deal in, underwrite, and purchase for such association's own account obligations of the United States or general obligations of any State or of any political subdivision thereof. For purposes of this paragraph--

 (1) the term "qualified Canadian government obligations" means any debt obligation which is backed by Canada, any Province of Canada, or any political subdivision of any such Province to a degree which is comparable to the liability of the United States, any State, or any political subdivision thereof for any obligation which is backed by the full faith and credit of the United States, such State, or such political subdivision, and such term includes any debt obligation of any agent of Canada or any such Province or any political subdivision of such Province if--

 (A) the obligation of the agent is assumed in such agent's capacity as agent for Canada or such Province or such political subdivision; and

 (B) Canada, such Province, or such political subdivision on whose behalf such agent is acting with respect to such obligation is ultimately and unconditionally liable for such obligation; and

 (2) the term "Province of Canada" means a Province of Canada and includes the Yukon Territory and the Northwest Territories and their successors.

In addition to the provisions in this paragraph for dealing in, underwriting, or purchasing securities, the limitations and restrictions contained in this paragraph as to dealing in, underwriting, and purchasing investment securities for the national bank's own account shall not apply to obligations (including limited obligation bonds, revenue bonds, and obligations that satisfy the requirements of section 142(b)(1) of the Internal Revenue Code of 1986 [26 USCS § 142(b)(1)]) issued by or on behalf of any State or political subdivision of a State, including any municipal corporate instrumentality of 1 or more States, or any public agency or authority of any State or political subdivision of a State, if the national bank is well capitalized (as defined in section 38 of the Federal Deposit Insurance Act [12 USCS § 1831o]).

Eighth. To contribute to community funds, or to charitable, philanthropic, or benevolent instrumentalities conductive to public welfare, such sums as its board of directors may deem expedient and in the interests of the association, if it is located in a State the laws of which do not expressly prohibit State banking institutions from contributing to such funds or instrumentalities.

Ninth. To issue and sell securities which are guaranteed pursuant to section 306(g) of the National Housing Act [12 USCS § 1721(g)].

Tenth. To invest in tangible personal property, including, without limitation, vehicles, manufactured homes, machinery, equipment, or furniture, for lease financing transactions on a net lease basis, but such investment may not exceed 10 percent of the assets of the association.

Eleventh. To make investments designed primarily to promote the public welfare, including the welfare of low- and moderate-income communities or families (such as by providing housing, services, or jobs). A national banking association may make such investments directly or by purchasing interests in an entity primarily engaged in making such investments. An association shall not make any such investment if the investment would expose the association to unlimited liability. The Comptroller of the Currency shall limit an association's investments in any 1 project and an association's aggregate investments under this paragraph. An association's aggregate investments under this paragraph shall not exceed an amount equal to the sum of 5 percent of the association's capital stock actually paid in and unimpaired and 5 percent of the association's unimpaired surplus fund, unless the Comptroller determines by order that the higher amount will pose no significant risk to the affected deposit insurance fund, and the association is adequately capitalized. In no case shall

an association's aggregate investments under this paragraph exceed an amount equal to the sum of 10 percent of the association's capital stock actually paid in and unimpaired and 10 percent of the association's unimpaired surplus fund.

**HISTORY:**

(R. S. § 5136; July 1, 1922, ch 257, § 1, 42 Stat. 767; Feb. 25, 1927, ch 191, § 2, 44 Stat. 1226; June 16, 1933, ch 89, § 16, 48 Stat. 184; Aug. 23, 1935, ch 614, Title III, § 308, 49 Stat. 709; Feb. 3, 1938, ch 13, § 13, 52 Stat. 26; June 11, 1940, ch 301, 54 Stat. 261; June 29, 1949, ch 276, § 1, 63 Stat. 298; July 15, 1949, ch 338, Title VI, § 602(a), 63 Stat. 439; April 9, 1952, ch 169, 66 Stat. 49; Aug. 2, 1954, ch 649, Title II, § 203, 68 Stat. 622; Aug. 23, 1954, ch 834, § 2, 68 Stat. 771; July 26, 1956, ch 741, Title II, § 201(c), 70 Stat. 667; Aug. 6, 1959, P.L. 86-137, § 2, 73 Stat. 285; Aug. 7, 1959, P.L. 86-147, § 10, 73 Stat. 301; Sept. 8, 1959, P.L. 86-230, § 1(a), 73 Stat. 457; Sept. 16, 1959, P.L. 86-278, 73 Stat. 563; Sept. 23, 1959, P.L. 86-372, Title IV, § 420, 73 Stat. 679; Sept. 2, 1964, P.L. 88-560, Title VII, § 701(c), 78 Stat. 800; March 16, 1966, P.L. 89-369, § 10, 80 Stat. 72; Nov. 3, 1966, P.L. 89-754, Title V, § 504(a)(1), 80 Stat. 1277; May 25, 1967, P.L. 90-19, § 27(a), 81 Stat. 28; Aug. 1, 1968, P.L. 90-448, Title VIII, §§ 804(c), 807(j), Title IX, § 911, Title XVII, § 1705(h), 82 Stat. 543, 545, 550, 605; Aug. 12, 1970, P.L. 91-375, § 6(d), 84 Stat. 776; June 23, 1972, P.L. 92-318, Title I, Part D, § 133(c)(1), 86 Stat. 269; July 13, 1972, P.L. 92-349, Title I, § 101, 86 Stat. 466; Oct. 18, 1972, P.L. 92-500, § 12(n), 86 Stat. 902; Aug. 16, 1973, P.L. 93-100, § 5(c), 87 Stat.. 344; Dec. 29, 1973, P.L. 93-224, § 14, 87 Stat. 941; Dec. 31, 1973, P.L. 93-234, Title II, § 207, 87 Stat. 984; Aug. 22, 1974, P.L. 93-383, Title II, § 206, Title VIII, § 805(c)(1), 88 Stat. 668, 726; March 31, 1980, P.L. 96-221, Title VII, Part A, § 711, 94 Stat. 189 Aug. 13, 1981, P.L. 97-35, Title XIII, Subtitle B, Part 3, § 1342(a), 95 Stat. 743; Oct. 15, 1982, P.L. 97-320, Title IV, Part A, § 404(b), 96 Stat. 1511; Jan. 12, 1983, P.L. 97-457, § 18, 96 Stat. 2509; Oct. 3, 1984, P.L. 98-440, Title I, § 105(c), 98 Stat. 1691; S. No. 2416, Title II, § 211(a), incorporated in Act Oct. 12, 1984, P.L. 98-473, Title I, § 101(1), 98 Stat. 1885; Aug. 10, 1987, P.L. 100-86, Title I, § 108, 101 Stat. 579; Sept. 28, 1988, P.L. 100-449, Title III, § 308, 102 Stat. 1877; Nov. 5, 1990, P.L. 101-513, Title V, 104 Stat. 2036, 2037; Oct. 23, 1992, P.L. 102-485, § 6(a), 106 Stat. 2774; Dec. 8, 1993, P.L. 103-182, Title V, Subtitle D, Part 2, § 541(h)(1), 107 Stat. 2167.)

(As amended Sept. 23, 1994, P.L. 103-325, Title II, Subtitle A, § 206(c), Title III, §§ 322(a)(1), 347(b), 108 Stat. 2199, 2226, 2241; Sept. 30, 1996, P.L. 104-208, Div A, Title I, § 101(c) [Title VII, § 710(b)], Title II, Subtitle G, § 2704(d)(7), 110 Stat. 3009-181, 3009-489; Nov. 12, 1999, P.L. 106-102, Title I, Subtitle F, § 151, 113 Stat. 1384.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

References in text:
The "Federal Farm Loan Act", referred to in para. Seventh, is Act July 16, 1916, ch 245, which was classified as 12 USCS §§ 641 et seq. and was repealed by Act Dec. 10, 1971, P.L. 92-181, § 5.26 (a), 85 Stat. 624. For similar provisions, see 12 USCS §§ 2001 et seq.
"This title", referred to in para. Seventh, is Title LXII of the Revised Statutes, which was comprised of R. S. §§ 5133-5243, which are classified principally to 12 USCS §§ 21, 22-**24**, 25a-29, 35-37, 39, 51, 52, 53, 55-57, 59-62, 66, 71, 72-76, 81, 83-91, 93, 94, 101a, 102, 104, 107-110, 123, 124, 131-138, 141-144, 151, 152, 161, 164, 168-175, 181-186, 192-196, 481-485, 501, 541, 548, and 582. For full classification of this Title, consult USCS Tables volumes.

Explanatory notes:
The bracketed words "a national banking" were inserted in the preliminary language for clarity.
The bracketed words "subsection (g) of section 6" and "subsection 6(g)" were inserted in the seventh paragraph as the references probably intended by Congress.
R. S. § 5136 was derived from Act June 3, 1864, ch 106, § 8, 13 Stat. 101, which Act was designated the National Bank Act. See 12 USCS § 38.

Amendments:
1922. Act July 1, 1922, in para. Second, substituted "until ninety years from July 1, 1922, or from the date of its organization if organized after July 1, 1922, unless it shall be sooner dissolved" for "for the period of twenty years from its organization, unless it is sooner dissolved according to the provisions of its articles of association, or," and added "or unless it shall be terminated by Act of Congress hereafter enacted".

1927. Act Feb. 25, 1927, in para. Second, substituted "from the date of the approval of this act" for "until ninety-nine years from July 1, 1922, or", substituted "such date of approval until such time as it is dissolved" for "July 1, 1922, unless it shall be sooner dissolved", substituted "until its franchise becomes" for "unless its franchise shall become," and substituted "or until terminated by either a general or a special Act of Congress or until its affairs be placed in the hands of a receiver and finally wound up by him" for "or unless it shall be terminated by Act of Congress hereafter enacted",; and then added two provisos to the first sentence of para. "Seventh" which read: "Provided, That the business of buying and selling investment securities shall hereafter be limited to buying and selling without recourse marketable obligations evidencing indebtedness of any person, copartnership, association, or corporation, in the form of bonds, notes and/or debentures, commonly known as investment securities, under such further definition of the term 'investment securities' as may by regulation be prescribed by the Comptroller of the Currency, and the total amount of such investment securities of any one obligor or maker held by such association shall at no time exceed 25 per centum of the amount of the capital stock of such association actually paid in and unimpaired and 25 per centum of its unimpaired surplus fund, but this limitation as to total amount shall not apply to obligations of the United States, or general obligations of any State or of any political subdivision thereof, or obligations issued under authority of the Federal Farm Loan Act: And provided further, That in carrying on the business commonly known as the safe deposit business no such association shall invest in the capital stock of a corporation organized under the law of any State to conduct a safe deposit business in an amount in excess of 15 per centum of the capital stock of such association actually paid in and unimpaired and 15 per centum of its unimpaired surplus".

1933. Act June 16, 1933 (effective one year after 6/16/33, as provided by § 16 of such Act), in para. Seventh, deleted the provisos which had been added in 1927 to the first sentence; deleted a second sentence which read: "But no association shall transact any business except such as is incidental and necessarily preliminary to its organization, until it has been authorized by the Comptroller of the Currency to commence the business of banking"; and then added sentences (effective one year after 6/16/33, as provided by § 16 of the Act) which read: "The business of dealing in investment securities by the association shall be limited to purchasing and selling such securities without recourse, solely upon the order, and for the account of, customers, and in no case for its own account, and the association shall not underwrite any issue of securities: Provided, That the association may purchase for its own account investment securities under such limitations and restrictions as the Comptroller of the Currency may by regulation prescribe, but in no event (1) shall the total amount of any issue of investment securities of any one obligor or maker purchased after this section as amended takes effect and held by the association for its own account exceed at any time 10 per centum of the total amount of such issue outstanding, but this limitation shall not apply to any such issue the total amount of which does not exceed $ 100,000 and does not exceed 50 per centum of the capital of the association, nor (2) shall the total amount of the investment securities of any one obligor or maker purchased after this section as amended takes effect and held by the association for its own account exceed at any time 15 per centum of the amount of the capital stock of the association actually paid in and unimpaired and 25 per centum of its unimpaired surplus fund. As used in this section the term 'investment securities' shall mean marketable obligations evidencing indebtedness of any person, copartnership, association, or corporation in the form of bonds, notes and/or debentures commonly known as investment securities under such further definition of the term 'investment securities' as may by regulation be prescribed by the Comptroller of the Currency. Except as hereinafter provided or otherwise permitted by law, nothing herein contained shall authorize the purchase by the association of any shares of stock of any corporation. The limitations and restrictions herein contained as to dealing in, underwriting and purchasing for its own account, investment securities shall not apply to obligations of the United States, or general obligations of any State or of any political subdivision thereof, or obligations issued under authority of the Federal Farm Loan Act, as amended, or issued by the Federal Home Loan Banks or the Home Owners' Loan Corporation: Provided, That in carrying on the business commonly known as the safe-deposit business the association shall not invest in the capital stock of a corporation organized under the law of any State to conduct a safe-deposit business in an amount in excess of 15 per centum of the capital stock of the association actually paid in and unimpaired and 15 per centum of its unimpaired surplus.".

1935. Act Aug. 23, 1935, in para. Seventh, substituted, in the second sentence, "securities and stock" for "investment securities" or "securities" wherever used, except in the proviso; substituted the third sentence of such paragraph for a former clause of the second sentence reading: ", but in

no event (1) shall the total amount of any issue of investment securities of any one obligor or maker purchased after this section as amended takes effect and held by the association for its own account exceed at any time 10 per centum of the total amount of such issue outstanding, but this limitation shall not apply to any such issue the total amount of which does not exceed $ 100,000 and does not exceed 50 per centum of the capital of the association, nor (2) shall the total amount of the investment securities of any one obligor or maker purchased after this section as amended takes effect and held by the association for its own account exceed at any time 15 per centum of the amount of the capital stock of the association actually paid in and unimpaired and 25 per centum of its unimpaired surplus fund"; inserted "for its own account" in the fifth sentence; and inserted, in the sixth sentence, ", or obligations which are insured by the Federal Housing Administrator pursuant to section 207 of the National Housing Act, if the debentures to be issued in payment of such insured obligations are guaranteed as to principal and interest by the United States,".

1938. Act Feb. 3, 1938, in the sixth sentence of para. Seventh, inserted ", or obligations of national mortgage associations.".

1940. Act June 11, 1940 added para. Eighth.

1949. Act June 29, 1949, in para. Seventh, added the seventh sentence.

Act July 15, 1949, in para. Seventh, inserted all that part of the sixth sentence beginning "or such obligations of any local public agency" and continuing to the proviso.

1952. Act April 9, 1952, in the seventh sentence of para. Seventh, inserted "or the Central Bank for Cooperatives", substituted "either of said banks" for "said bank", inserted "at any one time" after "no associations shall", deleted "at any one time" after the word "exceeding", and inserted ", with respect to each insurer".

1954. Act Aug. 2, 1954, in the sixth sentence of para. Seventh, substituted "or obligations of the Federal National Mortgage Association" for "or obligations of national mortgage associations".

Act Aug. 23, 1954, in the seventh sentence of para. Seventh, substituted "Thirteen banks for cooperatives organized under the Farm Credit Act of 1933, or any of them" for "Central Bank for Cooperatives".

1956. Act July 26, 1956 (effective 1/1/57, as provided by § 202(a) of Act) in para. Seventh, inserted "thirteen banks for cooperatives or any of them of the" in the sixth sentence and deleted "or the thirteen banks for cooperatives organized under the Farm Credit Act of 1933 or any of them" which followed "Development" in the seventh sentence and reworded the proviso to read: "Provided, That no association shall hold obligations issued by said bank as a result of underwriting, dealing, or purchasing for its own account (and for this purpose obligations as to which it is under commitment shall be deemed to be held by it) in a total amount exceeding at any one time 10 per centum of its capital stock actually paid in and unimpaired and 10 per centum of its unimpaired surplus fund.".

1959. Act Aug. 6, 1959, in the seventh sentence of para. Seventh, inserted ", nor to bonds, notes and other obligations issued by the Tennessee Valley Authority" and substituted "either of said organizations" for "said bank".

Act Aug. 7, 1959, in the seventh sentence of para. Seventh, inserted "or the Inter-American Development Bank" and purported to substitute "either of said Banks" for "said Bank"; "either of said organizations" had already been substituted for "said bank".

Act Sept. 8, 1959, in the sixth sentence of para. Seventh, deleted "or the Home Owner's Loan Corporation" following "Federal Home Loan Banks".

Act Sept. 16, 1959, in the seventh sentence of para. Seventh, substituted "any" for "either" in the proviso.

Act Sept. 23, 1959, in the sixth sentence of para. Seventh, substituted "monies in an aggregate amount which (together with any other monies irrevocably committed to the payment of interest on such obligations) will suffice to pay, when due, the interest on and all installments (including the final installment) of the principal of such obligations, which monies under the terms of said agreement are required to be used for such payments" for "prior to the maturity of such obligations (which obligations shall have a maturity of not more than eighteen months), monies in an amount which (together with any other monies irrevocably committed to the payment of interest on such obligations) will suffice to pay the principal of such obligations with interest to maturity thereon, which monies under the terms of said agreement are required to be used for the purpose of paying the principal of and the interest on such obligations at their maturity".

1964. Act Sept. 2, 1964, in the sixth sentence of para. Seventh, substituted ", participations, or other instruments of or issued by" for "of".

1966. Act March 16, 1966, in the seventh sentence of para. Seventh, substituted a comma for the "or" following "Development" and inserted "or the Asian Development Bank".

Act Nov. 3, 1966, in the sixth sentence of para. Seventh, inserted "or obligations which are insured by the Secretary of Housing and Urban Development under Title XI of the National Housing Act".

1967. Act May 25, 1967, in the sixth sentence of para. Seventh, substituted "Secretary of Housing and Urban Development (hereafter in this sentence referred to as the Secretary)" for "Federal Housing Administrator" and "Secretary" for "Housing and Home Finance Administrator", "Administrator" each place it appeared, and "Public Housing Administration" each place it appeared.

1968. Act Aug. 1, 1968 (effective as provided in § 808 of such Act, which appears as 12 USCS § 1716b note) in para. Seventh, inserted "or the Government National Mortgage Association" in the sixth sentence and ", or obligations issued by any State or political subdivision or any agency of a State or political subdivision for housing, university, or dormitory purposes," in the seventh sentence, added the eighth sentence, and added para. Ninth.

1970. Act Aug. 12, 1970 (effective as provided by § 15(a) of such Act, which appears as a note preceding 39 USCS § 101), in the seventh sentence of para. Seventh, added "or by the United States Postal Service".

1972. Act June 23, 1972, in the sixth sentence of para. Seventh, added "or obligations or other instruments or securities of the Student Loan Marketing Association,".

Act July 13, 1972, in the sixth sentence of para. Seventh, added ", or obligations of the Washington Metropolitan Area Transit Authority which are guaranteed by the Secretary of Transportation under section 9 of the National Capital Transportation Act of 1969".

Act Oct. 18, 1972, in the sixth sentence of para. Seventh, added "or obligations of the Environmental Financing Authority".

1973. Act Aug. 16, 1973 (effective 8/16/73, as provided in § 8 of such Act, which appears as 12 USCS § 1469 note), in para. Seventh, added the ninth sentence.

Act Dec. 29, 1973 (effective 12/29/73, as provided in § 20 such Act, which appears as 12 USCS § 2281 note), in the sixth sentence of para. Seventh, added "or obligations of the Federal Financing Bank".

Act Dec. 31, 1973, in para. Seventh, added the tenth and eleventh sentences.

1974. Act Aug. 22, 1974, in the sixth sentence of para. Seventh, substituted "6(g) of the United States Housing Act of 1937" for "1421a(b) of title 42" wherever it appeared; deleted "either" before "(1)"; deleted "(which obligations shall have a maturity of not more than eighteen months)" after "prior to the maturity of such obligations" in clause (1); deleted "or" before "(2)"; and added ", or mortgages, obligations, or other securities which are or ever have been sold by the Federal Home Loan Mortgage Corporation pursuant to section 305 or section 306 of the Federal Home Loan Mortgage Corporation Act" and ", or (3) by a pledge of both annual contributions under an annual contributions contract containing the covenant by the Secretary which is authorized by section 6(g) of the United States Housing Act of 1937, and a loan under an agreement between the local public housing agency and the Secretary in which the public housing agency agrees to borrow from the Secretary, and the Secretary agrees to lend to the public housing agency, prior to the maturity of the obligations involved, moneys in an amount which (together with any other moneys irrevocably committed under the annual contributions contract to the payment of principal and interest on such obligations) will suffice to provide for the payment when due of all installments of principal and interest on such obligations, which moneys under the terms of the agreement are required to be used for the purpose of paying the principal and interest on such obligations at their maturity".

1980. Act March 31, 1980, in para. Seventh, inserted ": Provided further, That, notwithstanding any other provision of this paragraph, the association may purchase for its own account shares of stock of a bank insured by the Federal Deposit Insurance Corporation if the stock of such bank is owned exclusively by other banks (except to the extent State law requires directors qualifying shares) and if such bank is engaged exclusively in providing banking services for other banks and their officers, directors, or employees, but in no event shall the total amount of such stock held by the association exceed at any time 10 per centum of its capital stock and paid in an unimpaired surplus, and in no event shall the purchase of such stock result in the association's acquiring more than 5 per centum of any class of voting securities of such bank".

1981. Act Aug. 13, 1981 (effective upon enactment on 8/13/81, as provided by § 1372 of such Act, which appears as 22 USCS § 290i note), in para. Seventh, substituted a comma for "or" following "the Inter-American Development Bank", and inserted "or the African Development Bank".

1982. Act Oct. 15, 1982 substituted "Provided further, That notwithstanding any other provision of this paragraph, the association may purchase for its own account shares of stock of a bank insured by the Federal Deposit Insurance Corporation or a holding company which owns or controls such an

insured bank if the stock of such bank or company is owned exclusively (except to the extent directors' qualifying shares are required by law) by depository institutions and such bank or company and all subsidiaries thereof are engaged exclusively in providing services for other depository institutions and their officers, directors, and employees, but in no event shall the total amount of such stock held by the association in any bank or holding company exceed at any time 10 per centum of its capital stock and paid in an unimpaired surplus and in no event shall the purchase of such stock result in an association's acquiring more than 5 per centum of any class of voting securities of such bank or company." for "Provided further, That, notwithstanding any other provision of this paragraph, the association may purchase for its own account shares of stock of a bank insured by the Federal Deposit Insurance Corporation if the stock of such bank is owned exclusively by other banks (except to the extent State law requires directors qualifying shares) and if such bank is engaged exclusively in providing banking services for other banks and their officers, directors, or employees, but in no event shall the total amount of such stock held by the association exceed at any time 10 per centum of its capital stock and paid in an unimpaired surplus, and in no event shall the purchase of such stock result in the association's acquiring more than 5 per centum of any class of voting securities of such bank.".

1983. Act Jan. 12, 1983, in para. "Seventh" substituted "10 per centum of the association's" for "10 per centum of its".

1984. Act Oct. 3, 1984, in para. Seventh, added the sentence beginning "The limitations and restrictions . . . ".

Act Oct. 12, 1984, in subsec. (a), in para. Seventh, substituted a comma for "or" following "Asian Development Bank", and substituted ", or the Inter-American Investment Corporation," for "or".

1987. Act Aug. 10, 1987 added para. Tenth.

1988. Act Sept. 28, 1988 (effective and terminated as provided by § 501(a) and (c) of such Act, which appear as 19 USCS § 2112 note), at the end of para. Seventh, added the paragraph beginning "A national banking . . .".

1990. Act Nov. 5, 1990, in para. Seventh, in the sentence beginning "The limitations and restrictions herein . . . ", inserted "the European Bank for Reconstruction and Development," and substituted "the African Development Bank, the Inter-American Investment Corporation, or the International Finance Corporation," for "the African Development Bank or the Inter-American Investment Corporation,".

1992. Act Oct. 23, 1992 added para. Eleventh.

1993. Act Dec. 8, 1993, in para. Seventh, inserted "the North American Development Bank,".

1994. Act Sept. 23, 1994, in para. Seventh, in the 5th proviso, inserted "or depository institution holding companies (as defined in section 3 of the Federal Deposit Insurance Act)" and substituted "services to or for other depository institutions, their holding companies, and the officers, directors, and employees of such institutions and companies, and in providing correspondent banking services at the request of other depository institutions or their holding companies (also referred to as a 'banker's bank')" for "services for other depository institutions and their officers, directors, and employees", and substituted "(B) are small business related securities (as defined in section 3(a) (53) of the Securities Exchange Act of 1934; or (C) are mortgage related securities" for "or (B) are mortgage related securities".

Such Act further (effective as provided by § 347(d) of such Act, which appears as a note to this section), in para. Seventh, substituted "(15 U.S.C. 78c(a)(41)). The exception provided for the securities described in subparagraphs (A), (B), and (C) shall be subject to such regulations" for "(15 U.S.C. 78c(a)(41))), subject to such regulations".

1996. Act Sept. 30, 1996 purported to amend para. Seventh by inserting "Bank for Economic Cooperation and Development in the Middle East and North Africa," after "the Inter-American Development Bank"; however, the insertion was made after "the Inter-American Development Bank," in order to effectuate the probable intent of Congress.

Such Act further provided for amendment of para. Eleventh by substituting "Deposit Insurance Fund" for "affected deposit insurance fund" in the 5th sentence. However, this amendment (effective Jan. 1, 1999, if no insured depository institution was a savings association on that date, as provided by § 2704(c) of such Act, which appears as 12 USCS § 1821 note) was not executed.

1999. Act Nov. 12, 1999 (effective 120 days after enactment, as provided by § 161 of such Act, which appears as 12 USCS § 24 note), in para. Seventh, added the concluding matter.

Transfer of functions:
Pursuant to § 1(b) of Reorg. Plan No. 26 of 1950, which appears as 5 USCS § 903 note, the

Comptroller of the Currency was not affected by the general transfer of functions, officers, and agencies of the Department of the Treasury to the Secretary of the Treasury provided for in the Plan. See also 31 USCS § 321(c)(2).

Other provisions:
  Termination of Sept. 28, 1988 amendments. For termination of amendments made by Act Sept. 28, 1988, see 19 USCS § 2112 note.
  Regulations implementing Sept. 23, 1994 amendments. Act Sept. 23, 1994, P.L. 103-325, Title III, § 347(c), 108 Stat. 2241, provides: "Not later than 1 year after the date of enactment of this Act, the Comptroller of the Currency shall promulgate final regulations, in accordance with the thirteenth sentence of Paragraph Seventh of section 5136 of the Revised Statutes [this section] (as amended by subsection (b)), to carry out the amendments made by this section.".
  Effective date of amendments made by § 347 of Act Sept. 12, 1994. Act Sept. 23, 1994, P.L. 103-325, Title III, § 347(d), 108 Stat. 2241, provides: "The amendments made by this section [amending the thirteenth sentence of Paragraph Seventh of this section and 15 USCS § 78c(41)(A) (i)] shall become effective upon the date of promulgation of final regulations under subsection (c) [note to this section].".
  Effective date of amendments made by Title I of Act Nov. 12, 1999. Act Nov. 12, 1999, P.L. 106-102, Title I, Subtitle G, § 161, 113 Stat. 1384, provides: "This title (other than section 104 [15 USCS § 6701]) and the amendments made by this title [for full classification, consult USCS Tables volumes] shall take effect 120 days after the date of the enactment of this Act.".

**NOTES:**

CODE OF FEDERAL REGULATIONS

  Comptroller of the Currency, Department of the Treasury--Investment securities, 12 CFR Part 1.
  Comptroller of the Currency, Department of the Treasury--Sales of credit life insurance, 12 CFR Part 2.
  Comptroller of the Currency, Department of the Treasury--Fiduciary activities of national banks, 12 CFR Part 9.
  Comptroller of the Currency, Department of the Treasury--Recordkeeping and confirmation requirements for securities transactions, 12 CFR Part 12.
  Comptroller of the Currency, Department of the Treasury--Leasing, 12 CFR Part 23.
  Comptroller of the Currency, Department of the Treasury--Community development corporations, community development projects, and other public welfare investments, 12 CFR Part **24.**
  Comptroller of the Currency, Department of the Treasury--Debt cancellation contracts and debt suspension agreements, 12 CFR Part 37.
  Federal Reserve System--Membership of State banking institutions in the Federal Reserve System (Regulation H), 12 CFR Part 208.

CROSS REFERENCES

  Investment of customers' moneys by futures commission merchants in investment securities, 7 USCS § 6d.
  State member banks of Federal Reserve System, dealings in investment securities as subject to limitations and conditions of "Seventh" paragraph of this section, 12 USCS § 335.
  Definition of State and State housing corporation, 12 USCS § 1470.
  National Housing Act, applicability of this section, 12 USCS § 1733.
  Home Owners' Loan Corporation, termination of functions, 15 USCS § 712a.
  This section is referred to in 12 USCS §§ 335, 371c, 378, 1733, 1841, 1843, 3102; 22 USCS §§ 283i, 286k-1, 286k-2.

RESEARCH GUIDE

Federal Procedure:
  15 Moore's Federal Practice (Matthew Bender 3d ed.), Issues of Justiciability § 101.51.

4A Fed Proc L Ed, Banking and Financing §§ 8:591, 800, 847, 865, 866.

Am Jur:
   10 Am Jur 2d, Banks and Financial Institutions §§ 28, 106, 169, 331, 337, 478-483, 486, 488, 489, 493, 495, 497, 500-502, 504, 518-521, 527-530, 559, 705, 706.
   11 Am Jur 2d, Banks and Financial Institutions §§ 999, 1002, 1207.
   82 Am Jur 2d, Wrongful Discharge § 202.

Law Review Articles:
   Shull. Banking, commerce and competition under the Gramm-Leach-Bliley Act. 47 Antitrust Bull 25, Spring 2002.
   Huber, The Competitive Equality Banking Act of 1987: An Analysis and Critical Commentary. 105 Banking L J 384, July-August, 1988.
   Serpico; Landers; Terrill. Making sense of U.S. state data privacy law. 119 Banking LJ 462, May 2002.

INTERPRETIVE NOTES AND DECISIONS


I. IN GENERAL
1. Generally
2. Constitutionality
3. Purpose
4. Construction

II. STATE REGULATION OF NATIONAL BANKS

A. In General
5. Right to regulate
6. --Limitations
7. Purpose of state legislation

B. Regulation of Banking

1. In General
8. Branch banks
9. Banking personnel
10. Notice of claim
11. Insolvent bank or debtor
12. Name of bank
13. Negotiable instruments

2. Unclaimed Deposits
14. Generally
15. Reversion to state, generally
16. Reporting requirements
17. Bank in liquidation
18. Presumption of abandonment

3. Interest Rate and Usury
19. Generally
20. Law governing state rate
21. Law governing consequences of usury
22. Real estate security

C. Other Regulation

1. Administration of Estates

Source: Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > **United States Code Service - Titles 1 through 50** i
TOC: United States Code Service - Titles 1 through 50 > / . . . / > REGULATION OF THE BANKING BUSINESS; POWERS AND DUTIES OF NATIONAL BANKS > **§ 93a. Authority to prescribe rules and regulations**
Terms: **93a** (Edit Search)

✔Select for FOCUS™ or Delivery

*12 USCS § 93a*

UNITED STATES CODE SERVICE
Copyright    2004 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

\*\*\* CURRENT THROUGH P.L. 108-428, APPROVED 11/30/04 \*\*\*
\*\*\* WITH GAPS OF 108-417, 108-422 THROUGH 108-424 and 108-426 \*\*\*

TITLE 12. BANKS AND BANKING
CHAPTER 2. NATIONAL BANKS
REGULATION OF THE BANKING BUSINESS; POWERS AND DUTIES OF NATIONAL BANKS

◆ **GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

12 USCS § **93a** (2004)

§ **93a.** Authority to prescribe rules and regulations

Except to the extent that authority to issue such rules and regulations has been expressly and exclusively granted to another regulatory agency, the Comptroller of the Currency is authorized to prescribe rules and regulations to carry out the responsibilities of the office, except that the authority conferred by this section does not apply to section 5155 of the Revised Statutes [12 USCS § 36] or to securities activities of National Banks under the Act commonly known as the "Glass-Steagall Act".

**HISTORY:**
(R. S. 5239A, as added March 31, 1980, P.L. 96-221, Title VII, Part A, § 708, 94 Stat. 188.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

References in text:
"The Glass-Steagall Act", referred to in this section, is Act June 16, 1933, ch 89, 48 Stat. 162, also known as "The Banking Act of 1933" or "The Glass-Steagall Act, 1933". For full classification of this Act, consult USCS Tables volumes.

**NOTES:**

CODE OF FEDERAL REGULATIONS

Comptroller of the Currency, Department of the Treasury--Investment securities, 12 CFR Part 1.
Comptroller of the Currency, Department of the Treasury--Sales of credit life insurance, 12 CFR Part 2.
Comptroller of the Currency, Department of the Treasury--Minimum capital ratios; issuance of directives, 12 CFR Part 3.
Comptroller of the Currency, Department of the Treasury--Organization and functions, availability and release of information, contracting outreach program, 12 CFR Part 4.
Comptroller of the Currency, Department of the Treasury--Rules, policies, and procedures for corporate activities, 12 CFR Part 5.

6

Comptroller of the Currency, Department of the Treasury--Prompt corrective action, 12 CFR Part 6.

Comptroller of the Currency, Department of the Treasury--Bank activities and operations, 12 CFR Part 7.

Comptroller of the Currency, Department of the Treasury--Assessment of fees, 12 CFR Part 8.

Comptroller of the Currency, Department of the Treasury--Fiduciary activities of national banks, 12 CFR Part 9.

Comptroller of the Currency, Department of the Treasury--Securities Exchange Act disclosure rules, 12 CFR Part 11.

Comptroller of the Currency, Department of the Treasury--Recordkeeping and confirmation requirements for securities transactions, 12 CFR Part 12.

Comptroller of the Currency, Department of the Treasury--Government securities sales practices, 12 CFR Part 13.

Comptroller of the Currency, Department of the Treasury--Securities offering disclosure rules, 12 CFR Part 16.

Comptroller of the Currency, Department of the Treasury--Disclosure of financial and other information by national banks, 12 CFR Part 18.

Comptroller of the Currency, Department of the Treasury--Rules of practice and procedure, 12 CFR Part 19.

Comptroller of the Currency, Department of the Treasury--Minimum security devices and procedures, reports of suspicious activities, and Bank Secrecy Act compliance program, 12 CFR Part 21.

Comptroller of the Currency, Department of the Treasury--Loans in areas having special flood hazards, 12 CFR Part 22.

Comptroller of the Currency, Department of the Treasury--Leasing, 12 CFR Part 23.

Comptroller of the Currency, Department of the Treasury--Community development corporations, community development projects, and other public welfare investments, 12 CFR Part 24.

Comptroller of the Currency, Department of the Treasury--Community Reinvestment Act and interstate deposit production regulations, 12 CFR Part 25.

Comptroller of the Currency, Department of the Treasury--Management official interlocks, 12 CFR Part 26.

Comptroller of the Currency, Department of the Treasury--Fair housing home loan data system, 12 CFR Part 27.

Comptroller of the Currency, Department of the Treasury--International banking activities, 12 CFR Part 28.

Comptroller of the Currency, Department of the Treasury--Safety and soundness standards, 12 CFR Part 30.

Comptroller of the Currency, Department of the Treasury--Extensions of credit to insiders and transactions with affiliates, 12 CFR Part 31.

Comptroller of the Currency, Department of the Treasury--Lending limits, 12 CFR Part 32.

Comptroller of the Currency, Department of the Treasury--Real estate lending and appraisals, 12 CFR Part 34.

Comptroller of the Currency, Department of the Treasury--Debt cancellation contracts and debt suspension agreements, 12 CFR Part 37.

Comptroller of the Currency, Department of the Treasury--Privacy of consumer financial information, 12 CFR Part 40.

Federal Reserve System--Membership of State banking institutions in the Federal Reserve System (Regulation H), 12 CFR Part 208.


RESEARCH GUIDE


Forms:
8 Fed Procedural Forms L Ed, Declaratory Judgements (2001) § 21:20.


INTERPRETIVE NOTES AND DECISIONS


1. Generally
2. Mortgages

## 1. Generally

While 12 USCS § **93a** restricts power of Comptroller of Currency to issue regulations in certain respects, this authorization is otherwise broad in scope. Conference of State Bank Supervisors v Lord (1982, DC Dist Col) 532 F Supp 694, affd (1983) 228 US App DC 367, 710 F2d 878.

## 2. Mortgages

Comptroller of Currency has authority to issue regulations governing adjustable rate mortgages which preempt inconsistent state law. Conference of State Bank Supervisors v Conover (1983) 228 US App DC 367, 710 F2d 878.

Source: Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > **United States Code Service - Titles 1 through 50** ⓘ
TOC: United States Code Service - Titles 1 through 50 > / . . . / > REGULATION OF THE BANKING BUSINESS; POWERS AND DUTIES OF NATIONAL BANKS > **§ 93a. Authority to prescribe rules and regulations**
Terms: 93a (Edit Search)
View: Full
Date/Time: Monday, December 6, 2004 - 3:12 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Source:  Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > **United States Code Service - Titles 1 through 50 - Selected Documents** ⓘ
TOC:  United States Code Service - Titles 1 through 50 > / . . . / > CREDIT TRANSACTIONS > **§ 1633. Exemption for State-regulated transactions**
Terms:  **1633** (Edit Search)

✦Select for FOCUS™ or Delivery

*15 USCS § 1633*

UNITED STATES CODE SERVICE
Copyright    2004 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 108-428, APPROVED 11/30/04 ***
*** WITH GAPS OF 108-417, 108-422 THROUGH 108-424 and 108-426 ***

TITLE 15. COMMERCE AND TRADE
CHAPTER 41. CONSUMER CREDIT PROTECTION
CONSUMER CREDIT COST DISCLOSURE
CREDIT TRANSACTIONS

### ✦ GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION

15 USCS § **1633** (2004)

§ **1633.**  Exemption for State-regulated transactions

The Board shall by regulation exempt from the requirements of this chapter [15 USCS §§ 1631 et seq.] any class of credit transactions within any State if it determines that under the law of that State that class of transactions is subject to requirements substantially similar to those imposed under this chapter [15 USCS §§ 1631 et seq.], and that there is adequate provision for enforcement.

**HISTORY:**
    (May 29, 1968, P.L. 90-321, Title I, Ch 2, § 123, 82 Stat. 152.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

Effective date of section:
    Section effective July 1, 1969; see note to 15 USCS § 1631.

**NOTES:**

RESEARCH GUIDE

Federal Procedure:
    7 Fed Proc L Ed, Consumer Credit Protection §§ 15:5, 9, 13.

Am Jur:
    11 Am Jur 2d, Banks and Financial Institutions § 1007.
    17 Am Jur 2d, Consumer and Borrower Protection § 248.

Forms:
    6 Fed Procedural Forms L Ed, Consumer Credit Protection (2003) § 14:44.
    24 Am Jur Pl & Pr Forms (1999), Truth in Lending and Consumer Credit Protection, § 18.

**7**

INTERPRETIVE NOTES AND DECISIONS

1. Generally
2. Right to exemption
3. Effect of exemption
4. Miscellaneous

1. Generally

Under 15 USCS § **1633,** court is not authorized to determine whether state's transactions were exempt from federal disclosure requirements; exemption can be granted only by Federal Reserve Board after proper application to and review by that agency. Sosa v Fite (1972, CA5 Tex) 465 F2d 1227, appeal after remand (1974, CA5 Tex) 498 F2d 114.

2. Right to exemption

Where there has been no determination, official or otherwise, by Federal Reserve Board that under Texas law particular type of credit transaction is subject to requirements "substantially similar" to those imposed by Consumer Credit Protection Act (15 USCS §§ 1601 et seq.), contention that particular transaction upon which plaintiff's claim is based is exempt from provisions of Act is without merit; as practical matter, it would seem that in order to be entitled to exemption, state would have to adopt federal Act in its entirety as well as Regulation Z. McDonald v Savoy (1973, Tex Civ App 4th Dist) 501 SW2d 400 (disapproved on other grounds Holmes v Olson (Tex) 587 SW2d 678).

3. Effect of exemption

Where state had adopted disclosure requirements in credit transactions substantially similar to those in Truth-In-Lending Act (15 USCS §§ 1601 et seq.) state statute was exempted from Federal Act except for provision in Federal Act for civil liability; Federal District Court, therefore, retained jurisdiction in case alleging failure to disclose, but there was but one cause of action and thus but one recovery for nondisclosure. Hinkle v Rock Springs Nat. Bank (1976, CA10 Wyo) 538 F2d 295.

Where Federal Reserve Board, in accordance with 15 USCS §§ **1633,** exempted transactions in Connecticut from requirements of Federal Truth in Lending Act, with proviso that exemption should not be construed to affect concurrent jurisdiction of federal and state courts, federal court retained subject matter jurisdiction over lending transaction in Connecticut; exemption applied only to federal administration of statute and did not pertain to civil liability provisions of Act. Whitman v Connecticut Bank & Trust Co. (1975, DC Conn) 400 F Supp 1341.

Effect of exemption from Truth in Lending Act (15 USCS §§ 1631 et seq.) is to make creditors other than federally charted institutions subject solely to state law and enforcement rather than comparable federal law and enforcement; whether creditor operating in exempt state must follow state rather than federal law depends on scope of exemption and class of creditors and transactions affected by it, and scope of exemption is set forth in notice in which Federal Reserve Board grants exemption. Board of Governors of Federal Reserve System Exemption Determinations R-0415, 47 Fed Reg 36962.

4. Miscellaneous

Claim that open-end credit agreement was in violation of Truth in Lending Act is cognizable in Federal District Court even if agreement is also alleged to violate Connecticut legislation. Solevo v Aldens, Inc. (1975, DC Conn) 395 F Supp 861.

Source:   Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > **United States Code Service - Titles 1 through 50 - Selected Documents** ⓘ
TOC:   United States Code Service - Titles 1 through 50 > / . . . / > CREDIT TRANSACTIONS > **§ 1633. Exemption for State-regulated transactions**
Terms:   **1633**  (Edit Search)
View:   Full
Date/Time:   Monday, December 6, 2004 - 3:13 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Source: Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > **United States Code Service - Titles 1 through 50 - Selected Documents** ⓘ
TOC: United States Code Service - Titles 1 through 50 > / . . . / > CREDIT TRANSACTIONS > **§ 1635. Right of rescission as to certain transactions**
Terms: 1635 (Edit Search)

↵Select for FOCUS™ or Delivery
▓

### 15 USCS § 1635

**UNITED STATES CODE SERVICE**
Copyright    2004 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

**\*\*\* CURRENT THROUGH P.L. 108-428, APPROVED 11/30/04 \*\*\***
**\*\*\* WITH GAPS OF 108-417, 108-422 THROUGH 108-424 and 108-426 \*\*\***

TITLE 15. COMMERCE AND TRADE
CHAPTER 41. CONSUMER CREDIT PROTECTION
CONSUMER CREDIT COST DISCLOSURE
CREDIT TRANSACTIONS

### ◆ **GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

15 USCS § **1635** (2004)

§ **1635.** Right of rescission as to certain transactions

(a) Disclosure of obligor's right to rescind. Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title [15 USCS §§ 1601 et seq.], whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b) Return of money or property following rescission. When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

8

(c) Rebuttable presumption of delivery of required disclosures. Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this title [15 USCS §§ 1601 et seq.] by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

(d) Modification and waiver of rights. The Board may, if it finds that such action is necessary in order to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of any rights created under this section to the extent and under the circumstances set forth in those regulations.

(e) Exempted transactions; reapplication of provisions. This section does not apply to--
   (1) a residential mortgage transaction as defined in section 103(w) [15 USCS § 1602(w)];
   (2) a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property;
   (3) a transaction in which an agency of a State is the creditor; or
   (4) advances under a preexisting open end credit plan if a security interest has already been retained or acquired and such advances are in accordance with a previously established credit limit for such plan.

(f) Time limit for exercise of right. An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter [15 USCS §§ 1631 et seq.] have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this title [15 USCS §§ 1601 et seq.] institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of section 125 [this section] and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

(g) Additional relief. In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 130 [15 USCS § 1640] for violations of this title [15 USCS §§ 1601 et seq.] not relating to the right to rescind.

(h) Limitation on rescission. An obligor shall have no rescission rights arising solely from the form of written notice used by the creditor to inform the obligor of the rights of the obligor under this section, if the creditor provided the obligor the appropriate form of written notice published and adopted by the Board, or a comparable written notice of the rights of the obligor, that was properly completed by the creditor, and otherwise complied with all other requirements of this section regarding notice.

(i) Rescission rights in foreclosure.
   (1) In general. Notwithstanding section 139 [15 USCS § 1649], and subject to the time period provided in subsection (f), in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if--
      (A) a mortgage broker fee is not included in the finance charge in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated; or
      (B) the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Board or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.
   (2) Tolerance for disclosures. Notwithstanding section 106(f) [15 USCS § 1605(f)], and subject to the time period provided in subsection (f), for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected

by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $ 35 or is greater than the amount required to be disclosed under this title [15 USCS §§ 1601 et seq.].

(3) Right of recoupment under State law. Nothing in this subsection affects a consumer's right of rescission in recoupment under State law.

(4) Applicability. This subsection shall apply to all consumer credit transactions in existence or consummated on or after the date of the enactment of the Truth in Lending Act Amendments of 1995 [enacted Sept. 30, 1995].

## HISTORY:

(May 29, 1968, P.L. 90-321, Title I, Ch 2, § 125, 82 Stat. 152; Oct. 28, 1974, P.L. 93-495, Title IV, §§ 404, 405, 412, 88 Stat. 1517, 1519; March 31, 1980, P.L. 96-221, Title VI, § 612(a)(1), (3)-(6), 94 Stat. 175; Oct. 17, 1984, P.L. 98-479, Title II, § 205, 98 Stat. 2234.)

(As amended Sept. 30, 1995, P.L. 104-29, §§ 5, 8, 109 Stat. 274, 275.]

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

Effective date of section:

Section effective July 1, 1969; see note to 15 USCS § 1631.

Amendments:

1974. Act Oct. 28, 1974 (effective 10/28/74, as provided by § 416 of such Act, which appears as 15 USCS § 1665a note), in subsec. (a), substituted ", including any such interest arising by operation of law, is or will be" for "is"; in subsec. (b), inserted ", including any such interest arising by operation of law,"; in subsec. (e), added "or to a consumer credit transaction in which an agency of a State is the creditor" at the end thereof; and added subsec. (f).

1980. Act March 31, 1980 (effective 2 years and 6 months after enactment on 3/31/80, as provided by § 625(a) of such Act, which appears as 15 USCS § 1602 note), substituted subsec. (a) for one which read: "Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this chapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section."; in subsec. (b) substituted "20 days" for "ten days" and inserted "The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."; in subsec. (c), inserted "information, forms, and"; substituted subsecs. (e) and (f) for ones which read:

"(e) This section does not apply to the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling or to a consumer credit transaction in which an agency of a State is the creditor.

"(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs earlier, notwithstanding the fact that the disclosures required under this section or any other material disclosures required under this chapter have not been delivered to the obligor.".

Such Act further added subsec. (g).

1984. Act Oct. 17, 1984, in subsec. (e), deleted "(1)" following "(e)", redesignated former subparas. (A)-(D) as paras. (1)-(4) respectively, and deleted former para. (2) which read: "The provisions of paragraph (1)(D) shall cease to be effective 3 years after the effective date of the Truth in Lending Simplification and Reform Act.".

1995. Act Sept. 30, 1995 added subsecs. (h) and (i).

## NOTES:

Case 1:04-cv-11954-RCL     Document 5-4     Filed 12/13/2004     Page 21 of 32

Source:  Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > **United States Code Service - Titles 1 through 50 - Selected Documents** 🛈
TOC:  United States Code Service - Titles 1 through 50 > / . . . / > CREDIT TRANSACTIONS > § 1640. Civil liability
Terms:  **1635**  (Edit Search)

☛ Select for FOCUS™ or Delivery
▢

*15 USCS § 1640*

UNITED STATES CODE SERVICE
Copyright    2004 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

\*\*\* CURRENT THROUGH P.L. 108-428, APPROVED 11/30/04 \*\*\*
\*\*\* WITH GAPS OF 108-417, 108-422 THROUGH 108-424 and 108-426 \*\*\*

TITLE 15. COMMERCE AND TRADE
CHAPTER 41. CONSUMER CREDIT PROTECTION
CONSUMER CREDIT COST DISCLOSURE
CREDIT TRANSACTIONS

**◆ GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

15 USCS § 1640 (2004)

§ 1640.  Civil liability

(a) Individual or class action for damages; amount of award; factors determining amount of award. Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter [15 USCS §§ 1631 et seq.], including any requirement under section 125 [15 USCS § **1635**], or chapter 4 or 5 of this title [15 USCS §§ 1666 et seq. or 1667 et seq.] with respect to any person is liable to such person in an amount equal to the sum of--
  (1) any actual damage sustained by such person as a result of the failure;
  (2) (A) (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under chapter 5 of this title [15 USCS §§ 1667 et seq.], 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $ 100 nor greater than $ 1,000, or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $ 200 or greater than $ 2,000; or
    (B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $ 500,000 or 1 per centum of the net worth of the creditor;
    (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 125 [15 USCS § **1635**], the costs of the action, together with a reasonable attorney's fee as determined by the court; and
    (4) in the case of a failure to comply with any requirement under section 129 [15 USCS § 1639], an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material.

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional. In connection with the disclosures referred to in subsections (a) and (b) of section 127 [15 USCS §                9

1637(a) and (b)], a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 125 [15 USCS § **1635**], section 127(a) [15 USCS § 1637 (a)], or of paragraph (4), (5), (6), (7), (8), (9), or (10) of section 127(b) [15 USCS § 1637(b)(4), (5), (6), (7), (8), (9), or (10)] or for failing to comply with disclosure requirements under State law for any term or item which the Board has determined to be substantially the same in meaning under section 111(a)(2) [15 USCS § 1610(a)(2)] as any of the terms or items referred to in section 127(a) [15 USCS § 1637(a)] or any of those paragraphs of section 127(b) [15 USCS § 1637(b)(4), (5), (6), (7), (8), (9), or (10)]. In connection with the disclosures referred to in subsection (c) or (d) of section 127 [15 USCS § 1637(c) or (d)], a card issuer shall have a liability under this section only to a cardholder who pays a fee described in section 127(c)(1)(A)(ii)(I) or section 127(c)(4)(A)(i) [15 USCS § 1637(c)(1)(A)(ii)(I) or (c)(4)(A)(i)] or who uses the credit card or charge card. In connection with the disclosures referred to in section 128 [15 USCS § 1638], a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 125 [15 USCS § **1635**] or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 128(a) [15 USCS § 1638(a)], or for failing to comply with disclosure requirements under State law for any term which the Board has determined to be substantially the same in meaning under section 111(a)(2) [15 USCS § 1610(a)(2)] as any of the terms referred to in any of those paragraphs of section 128(a) [15 USCS § 1638(a)]. With respect to any failure to make disclosures required under this chapter [15 USCS §§ 1631 et seq.] or chapter 4 or 5 of this title [15 USCS §§ 1666 et seq. or 1667 et seq.], liability shall be imposed only upon the creditor required to make disclosure, except as provided in section 131 [15 USCS § 1641].

(b) Correction of errors. A creditor or assignee has no liability under this section or section 108 or section 112 [15 USCS § 1607 or 1611] for any failure to comply with any requirement imposed under this chapter or chapter 5 [15 USCS §§ 1631 et seq. or 1667 et seq.], if within sixty days after discovering an error, whether pursuant to a final written examination report or notice issued under section 108(e)(1) [15 USCS § 1607(e)(1)] or through the creditor's or assignee's own procedures, and prior to the institution of an action under this section or the receipt of written notice of the error from the obligor, the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed, or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower.

(c) Unintentional violations; bona fide errors. A creditor or assignee may not be held liable in any action brought under this section or section 125 [15 USCS § **1635**] for a violation of this title [15 USCS §§ 1601 et seq.] if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this title [15 USCS §§ 1601 et seq.] is not a bona fide error.

(d) Liability in transaction or lease involving multiple obligors. When there are multiple obligors in a consumer credit transaction or consumer lease, there shall be no more than one recovery of damages under subsection (a)(2) for a violation of this title [15 USCS §§ 1601 et seq.].

(e) Jurisdiction of courts; limitations on actions. Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this title [15 USCS §§ 1601 et seq.] in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. An action to enforce a violation of section 129 [15 USCS § 1639] may also be brought by the appropriate State attorney general in any appropriate United States district court, or any other court of competent jurisdiction, not later than 3 years after the date on which the violation occurs. The State attorney general shall provide prior written notice of any such civil action to the Federal agency responsible for enforcement under section 108 [15 USCS § 1607] and shall provide the agency with a copy of the complaint. If prior notice is not feasible, the State attorney general shall provide notice to such agency immediately upon instituting the action. The Federal agency may--

   (1) intervene in the action;
   (2) upon intervening--
     (A) remove the action to the appropriate United States district court, if it was not originally brought there; and
     (B) be heard on all matters arising in the action; and
   (3) file a petition for appeal.

(f) Good faith compliance with rule, regulation, or interpretation of Board or with interpretation or approval of duly authorized official or employee of Federal Reserve System. No provision of this section, section 108(b), section 108(c), section 108(e), or section 112 [15 USCS § 1607(b), (c), (e), or § 1611] imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

(g) Recovery for multiple failures to disclose. The multiple failure to disclose to any person any information required under this chapter [15 USCS §§ 1631 et seq.] or chapter 4 or 5 of this title [15 USCS §§ 1666 et seq. or 1667 et seq.] to be disclosed in connection with a single account under an open end consumer credit plan, other single consumer credit sale, consumer loan, and consumer lease, or other extension of consumer credit, shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries. This subsection does not bar any remedy permitted by section 125 [15 USCS § **1635**].

(h) Offset from amount owed to creditor or assignee; rights of defaulting consumer. A person may not take any action to offset any amount for which a creditor or assignee is potentially liable to such person under subsection (a)(2) against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this title [15 USCS §§ 1601 et seq.] has been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this title [15 USCS §§ 1601 et seq.] as an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by a person liable under this title [15 USCS §§ 1601 et seq.].

(i) Class action moratorium.
   (1) In general. During the period beginning on the date of the enactment of the Truth in Lending Class Action Relief Act of 1995 [enacted May 18, 1995] and ending on October 1, 1995, no court may enter any order certifying any class in any action under this title [15 USCS §§ 1601 et seq.]--
     (A) which is brought in connection with any credit transaction not under an open end credit plan which is secured by a first lien on real property or a dwelling and constitutes a refinancing or consolidation of an existing extension of credit; and
     (B) which is based on the alleged failure of a creditor--
      (i) to include a charge actually incurred (in connection with the transaction) in the finance charge disclosed pursuant to section 128 [15 USCS § 1638];
      (ii) to properly make any other disclosure required under section 128 [15 USCS § 1638] as a result of the failure described in clause (i); or
      (iii) to provide proper notice of rescission rights under section 125(a) [15 USCS § **1635**(a)] due to the selection by the creditor of the incorrect form from among the model forms prescribed by the Board or from among forms based on such model forms.
   (2) Exceptions for certain alleged violations. Paragraph (1) shall not apply with respect to any action--
     (A) described in clause (i) or (ii) of paragraph (1)(B), if the amount disclosed as the finance charge results in an annual percentage rate that exceeds the tolerance provided in section 107(c) [15 USCS § 1606(c)]; or
     (B) described in paragraph (1)(B)(iii), if--
      (i) no notice relating to rescission rights under section 125(a) [15 USCS § **1635**(a)] was

provided in any form; or

   (ii) proper notice was not provided for any reason other than the reason described in such paragraph.

**HISTORY:**

   (May 29, 1968, P.L. 90-321, Title I, Ch 2, § 130, 82 Stat. 157; Oct. 28, 1974, P.L. 93-495, Title IV, §§ 406-408(a)-(d), 88 Stat. 1518; Feb. 27, 1976, P.L. 94-222, § 3(b), 90 Stat. 197; March 23, 1976, P.L. 94-240, § 4, 90 Stat. 260; March 31, 1980, P.L. 96-221, Title VI, § 615, 94 Stat. 180; Nov. 3, 1988, P.L. 100-583, § 3, 102 Stat. 2966.)

   (As amended Sept. 23, 1994, P.L. 103-325, Title I, Subtitle B, § 153(a), (b), 108 Stat. 2195; May 18, 1995, P.L. 104-12, § 2, 109 Stat. 161; Sept. 30, 1995, P.L. 104-29, § 6, 109 Stat. 274.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

Effective date of section:
   Section effective July 1, 1969; see note to 15 USCS § 1631.

Amendments:
   1974. Act Oct. 28, 1974 (effective 10/28/74, as provided by § 416 of such Act which appears as 15 USCS § 1665a note; see applicability provision treated as other provisions note to this section), substituted subsec. (a) for one which read:
   "(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this chapter to be disclosed to that person is liable to that person in an amount equal to the sum of
      "(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $ 100 nor greater than $ 1,000; and
      "(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.".
   Such Act further, in subsec. (b), inserted "for any failure to comply with any requirement imposed under this chapter,"; in subsec. (c) substituted "title" for "chapter"; and added subsecs. (f)-(h).
   1976. Act Feb. 27, 1976, substituted subsec. (f) for former one which read: "No provision of this section or section 112 imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board, notwithstanding that after such act or omission has occurred, such rule, regulation, or interpretation is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.".
   Act March 23, 1976 (effective one year after its enactment on March 23, 1976, as provided by § 6 of such Act, which appears as 15 USCS § 1667 note), in subsec. (a), in preamble, inserted "or 5", in clause (2)(A), inserted "(i)" and ", or (ii) in the case of an individual action relating to a consumer lease under chapter 5 of the title, 25 per centum of the total amount of monthly payments under the lease"; in clause (2)(B), substituted "$ 500,000" for "$ 100,000"; in subsec. (b), inserted "or chapter 5"; deleted "finance" following "required to pay a"; and in subsec. (g), inserted "or chapter 4 or 5 of this title" and ", consumer lease".
   1980. Act March 31, 1980 (effective 2 years and 6 months after enactment on 3/31/80, as provided by § 625(a) of such Act, which appears as 15 USCS § 1602 note), in subsec. (a), in the introductory matter inserted ", including any requirement under section 125", in para. (2)(B), substituted "under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor" for "in such action", in para. (3), inserted "or in any action in which a person is determined to have a right of rescission under section 125", and in the concluding matter inserted "In connection with the disclosures referred to in section 127, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 125, section 127(a), or of paragraph (4), (5), (6), (7), (8), (9), or (10) of section 127(b) or for failing to comply with disclosure requirements under State law for any term or item which the Board has determined to be substantially the same in meaning under section 111(a) (2) as any of the terms or items referred to in section 127(a) or any of those paragraphs of section 127(b). In connection with the disclosures referred to in section 128, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 125 or of paragraph (2) (insofar as it requires a disclosure of the 'amount financed'), (3), (4), (5), (6), or (9) of section 128(a), or for failing to comply with disclosure requirements under State law for any term which the Board has determined to be substantially the same in meaning under section 111(a)(2) as

any of the terms referred to in any of those paragraphs of section 128(a). With respect to any failure to make disclosures required under this chapter or chapter 4 or 5 of this title, liability shall be imposed only upon the creditor required to make disclosure, except as provided in section 131."; substituted subsecs. (b)-(d) for ones which read:

"(b) A creditor has no liability under this section for any failure to comply with any requirement imposed under this chapter or chapter 5, if within fifteen days after discovering an error, and prior to the institution of an action under this section or the receipt of written notice of the error, the creditor notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to insure that the person will not be required to pay a charge in excess of the amount of percentage rate actually disclosed.

"(c) A creditor may not be held liable in any action brought under this section for a violation of this title if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

"(d) Any action which may be brought under this section against the original creditor in any credit transaction involving a security interest in real property may be maintained against any subsequent assignee of the original creditor where the assignee, its subsidiaries, or affiliates were in a continuing business relationship with the original creditor either at the time the credit was extended or at the time of the assignment, unless the assignment was involuntary, or the assignee shows by a preponderance of evidence that it did not have reasonable grounds to believe that the original creditor was engaged in violations of this chapter, and that it maintained procedures reasonably adapted to apprise it of the existence of any such violations.".

Such Act further in subsec. (e), inserted "This subsection does not bar a person from asserting a violation of this title in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law."; in subsec. (f), inserted ", section 108(b) section 108(c), section 108(e),"; in subsec. (g), inserted "This subsection does not bar any remedy permitted by section 125."; and substituted subsec. (h) for former one which read: "A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) against any amount owing to such creditor by such person, unless the amount of the creditor's liability to such person has been determined by judgment of a court of competent jurisdiction in an action to which such person was a party.".

1988. Nov. 3, 1988, in subsec. (a), in the concluding matter, following the first appearance of "In connection with the disclosures referred to", substituted "in subsections (a) and (b) of section 127" for "in section 127", and inserted the sentence beginning "In connection with the disclosures referred to in subsection (c) or (d) . . .".

1994. Act Sept. 23, 1994, in subsec. (a)(2)(B), deleted "and" after the concluding semicolon, in para. (3), substituted "; and" for a concluding period, and added para. (4); and, in subsec. (e), inserted the sentences beginning: "An action to enforce a violation . . .", "The State attorney general . . .", "If prior notice is not feasible . . .", and "The Federal agency . . .", including paras. (1)-(3).

1995. Act May 18, 1995, added subsec. (i).

Act Sept. 30, 1995, in subsec. (a)(2), substituted "(ii)" for "or (ii)" and inserted ", or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $ 200 or greater than $ 2,000".

Other provisions:

Applicability of amendments made by Act Oct. 28, 1974. Section 408(e) of Act Oct. 28, 1974, provides: "The amendments made by sections 406, 407, and 408 [amending this section] shall apply in determining the liability of any person under chapter 2 or 4 of the Truth in Lending Act [15 USCS §§ 1631-1645, 1666-1666j], unless prior to the date of enactment of this Act such liability has been determined by final judgment of a court of competent jurisdiction and no further review of such judgment may be had by appeal or otherwise."

**NOTES:**

CROSS REFERENCES

Source: Legal > Federal Legal - U.S. > **CFR - Code of Federal Regulations - Selected Documents** ℹ️
  TOC: Code of Federal Regulations > / . . . / > SUBPART C– EXPANSION OF ACTIVITIES > § 5.34 **Operating subsidiaries.**
Terms: **5.34** (Edit Search)

☛Select for FOCUS™ or Delivery
▨

*12 CFR 5.34*

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright   2004, LEXIS Publishing

*** THIS SECTION IS CURRENT THROUGH THE DECEMBER 2, 2004 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 12 -- BANKS AND BANKING
CHAPTER I -- COMPTROLLER OF THE CURRENCY, DEPARTMENT OF THE TREASURY
PART 5 -- RULES, POLICIES, AND PROCEDURES FOR CORPORATE ACTIVITIES
SUBPART C -- EXPANSION OF ACTIVITIES

12 CFR **5.34**

§ **5.34** Operating subsidiaries.


(a) Authority. 12 U.S.C. 24 (Seventh), 24a, 93a, 3101 et seq.

(b) Licensing requirements. A national bank must file a notice or application as prescribed in this section to acquire or establish an operating subsidiary, or to commence a new activity in an existing operating subsidiary.

(c) Scope. This section sets forth authorized activities and application or notice procedures for national banks engaging in activities through an operating subsidiary. The procedures in this section do not apply to financial subsidiaries authorized under § 5.39. Unless provided otherwise, this section applies to a Federal branch or agency that acquires, establishes, or maintains any subsidiary that a national bank is authorized to acquire or establish under this section in the same manner and to the same extent as if the Federal branch or agency were a national bank, except that the ownership interest required in paragraphs (e)(2) and (e)(5)(i)(B) of this section shall apply to the parent foreign bank of the Federal branch or agency and not to the Federal branch or agency.

(d) Definitions. For purposes of this § **5.34:**

(1) Authorized product means a product that would be defined as insurance under section 302(c) of the Gramm-Leach-Bliley Act (Public Law 106-102, 113 Stat. 1338, 1407) (GLBA) (15 U.S.C. 6712) that, as of January 1, 1999, the OCC had determined in writing that national banks may provide as principal or national banks were in fact lawfully providing the product as principal, and as of that date no court of relevant jurisdiction had, by final judgment, overturned a determination by the OCC that national banks may provide the product as principal. An authorized product does not include title insurance, or an annuity contract the income of which is subject to treatment under section 72 of the Internal Revenue Code of 1986 (26 U.S.C. 72).

(2) Well capitalized means the capital level described in 12 CFR 6.4(b)(1) or, in the case of a Federal branch or agency, the capital level described in 12 CFR 4.7(b)(1)(iii).

(3) Well managed means, unless otherwise determined in writing by the OCC:

(i) In the case of a national bank:

(A) The national bank has received a composite rating of 1 or 2 under the Uniform Financial Institutions Rating System in connection with its most recent examination; or

**10**

(B) In the case of any national bank that has not been examined, the existence and use of managerial resources that the OCC determines are satisfactory.

(ii) In the case of a Federal branch or agency:

(A) The Federal branch or agency has received a composite ROCA supervisory rating (which rates risk management, operational controls, compliance, and asset quality) of 1 or 2 at its most recent examination; or

(B) In the case of a Federal branch or agency that has not been examined, the existence and use of managerial resources that the OCC determines are satisfactory.

(e) Standards and requirements -- (1) Authorized activities. A national bank may conduct in an operating subsidiary activities that are permissible for a national bank to engage in directly either as part of, or incidental to, the business of banking, as determined by the OCC, or otherwise under other statutory authority, including:

(i) Providing authorized products as principal; and

(ii) Providing title insurance as principal if the national bank or subsidiary thereof was actively and lawfully underwriting title insurance before November 12, 1999, and no affiliate of the national bank (other than a subsidiary) provides insurance as principal. A subsidiary may not provide title insurance as principal if the state had in effect before November 12, 1999, a law which prohibits any person from underwriting title insurance with respect to real property in that state.

(2) Qualifying subsidiaries. An operating subsidiary in which a national bank may invest includes a corporation, limited liability company, or similar entity if the parent bank owns more than 50 percent of the voting (or similar type of controlling) interest of the operating subsidiary; or the parent bank otherwise controls the operating subsidiary and no other party controls more than 50 percent of the voting (or similar type of controlling) interest of the operating subsidiary. However, the following subsidiaries are not operating subsidiaries subject to this section:

(i) A subsidiary in which the bank's investment is made pursuant to specific authorization in a statute or OCC regulation (e.g., a bank service company under 12 U.S.C. 1861 et seq. or a financial subsidiary under section 5136A of the Revised Statutes (12 U.S.C. 24a)); and

(ii) A subsidiary in which the bank has acquired, in good faith, shares through foreclosure on collateral, by way of compromise of a doubtful claim, or to avoid a loss in connection with a debt previously contracted.

(3) Examination and supervision. An operating subsidiary conducts activities authorized under this section pursuant to the same authorization, terms and conditions that apply to the conduct of such activities by its parent national bank. If, upon examination, the OCC determines that the operating subsidiary is operating in violation of law, regulation, or written condition, or in an unsafe or unsound manner or otherwise threatens the safety or soundness of the bank, the OCC will direct the bank or operating subsidiary to take appropriate remedial action, which may include requiring the bank to divest or liquidate the operating subsidiary, or discontinue specified activities. OCC authority under this paragraph is subject to the limitations and requirements of section 45 of the Federal Deposit Insurance Act (12 U.S.C. 1831v) and section 115 of the Gramm-Leach-Bliley Act (12 U.S.C. 1820a).

(4) Consolidation of figures -- (i) National banks. Pertinent book figures of the parent national bank and its operating subsidiary shall be combined for the purpose of applying statutory or regulatory limitations when combination is needed to effect the intent of the statute or regulation, e.g., for purposes of 12 U.S.C. 56, 60, 84, and 371d.

(ii) Federal branch or agencies. Transactions conducted by all of a foreign bank's Federal branches and agencies and State branches and agencies, and their operating subsidiaries, shall be combined

for the purpose of applying any limitation or restriction as provided in 12 CFR 28.14.

(5) Procedures -- (i) Application required. (A) Except as provided in paragraph (e)(5)(iv) or (e)(5)(vi) of this section, a national bank that intends to acquire or establish an operating subsidiary, or to perform a new activity in an existing operating subsidiary, must first submit an application to, and receive approval from, the OCC. The application must include a complete description of the bank's investment in the subsidiary, the proposed activities of the subsidiary, the organizational structure and management of the subsidiary, the relations between the bank and the subsidiary, and other information necessary to adequately describe the proposal. To the extent the application relates to the initial affiliation of the bank with a company engaged in insurance activities, the bank should describe the type of insurance activity that the company is engaged in and has present plans to conduct. The bank must also list for each state the lines of business for which the company holds, or will hold, an insurance license, indicating the state where the company holds a resident license or charter, as applicable. The application must state whether the operating subsidiary will conduct any activity at a location other than the main office or a previously approved branch of the bank. The OCC may require the applicant to submit a legal analysis if the proposal is novel, unusually complex, or raises substantial unresolved legal issues. In these cases, the OCC encourages applicants to have a pre-filing meeting with the OCC.

(B) A national bank must file an application and obtain prior approval before acquiring or establishing an operating subsidiary, or performing a new activity in an existing operating subsidiary, if the bank controls the subsidiary but owns 50 percent or less of the voting (or similar type of controlling) interest of the subsidiary. These applications are not subject to the filing exemption in paragraph (e)(5)(vi) of this section and are not eligible for the notice procedures in paragraph (e)(5)(iv) of this section.

(ii) Exceptions to rules of general applicability. Sections 5.8, 5.10, and 5.11 do not apply to this section. However, if the OCC concludes that an application presents significant and novel policy, supervisory, or legal issues, the OCC may determine that some or all provisions in §§ 5.8, 5.10, and 5.11 apply.

(iii) OCC review and approval. The OCC reviews a national bank's application to determine whether the proposed activities are legally permissible and to ensure that the proposal is consistent with safe and sound banking practices and OCC policy and does not endanger the safety or soundness of the parent national bank. As part of this process, the OCC may request additional information and analysis from the applicant.

(iv) Notice process for certain activities. A national bank that is "well capitalized" and "well managed" may acquire or establish an operating subsidiary, or perform a new activity in an existing operating subsidiary, by providing the appropriate district office written notice within 10 days after acquiring or establishing the subsidiary, or commencing the activity, if the activity is listed in paragraph (e)(5)(v) of this section. The written notice must include a complete description of the bank's investment in the subsidiary and of the activity conducted and a representation and undertaking that the activity will be conducted in accordance with OCC policies contained in guidance issued by the OCC regarding the activity. To the extent the notice relates to the initial affiliation of the bank with a company engaged in insurance activities, the bank should describe the type of insurance activity that the company is engaged in and has present plans to conduct. The bank must also list for each state the lines of business for which the company holds, or will hold, an insurance license, indicating the state where the company holds a resident license or charter, as applicable. Any bank receiving approval under this paragraph is deemed to have agreed that the subsidiary will conduct the activity in a manner consistent with published OCC guidance.

(v) Activities eligible for notice. The following activities qualify for the notice procedures, provided the activity is conducted pursuant to the same terms and conditions as would be applicable if the activity were conducted directly by a national bank:

(A) Holding and managing assets acquired by the parent bank, including investment assets and property acquired by the bank through foreclosure or otherwise in good faith to compromise a doubtful claim, or in the ordinary course of collecting a debt previously contracted;

(B) Providing services to or for the bank or its affiliates, including accounting, auditing, appraising, advertising and public relations, and financial advice and consulting;

(C) Making loans or other extensions of credit, and selling money orders, savings bonds, and travelers checks;

(D) Purchasing, selling, servicing, or warehousing loans or other extensions of credit, or interests therein;

(E) Providing courier services between financial institutions;

(F) Providing management consulting, operational advice, and services for other financial institutions;

(G) Providing check guaranty, verification and payment services;

(H) Providing data processing, data warehousing and data transmission products, services, and related activities and facilities, including associated equipment and technology, for the bank or its affiliates;

(I) Acting as investment adviser (including an adviser with investment discretion) or financial adviser or counselor to governmental entities or instrumentalities, businesses, or individuals, including advising registered investment companies and mortgage or real estate investment trusts, furnishing economic forecasts or other economic information, providing investment advice related to futures and options on futures, and providing consumer financial counseling;

(J) Providing tax planning and preparation services;

(K) Providing financial and transactional advice and assistance, including advice and assistance for customers in structuring, arranging, and executing mergers and acquisitions, divestitures, joint ventures, leveraged buyouts, swaps, foreign exchange, derivative transactions, coin and bullion, and capital restructurings;

(L) Underwriting and reinsuring credit related insurance to the extent permitted under section 302 of the GLBA (15 U.S.C. 6712);

(M) Leasing of personal property and acting as an agent or adviser in leases for others;

(N) Providing securities brokerage or acting as a futures commission merchant, and providing related credit and other related services;

(O) Underwriting and dealing, including making a market, in bank permissible securities and purchasing and selling as principal, asset backed obligations;

(P) Acting as an insurance agent or broker, including title insurance to the extent permitted under section 303 of the GLBA (15 U.S.C. 6713);

(Q) Reinsuring mortgage insurance on loans originated, purchased, or serviced by the bank, its subsidiaries, or its affiliates, provided that if the subsidiary enters into a quota share agreement, the subsidiary assumes less than 50 percent of the aggregate insured risk covered by the quota share agreement. A "quota share agreement" is an agreement under which the reinsurer is liable to the primary insurance underwriter for an agreed upon percentage of every claim arising out of the covered book of business ceded by the primary insurance underwriter to the reinsurer;

(R) Acting as a finder pursuant to 12 CFR 7.1002 to the extent permitted by published OCC precedent; n1

n1 See, e.g., the OCC's monthly publication "Interpretations and Actions." Beginning with the May

1996 issue, the OCC's Web site provides access to electronic versions of "Interpretations and Actions" (www.occ.treas.gov).

(S) Offering correspondent services to the extent permitted by published OCC precedent;

(T) Acting as agent or broker in the sale of fixed or variable annuities;

(U) Offering debt cancellation or debt suspension agreements;

(V) Providing real estate settlement, closing, escrow, and related services; and real estate appraisal services for the subsidiary, parent bank, or other financial institutions;

(W) Acting as a transfer or fiscal agent;

(X) Acting as a digital certification authority to the extent permitted by published OCC precedent, subject to the terms and conditions contained in that precedent; and

(Y) Providing or selling public transportation tickets, event and attraction tickets, gift certificates, prepaid phone cards, promotional and advertising material, postage stamps, and Electronic Benefits Transfer (EBT) script, and similar media, to the extent permitted by published OCC precedent, subject to the terms and conditions contained in that precedent.

(vi) No application or notice required. A national bank may acquire or establish an operating subsidiary without filing an application or providing notice to the OCC, if the bank is adequately capitalized or well capitalized and the:

(A) Activities of the new subsidiary are limited to those activities previously reported by the bank in connection with the establishment or acquisition of a prior operating subsidiary;

(B) Activities in which the new subsidiary will engage continue to be legally permissible for the subsidiary; and

(C) Activities of the new subsidiary will be conducted in accordance with any conditions imposed by the OCC in approving the conduct of these activities for any prior operating subsidiary of the bank.

(vii) Fiduciary powers. If an operating subsidiary proposes to exercise investment discretion on behalf of customers or provide investment advice for a fee, the national bank must have prior OCC approval to exercise fiduciary powers pursuant to § 5.26.

(6) Annual Report on Operating Subsidiaries -- (i) Filing requirement. Each national bank shall prepare and file with the OCC an Annual Report on Operating Subsidiaries containing the information set forth in paragraph (e)(6)(ii) of this section for each of its operating subsidiaries that:

(A) Is not functionally regulated within the meaning of section 5(c)(5) of the Bank Holding Company Act of 1956, as amended (12 U.S.C. 1844(c)(5)); and

(B) Does business directly with consumers in the United States. For purposes of paragraph (e)(6) of this section, an operating subsidiary, or any subsidiary thereof, does business directly with consumers if, in the ordinary course of its business, it provides products or services to individuals to be used primarily for personal, family, or household purposes.

(ii) Information required. The Annual Report on Operating Subsidiaries must contain the following information for each covered operating subsidiary listed:

(A) The name and charter number of the parent national bank;

(B) The name (include any "dba" (doing business as), abbreviated names, or trade names used to identify the operating subsidiary when it does business directly with consumers), mailing address (include the street address or post office box, city, state, and zip code), e-mail address (if any), and

telephone number of the operating subsidiary;

(C) The principal place of business of the operating subsidiary, if different from the address provided pursuant to paragraph (e)(6)(ii)(B) of this section; and

(D) The lines of business in which the operating subsidiary is doing business directly with consumers by designating the appropriate code contained in appendix B (NAICS Activity Codes for Commonly Reported Activities) to the Instructions for Preparation of Report of Changes in Organizational Structure, Form FR Y-10, a copy of which is set forth on the OCC's Web site at http://www.occ.gov. If the operating subsidiary is engaged in an activity not set forth in this list, a national bank shall report the code 0000 and provide a brief description of the activity.

(iii) Filing time frames and availability of information. Each national bank's Annual Report on Operating Subsidiaries shall contain information current as of December 31st for the year prior to the year the report is filed. The national bank shall submit its first Annual Report on Operating Subsidiaries (for information as of December 31, 2004) to the OCC on or before January 31, 2005, and on or before January 31st each year thereafter. The national bank may submit the Annual Report on Operating Subsidiaries electronically or in another format prescribed by the OCC. The OCC will make available to the public the information contained in the Annual Report on Operating Subsidiaries on its Web site at http://www.occ.gov.

**HISTORY:**
[48 FR 48454, Oct. 19, 1983, as amended at 50 FR 1440, Jan. 11, 1985; 53 FR 18547, May 24, 1988; 55 FR 997, Jan. 11, 1990; 61 FR 60342, 60374, Nov. 27, 1996; 65 FR 12905, 12911, Mar. 10, 2000; 66 FR 49093, 49097, Sept. 26, 2001, as corrected at 66 FR 62914, Dec. 4, 2001; 68 FR 70122, 70131, Dec. 17, 2003; 69 FR 64478, 64481, Nov. 5, 2004]

**AUTHORITY:**
AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
12 U.S.C. 1 et seq., 93a, 215a-2, 215a-3, 481, and section 5136A of the Revised Statutes (12 U.S.C. 24a).

**NOTES:**
[EFFECTIVE DATE NOTE: 68 FR 70122, 70131, Dec. 17, 2003, revised paragraph (e)(5)(v)(L), effective Jan. 16, 2004; 69 FR 64478, 64481, Nov. 5, 2004, added paragraph (e)(6), effective Dec. 6, 2004.]
NOTES APPLICABLE TO ENTIRE TITLE:
CROSS REFERENCES: Farmers Home Administration: See Agriculture, 7 CFR, chapter XVIII.
Office of Assistant Secretary for Housing-Federal Housing Commissioner, Department of Housing and Urban Development: See Housing and Urban Development, 24 CFR, chapter II.
Fiscal Service: See Money and Finance: Treasury, 31 CFR, chapter II.
Monetary Offices: See Money and Finance: Treasury, 31 CFR, chapter I.
Commodity Credit Corporation: See Agriculture, 7 CFR, chapter XIV.
Small Business Administration: See Business Credit and Assistance, 13 CFR, chapter I.
Rural Electrification Administration: See Agriculture, 7 CFR, chapter XVII.


NOTES APPLICABLE TO ENTIRE CHAPTER:
Other regulations issued by the Department of the Treasury appear in title 19, chapter I, title 26, chapter I, title 27, chapter I, title 31, title 48, chapter 10.

3304 words

Source: Legal > Federal Legal - U.S. > CFR - Code of Federal Regulations - Selected Documents ⓘ
TOC: Code of Federal Regulations > / . . . / > SUBPART C-- EXPANSION OF ACTIVITIES > § 5.34 Operating subsidiaries.
Terms: 5.34 (Edit Search)
View: Full

About LexisNexis | Terms and Conditions

Copyright ©  2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.