Search - 11 Results - 48 fr 14882

Source: Legal > Federal Legal - U.S. > FR - Federal Register ⓘ
Terms: 48 fr 14882  (Edit Search)

☛Select for FOCUS™ or Delivery
▨

*48 FR 14882*

FEDERAL RESERVE SYSTEM

AGENCY: Board of Governors of the Federal Reserve System.

12 CFR Part 226

Truth in Lending; Definition of Arranger of Credit; Exemption of Certain Student Loans; Treatment of Certain Disclosure Errors; and Official Staff Commentary Update

[Reg. Z; Doc. No. R-0450]

**48 FR 14882**

April 6, 1983

ACTION: Final rule and final official staff interpretation.

SUMMARY: The Board is publishing final amendments to revised Regulation Z to implement Truth in Lending amendments made in the Garn-St Germain Depository Institutions Act of 1982. The amendments to 12 CFR part 226 delete from coverage arrangers of credit and exempt certain student loans. For purposes of administrative enforcement, two footnotes relating to disclosure errors caused by the use of faulty calculation tools are also amended. This notice also contains changes to the official staff commentary, which applies and interprets the requirements of the revised Regulation Z as a substitute for individual staff interpretations of the regulation. Some of the changes reflect the statutory amendments while others update the current commentary.

EFFECTIVE DATES:

Regulatory amendments -- October 1, 1982.

Commentary changes -- April 1, 1983, but reliance optional until October 1, 1983.

FOR FURTHER INFORMATION CONTACT: The following attorneys in the Division of Consumer and Community Affairs, Board of Governors of the Federal Reserve System, Washington, D.C. 20551, at (202) 452-3667 or (202) 452-3867:

Regulatory amendments -- Claudia Yarus

Commentary:

Subpart A -- Gerald Hurst

Subpart B -- Ruth Amberg, Jesse Filkins, Richard Garabedian, Lynn Goldfaden, Gerald Hurst, John Wood

Subpart C and Appendices -- Clarence Cain, Lucy Griffin, Rugenia Silver, Susan Werthan, Claudia

**13**

Search - 11 Results - 48 fr 14882

Yarus, Steven Zeisel

Subpart D -- Rugenia Silver.

**TEXT:**
SUPPLEMENTARY INFORMATION:

1. *Introduction.* This notice contains three types of changes to the Board's Regulation Z, and changes to the accompanying official staff commentary. These changes were proposed for comment on February 2, 1983 (48 FR 4669). The Garn-St Germain Depository Institutions Act of 1982 (Pub. L. 97-320, October 15, 1982 as amended by Pub. L. 97-457, Jan. 13, 1983) (DIA) made two amendments to the Truth in Lending Simplification and Reform Act of 1980. Section 103(f) of the Truth in Lending Act was amended by deleting "arrangers of credit" from the definition of "creditor," effective October 1, 1982. Section 104 was amended by exempting from coverage (both prospectively and retroactively) loans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 et seq.). To implement these statutory amendments, the Board is amending § 226.2 of Regulation Z by removing the definition of "arranger of credit" and removing "arrangers of credit" from the "creditor" definition, and amending § 226.3 by adding a new paragraph that exempts loan programs under Title IV of the Higher Education Act of 1965. These amendments are retroactively effective October 1, 1982.

The vast majority of those who commented on the deletion from coverage of arrangers of credit supported the change. A few preferred that the exemption be narrowed to exclude only real estate brokers, but the majority agreed that the regulatory change properly reflected the statutory action.

Only a small number of commenters addressed the exemption for certain student loans. Almost all of the commenters supported the exemption, although a couple of commenters asked that the exemption be broadened to include all student loans.

Amendments to footnote 31a ( § 226.14(a)) and footnote 45a ( § 226.22(a)) are also being made, effective October 1, 1982. These footnotes protect creditors from liability for use of faulty calculation tools. The footnotes provide that an error in the disclosure of the annual percentage rate or finance charge is not considered a violation if: (1) The error results from a corresponding error in a calculation tool used in good faith by the creditor; and (2) upon discovery of the error, the creditor discontinues use of the tool and notifies the Board in writing of the error in the calculation tool. Thus, errors that meet these criteria are not violations and creditors found to have such errors are protected from both civil and administrative actions, particularly restitution.

The Board had eliminated the protection provided by the footnotes as of October 1, 1982, the effective date of the amended act, in the belief that the act's expansion of the bona fide error defense to civil liability made the footnotes unnecessary.

Upon further review, however, the Board believes that the elimination of the protection provided by the footnotes had the effect, without the intent, of exposing creditors to restitution. The amended act protects creditors from civil liability for violations resulting from bona fide errors, even in the absence of the footnotes. However, without the protection of the footnotes creditors could be subject to administrative enforcement, including restitution, for the same errors. The Board therefore proposed to reinstate the protection of the footnotes.

Over 90% of the commenters that addressed the proposal to amend the footnotes supported its adoption without any changes. Very few commenters opposed the amendment.

The creditor's reliance on the tool must be in good faith in order to take advantage of the protection offered by the footnotes. In the Board's view, this imposes on the creditor a reasonable degree of responsibility for assuring that the tool in question provides the degree of accuracy required by the regulation. For example, the creditor might verify the results obtained by use of the tool by comparing those results to the figures obtained by use of another calculation tool. The creditor might also reasonably rely on the expertise of the enforcement agency in making such a determination prior to use of the tool.

Finally, changes to the Regulation Z official staff commentary (Supplement I to Part 226) are being made. Some of the changes correspond to the regulatory amendments implementing the DIA and serve to conform the regulation and commentary. Other commentary changes update the document. This is a periodic update to the commentary, as amended effective September 17, 1982 (47 FR 41388, September 20, 1982) and responds to significant questions that have arisen since the last update. The types of changes being made generally give creditors more flexibility in making disclosures, while preserving basic consumer protections.

For purposes of continuing the commentary as the sole interpretive vehicle of Regulation Z, the staff plans to update the commentary annually. There may, of course, be occasions when updates occur more frequently. It is expected that revisions will be proposed in November for at least a 60-day comment period. Final changes will then be issued after the first of the year, with optional compliance until the uniform effective date of October 1 for mandatory compliance.

2. *Regulatory revisions.* Following is a brief description of the regulatory revisions:

Subpart A -- General

*Section 226.2 Definitions and rules of construction.*

*(a)(3) "Arranger of credit"*

This definition and footnote 2 are removed to implement the Truth in Lending Act amendment to the definition of "creditor" made in the DIA. The paragraph and footnote numbers are reserved for future use in order to avoid the need for renumbering all subsequent definitions and footnotes.

*(a)(17) "Creditor"*

This definition is amended by removing paragraph (a)(17)(ii). The amendment conforms the regulatory definition to the statutory definition as amended by the DIA. Paragraphs (a)(17)(iii), (iv), and (v) of the current definition are redesignated as paragraphs (a)(17)(ii), (iii), and (iv), respectively.

*Section 226.3 Exempt transactions.*

Paragraph (f) is added to exempt loans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965. The DIA Truth in Lending amendments expressly exempt these loans from coverage.

*Sections 226.14 and 226.22 Determination of annual percentage rate.*

The last sentence of both footnote 31a and footnote 45a is removed. This amendment reinstates the protections provided by the two footnotes.

3. *Commentary revisions.* Following is a brief description of the revisions to the commentary:

Subpart A -- General

*Section 226.2 Definitions and rules of construction.*

*2(a)(3) "Arranger of Credit"*

Comments 2(a)(3)-1 through 6 are removed to correspond to the regulatory amendments that remove "arrangers of credit" from the "creditor" definition.

*2(a)(4) "Billing Cycle" or "Cycle"*

Comment 2(a)(4)-1 is revised to eliminate possible confusion over whether the periodic statement must in fact be *sent* within the 4-day interval.

*2(a)(17) "Creditor"*

The work "five" in the first sentence of comment of 2(a)(17)-1 is changed to the word "four".

Comment 2(a)(17)(ii)-1 is removed to conform the commentary to the regulatory amendments that implement the DIA Truth in Lending amendments.

The comment designations -- *Paragraph 2(a)(17)(iv)* and *Paragraph 2(a)(17)(v)* -- are redesignated *Paragraph 2(a)(17)(iii)* and *Paragraph 2(a)(17)(iv),* respectively.

*2(a)(18) "Downpayment"*

Comment 2(a)(18)-1 is revised to include a cross-reference to the commentary to § 226.2(a)(23). Material added to the commentary to § 226.2(a)(23) discusses the allocation of lump-sum payments between the downpayment and the prepaid finance charge.

*2(a)(23) "Prepaid Finance Charge"*

A new comment 2(a)(23)-4 is added to clarify the treatment to be given discounts and other items that are finance charges under § 226.4 in credit sale transactions involving lump-sum payments by a consumer. This comment discusses the allocation of a lump-sum payment between the downpayment and the prepaid finance charge.

*2(a)(24) "Residential Mortgage Transaction"*

A new comment 2(a)(24)-5 is added to clarify whether certain transactions are "to finance the acquisition" of the consumer's principal dwelling and are therefore residential mortgage transactions. The comment also discusses some of the effects this determination has on whether disclosures are required and which ones must be given.

*References*

A sentence is added to the paragraph under *1981 Changes* discussing "arranger of credit" indicating that the definition has been removed from the statute. This reflects the DIA Truth in Lending amendment.

*Section 226.3 Exempt transactions.*

*3(f) Student Loan Programs*

Comment 3(f)-1 is added to clarify which loan programs are administered under Title IV of the Higher Education Act of 1965. This comment corresponds to the regulatory amendment

implementing the DIA Truth in Lending amendments that exempt these loan programs from the regulation.

*Section 226.4 Finance charge.*

*4(d) Insurance*

Comment 4(d)-10 is revised to provide an exception to the requirement that creditors allocate a portion of the premium for coverages that are not VSI or other property insurance when the total amount of the premium in fact attributable to all of the non-VSI coverages included in the VSI policy is $1.00 or less (or in the case of multi-year policies, $5.00 or less).

Subpart B -- Open-End Credit

*Section 226.5 General disclosure requirements.*

*5(a) Form of Disclosures*

Comment 5(a)(2)-3 is added to clarify that the terms "finance charge" and "annual percentage rate" need not be more conspicuous than numerical amounts or percentages. The material has been revised from the proposal, but is unchanged in substance.

*5(b) Time of Disclosures*

Comment 5(b)(1)-3 is expanded to clarify that no new initial disclosures need be given when the consumer's account is closed simply to provide the consumer with a new account number, such as when a credit card is reported lost or stolen and a new account number is assigned for security reasons.

*Section 226.8 Identification of transactions.*

Comment 8-7 is added to give the creditor the option of two means of identifying credit insurance premiums on the periodic statement when the insurance is offered through the creditor but actually provided by another company. In such a case, the creditor could identify the premium using either the rule in § 226.8(a)(2) for "related" sellers and creditors, or the rule in § 226.8(a)(3) for "non-related" sellers and creditors.

*Section 226.9 Subsequent disclosure requirements.*

*9(c) Change in Terms*

The first sentence of comment 9(c)(1)-3 is revised to clarify when the change-in-terms notice must be provided to the consumer in those cases in which the 15-day advance-notice requirement is inapplicable.

Comment 9(c)(1)-3 is revised to clarify the scope of the exception to the 15-day change-in-terms requirement. The revision includes an example of an occurrence that would not be considered an "agreement" for purposes of relieving the creditor of its responsibility to provide an *advance* change-in-terms notice. If the change is the type that has been unilaterally made by the creditor and is of general applicability, advance notice must be given. Thus, the "agreed to" rule would not apply in the following example: A creditor has decided to change a term in its open-end plan. Instead of

providing change-in-terms notices to its customers 15 days in advance of the term change, the creditor decides to wait until each consumer comes to the creditor's office to request a cash advance. At that time, the consumer is given a change-in-terms notice, and, if the consumer agrees to the term change, the advance is made.

The first sentence of comment 9(c)(2)-2 is revised to add the words "or payments," which is merely an editorial change.

Comment 9(c)(2)-2 is revised to give additional guidance on how the change-in-terms requirement may be satisfied when skip features are involved.

*Section 226.15 Right of rescission.*

*15(a) Consumer's Right to Rescind*

Comment 15(a)(3)-4 is revised to clarify that the sale of the consumer's interest in the property terminates the right to rescind, even though the consumer is financing the transaction. The comment has been expanded from the proposal for illustrative purposes.

Subpart C -- Closed-End Credit

*Section 226.17 General disclosure requirements.*

*17(a) Form of Disclosures*

Comment 17(a)(1)-5 is expanded to add one example of "directly related" information. This example, relating to § 226.18(q), responds to inquiries about an appropriate assumption policy disclosure when a transaction involves a due-on-sale clause. The example makes clear that the creditor may refer to the due-on-sale clause in making the disclosure under § 226.18(q).

Comment 17(a)(2)-1 is expanded to clarify that the terms "finance charge" and "annual percentage rate" need not be more conspicuous than numerical amounts or percentages. The material has been renumbered and revised from proposed comment 17(a)(2)-3, but is unchanged in substance from the proposal.

*17(i) Interim Student Credit Extensions*

Comment 17(i)-1 is revised to remove references to the Guaranteed Student Loan Program and the PLUS program. These loan programs are administered under Title IV of the Higher Education Act of 1965 and are thus no longer subject to Regulation Z, pursuant to the statutory amendments exempting these loan programs. A cross-reference to § 226.3(f), which reflects that exemption, has been added to comment 17(i)-1.

Comment 17(i)-4 is deleted. This comment addressed loan programs that are now exempt under the DIA Truth in Lending amendments. Comment 17(i)-5 is redesignated comment 17(i)-4.

*Section 226.18 Content of disclosures.*

*18(f) Variable Rate*

Comment 18(f)-1 is revised to make clear that the variable-rate disclosure applies not only to an increase in the interest component of the annual percentage rate but also to increases in other

elements that affect the rate, such as the rate of required credit life insurance. The comment has been expanded from the proposal for greater clarity.

Comment 18(f)-5 is revised to explain the circumstances under which footnote 43 is available to creditors authorized by recent federal legislation to make alternative mortgage loans. Footnote 43 permits creditors to omit the § 226.18(f) disclosures if variable-rate disclosures are made in accordance with certain variable-rate regulations of other federal agencies. Title VIII of the DIA allows non-federally-chartered housing creditors to offer creative financing in accordance with certain federal regulations, even where applicable state law prohibits such financing by state creditors. The revision to the comment permits those creditors to take advantage of footnote 43, whether or not they are subject to examination by the agencies issuing the regulations. A sentence has been added to the proposal to make clear that creditors using the footnote should look to the other federal regulations rather than to Regulation Z for the timing of the variable-rate disclosures.

Comment 18(f)-5 and the references to other regulations are also revised to reflect the citation to the Federal Home Loan Bank Board's amended adjustable mortgage loan regulation. A reference to the DIA has been added to the statutory references.

*18(q) Assumption Policy*

Comment 18(q)-1 is revised to include a cross-reference to comment 17(a)(1)-5, which permits creditors to state in the Truth in Lending disclosures that a due-on-sale clause is contained in the loan document.

*Section 226.19 Certain residential mortgage transactions.*

*19(a) Time of Disclosure*

Comment 19(a)-3 is revised to clarify when a creditor receives an application that is transmitted by an agent or broker. No change is intended to the general rule that "written application" is defined by the Real Estate Settlement Procedures Act and Regulation X.

*Section 226.20 Subsequent disclosure requirements.*

*20(b) Assumptions*

Comment 20(b)-1 is revised to make clear that assumptions other than those defined in § 226.20(b) do not require disclosures. The language has been modified from the proposal for greater clarity.

Comment 20(b)-7 is added to explain the relationship between the abbreviated disclosures of § 226.20(b)(1) through (5) and the general disclosure requirements of §§ 226.17 and 226.18.

The proposal would have added a comment discussing the timing of assumption disclosures. That comment has not been adopted because the issue is adequately addressed by the definition of consummation in § 226.2(a)(13).

*Section 226.22 Determination of annual percentage rate.*

*References*

The last sentence under *1981 Changes,* reflecting the elimination of footnote 45a, is deleted in light of the reinstatement of that footnote.

*Section 226.23 Right of rescission.*

*23(a) Consumer's Right to Rescind*

Comment 23(a)(3)-3 is revised to clarify that the sale of the consumer's interest in the property terminates the right to rescind, even though the consumer is financing the transaction. The comment has been expanded from the proposal for illustrative purposes.

Subpart D -- Miscellaneous

*Section 226.28 Effect on State laws.*

*28(a) Inconsistent Disclosure Requirements*

The commentary to § 226.28 is expanded by the addition of new comments 28(a)-8 through 28(a)-10, reflecting recent Board determinations on the effect of the Truth in Lending Act on certain consumer credit laws in Arizona, Florida and Missouri.

*Section 226.29 State exemptions.*

*29(a) General Rule*

Comment 29(a)-4 is revised to reflect three additional state exemptions from the Truth in Lending Act granted by the Board since publication of the previous commentary update. The reference to the Oklahoma exemption has been expanded from the proposal to provide more detail on the scope of that exemption.

Appendix D -- Multiple-Advance Construction Loans

The commentary and references to Appendix D are revised to reflect the fact that creditors in certain multiple-advance transactions other than construction loans may also use the appendix.

Appendix H -- Closed-End Model Forms and Clauses

Current comments H-17 through 20 as they reflect the approval under section 113 of the act of student loan disclosure forms issued by the Department of Education are removed. The loan programs to which the forms apply are exempt from the regulation under the recent DIA amendments to the Truth in Lending Act. New comments H-17 through 20 are added to reflect the approval under section 113 of the act of four student loan disclosure forms issued by the Department of Health and Human Services in conjunction with the Health Education Assistance Loan (HEAL) program. That loan program remains subject to the requirements of the regulation.

List of Subjects in 12 CFR Part 226

Advertising, Banks, banking, Consumer protection, Credit, Federal Reserve System, Finance, Truth in lending, Penalties.

PART 226 -- [AMENDED]

§§ 226.2, 226.14, 226.22 [Amended]

4. *Text of Regulatory Revisions.* Pursuant to the authority granted in § 105 of the Truth in Lending Act (15 U.S.C. 1604 as amended), the Board is amending Regulation Z, 12 CFR Part 226, by removing and reserving paragraph (a)(3), and reserving footnote 2 to paragraph (a)(3) of § 226.2; removing paragraph (a)(17)(ii) of § 226.2 and redesignating paragraphs (a)(17) (iii), (iv), and (v) as paragraphs (a)(17) (ii), (iii), and (iv), respectively; adding a new paragraph (f) to § 226.3; and removing the last sentence of both footnote 31a to § 226.14 and footnote 45a to § 226.22, to read as follows:

§ 226.3 Exempt transactions.

(f) *Student loan programs.* Loans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 et seq.).

5. *Text of Commentary Revisions.* The revisions to the commentary (Supplement I to Part 226) read as follows:


Supplement I -- Official Staff Commentary -- TIL-1


* * * * *

Subpart A -- General


* * * * *

§ 226.2 Definitions and rules of construction.


*2(a) Definitions*


* * * * *


*2(a)(3) "Arranger of Credit"*

The comment designation *2(a)(3) "Arranger of Credit"* and comments 2(a)(3)-1 through 6 are deleted in their entirety.


* * * * *


*2(a)(4) "Billing Cycle" or "Cycle"*

1. *Intervals.* In open-end credit plans, the billing cycle determines the intervals for which periodic disclosure statements are required; these intervals are also used as measuring points for other duties of the creditor. Typically, billing cycles are monthly, but they may be more frequent or less frequent (but not less frequent than quarterly).


* * * * *


*2(a)(17) "Creditor"*

The word "five" in the first sentence of comment 2(a)(17)-1 is changed to the word "four". Comment 2(a)(17)(ii)-1 is deleted. Comment designations *Paragraph (a)(17)(iv)* and *Paragraph 2 (a)(17)(v)* are redesignated *Paragraph 2(a)(17)(iii)* and *Paragraph 2(a)(17)(iv)*. The reference to "section 226.2(a)(17)(iv)" in new comment 2(a)(17)(iii)-1 is changed to "section 226.2(a)(17)(iii)." The reference to "section 226.2(a)(17)(v)" in new comment 2(a)(17)(iv)-1 is changed to "section 226.2(a)(17)(iv)."

\* \* \* \* \*

*2(a)(18) "Downpayment"*

1. *Allocation.* \* \* \* (See the commentary to section 226.2(a)(23).)

\* \* \* \* \*

*2(a)(23) "Prepaid Finance Charge"*

\* \* \* \* \*

4. *Allocation of lump-sum payments.* In a credit sale transaction involving a lump-sum payment by the consumer and a discount or other item that is a finance charge under section 226.4, the discount or other item is a prepaid finance charge to the extent the lump-sum payment is not applied to the cash price. For example, a seller sells property to a consumer for $10,000, requires the consumer to pay $3,000 at the time of the purchase, and finances the remainder as a closed-end credit transaction. The cash price of the property is $9,000. The seller is the creditor in the transaction and therefore the $1,000 difference between the credit and cash prices (the discount) is a finance charge. (See the commentary to sections 226.4(b)(9) and 226.4(c)(5).) If the creditor applies the entire $3,000 to the cash price and adds the $1,000 finance charge to the interest on the $6,000 to arrive at the total finance charge, all of the $3,000 lump-sum payment is a downpayment and the discount is not a prepaid finance charge. However, if the creditor only applies $2,000 of the lump-sum payment to the cash price, then $2,000 of the $3,000 is a downpayment and the $1,000 discount is a prepaid finance charge.

*2(a)(24) "Residential Mortgage Transaction"*

\* \* \* \* \*

5. *Acquisition.* A transaction is not "to finance the acquisition" of the consumer's principal dwelling (and therefore is not a residential mortgage transaction) is the consumer had previously purchase the dwelling and acquired some title to the dwelling, even though the consumer has not acquired full legal title. Thus, the following types of transactions are not residential mortgage transactions:

-- The financing of a balloon payment due under a land sale contract.

-- An extension of credit made to a joint owner of property to buy out the other joint owner's interest.

As a result, in giving the disclosures for these transactions several provisions of the regulation are not applicable, for example, the exceptions to the right of rescission (sections 226.23(f)(1) and 226.15(f)(1)), the early disclosure requirement (section 226.19(a)), and the disclosure concerning assumability (section 226.18(q)). In the following situation, by contrast, since the transaction is not

a residential mortgage transaction, no disclosures are required by section 226.20(b) and therefore the right of rescission does not apply:

-- A written agreement between a creditor holding a seller's mortgage and the buyer of the property which allows the buyer to assumer the mortgage, where the buyer previously purchased the property and agreed with the seller to make the mortgage payments.


* * * * *


*References*


* * * * *


*1981 changes:*


* * * * *


*"Arranger of Credit"* * * * This definition was deleted effective October 1, 1982.


* * * * *


§ 226.3 Exempt transactions.


* * * * *


*3(f) Student Loan Programs*

1. *Coverage.* This exemption applies to the Guaranteed Student Loan program (administered by the federal government, state, and private non-profit agencies), the Auxiliary Loans to Assist Students (also known as PLUS) program, and the National Direct Student Loan program.


* * * * *

§ 226.4 Finance charge.


* * * * *


*4(d) Insurance*


* * * * *


10. *Single-interest insurance defined.* The term "single-interest insurance" as used in the regulation refers only to the types of coverage traditionally included in the term "vendor's single-interest insurance" (or "VSI"), that is, protection of tangible property against normal property damage, concealment, confiscation, conversion, embezzlement, and skip. Some comprehensive insurance policies may include a variety of additional coverages, such as repossession insurance and holder-in-due-course insurance. These types of coverage do not constitute single-interest insurance for

purposes of the regulation, and premiums for them do not qualify for exclusion from the finance charge under section 226.4(d). If a policy that is primarily VSI also provides coverages that are not VSI or other property insurance, a portion of the premiums must be allocated to the nonexcludable coverages and included in the finance charge. However, such allocation is not required if the total premium in fact attributable to all of the non-VSI coverages included in the policy is $1.00 or less (or $5.00 or less in the case of a multi-year policy).

* * * * *

Subpart B -- Open-End Credit

§ 226.5 General disclosure requirements.

*5(a) Form of Disclosures*

* * * * *

*Paragraph 5(a)(2)*

* * * * *

3. *Disclosure of figures -- exception to "more conspicuous" rule.* The terms "annual percentage rate" and "finance charge" need not be more conspicuous than figures (including, for example, numbers, percentages, and dollar signs).

*5(b) Time of Disclosures*

*5(b)(1) Initial disclosures*

* * * * *

3. *Reopening closed account.* If an account has been closed (for example, due to inactivity, cancellation, or expiration) and then is reopened, new initial disclosures are required. No new initial disclosures are required, however, when the account is closed merely to assign it a new number (for example, when a credit card is reported lost or stolen) and the "new" account then continues on the same terms.

* * * * *

§ 226.8 Identification of transactions.

* * * * *

7. *Credit insurance offered through the creditor.* When credit insurance that is not part of the finance charge (for example, voluntary credit life insurance) is offered to the consumer through the creditor, but is actually provided by another company, the creditor has the option of identifying the premiums in one of two ways on the periodic statement. The creditor may describe the premiums using either the rule in section 226.8(a)(2) for "related" sellers and creditors, or the rule in section 226.8(a)(3) for "non-related" sellers and creditors. This means, therefore, that the creditor may

identify the insurance either by providing, under section 226.8(a)(2), a brief identification of the services provided (for example, "credit life insurance"), or by disclosing, under section 226.8(a)(3), the name and address of the company providing the insurance (for example, ABC Insurance Company, New York, New York). In either event, the creditor would, of course, also provide the amount and the date of the transaction.

* * * * *

§ 226.9 Subsequent disclosure requirements.

* * * * *

*9(c) Change in Terms*

* * * * *

*9(c)(1) Written Notice Required*

* * * * *

3. *Timing -- advance notice not required.* Advance notice of 15 days is not necessary -- that is, a notice of change in terms is required, but it may be mailed or delivered as late as the effective date of the change -- in two circumstances:

-- If there is an increased periodic rate or any other finance charge attributable to the consumer's delinquency or default

-- If the consumer agrees to the particular change. This provision is intended for use in the unusual instance when a consumer substitutes collateral or when the creditor can advance additional credit only if a change relatively unique to that consumer is made, such as the consumer's providing additional security or paying an increased minimum payment amount. Therefore, the following are not "agreements" between the consumer and the creditor for purposes of section 226.9(c)(1): the consumer's general acceptance of the creditor's contract reservation of the right to change terms; the consumer's use of the account (which might imply acceptance of its terms under state law); and the consumer's acceptance of a unilateral term change that is not particular to that consumer, but rather is of general applicability to consumers with that type of account.

* * * * *

*9(c)(2) Notice Not Required*

* * * * *

2. *Skip features.* If a credit program allows consumers to skip or reduce one or more payments during the year, or involves temporary reductions in finance charges, no notice of the change in terms is required either prior to the reduction or upon resumption of the higher rates or payments if these features are explained on the initial disclosure statement (including an explanation of the terms upon resumption). For example, a merchant may allow consumers to skip the December payment to encourage holiday shopping, or a teachers' credit union may not require payments during summer vacation. Otherwise, the creditor must give notice prior to resuming the original

schedule or rate, even though no notice is required prior to the reduction. The change-in-terms notice may be combined with the notice offering the reduction. For example, the periodic statement reflecting the reduction or skip feature may also be used to notify the consumer of the resumption of the original schedule or rate, either by stating explicitly when the higher payment or charges resume, or by indicating the duration of the skip option. Language such as "You may skip your October payment," or "We will waive your finance charges for January," may serve as the change-in-terms notice.

\* \* \* \* \*

§ 226.15 Right of rescission.

\* \* \* \* \*

*Paragraph 15(a)(3)*

\* \* \* \* \*

4. *Unexpired right of rescission.* When the creditor has failed to take the action necessary to start the three-day rescission period running the right to rescind automatically lapses on the occurrence of the earliest of the following three events:

-- The expiration of three years after the occurrence giving rise to the right of rescission

-- Transfer of all the consumer's interest in the property

-- Sale of the consumer's interest in the property, including a transaction in which the consumer sells the dwelling and takes back a purchase money note and mortgage or retains legal title through a device such as an installment sale contract

Transfer of all the consumer's interest includes such transfers as bequests and gifts. A sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind. As provided in section 125 of the act, the three-year limit may be extended by an administrative proceeding to enforce the provisions of § 226.15. A partial transfer of the consumer's interest, such as a transfer bestowing co-ownership on a spouse, does not terminate the right of rescission.

\* \* \* \* \*

Subpart C -- Closed-End Credit

§ 226.17 General disclosure requirements.

*17(a) Form of Disclosures*

*Paragraph 17(a)(1)*

\* \* \* \* \*

5. *Directly related.* The segregated disclosures may, at the creditor's option, include any information that is directly related to those disclosures. Directly related information includes, for example, the

following:

* * * * *

-- A statement that a due-on-sale clause is contained in the loan document. For example, the disclosure given under section 226.18(q) may state, "Someone buying your home may, subject to conditions in the due-on-scale clause contained in the loan document, assume the remainder of the mortgage on the original terms."

* * * * *

*Paragraph 17(a)(2)*

1. *When disclosures must be more conspicuous.* The following rules apply to the requirement that the terms "annual percentage rate" and "finance charge" be shown more conspicuously:

* * * * *

-- The terms need not be more conspicuous than figures (including, for example, numbers, percentages, and dollar signs)

* * * * *

*17(i) Interim Student Credit Extensions*

1. *Definition.* Student credit plans involve extensions of credit for education purposes where the repayment amount and schedule are not known at the time credit is advanced. These plans include loans made under any student credit plan, whether government or private, where the repayment period does not begin immediately. (Certain student credit plans that meet this definition are exempt from Regulation Z. See section 226.3(f).) Creditors in interim student credit extensions need not disclose the terms set forth in this paragraph at the time the credit is actually extended but must make complete disclosures at the time the creditor and consumer agree upon the repayment schedule for the total obligation. At that time, a new set of disclosures must be made of all applicable items under section 226.18.

* * * * *

Comment 17(i)-4 is removed. Comment 17(i)-5 is redesignated comment 17(i)-4.

* * * * *

§ 226.18 Content of disclosures.

* * * * *

*18(f) Variable Rate*

1. *Coverage.* The requirements of section 226.18(f) apply to all transactions in which the terms of the legal obligation allow the creditor to increase the rate originally disclosed to the consumer. It

Search - 11 Results - 48 fr 14882

includes not only increases in the interest rate but also increases in other components, such as the rate of required credit life insurance. The provisions, however, do not apply to increases resulting from delinquency (including late payment), default, assumption, acceleration or transfer of the collateral.

\* \* \* \* \*

5. *Other variable-rate regulations.* Transactions in which the creditor is required to comply with and has complied with variable-rate regulations of other federal agencies are exempt from the requirements of section 226.18(f), by virtue of footnote 43. Those variable-rate regulations include the adjustable mortgage loan instrument regulation issued by the Federal Home Loan Bank Board (12 CFR 545.6-2(a)) and the adjustable-rate mortgage regulation issued by the Comptroller of the Currency (12 CFR 29). The exception in footnote 43 is also available to creditors that are required by state law to comply with the federal variable-rate regulations noted above and to creditors that are authorized by Title VIII of the Depository Institutions Act of 1982 (Pub. L. 97-320) to make loans in accordance with those regulations. Creditors using this exception should comply with the timing requirements of those regulations rather than the timing requirements of Regulation Z in making the variable-rate disclosures.

\* \* \* \* \*

*18(q) Assumption Policy*

1. *Policy statement.* Because a creditor's assumption policy may be based on a variety of circumstances not determinable at the time the disclosure is made, the creditor may use phrases such as "subject to conditions" or "under certain circumstances" in complying with section 226.18 (q). The provision requires only that the consumer be told whether or not a subsequent purchaser might be allowed to assume the obligation on its original terms and does not contemplate any explanation of the criteria or conditions for assumability. However, the creditor may state that a due-on-sale clause is contained in the loan document. (See comment 17(a)(1)-5 regarding directly related information.)

\* \* \* \* \*

*References*

*Statute:* Section 128, the Garn-St Germain Depository Institutions Act of 1982 (Pub. L. 97-320) and the Real Estate Settlement Procedures Act (12 U.S.C. 2602).

\* \* \* \* \*

*Other regulations:* 12 CFR 545.6-2(a) and 12 CFR Part 29.

\* \* \* \* \*

§ 226.19 Certain residential mortgage transactions.

*19(a) Time of Disclosure*

\* \* \* \* \*

3. *Written application.* Creditors may rely on RESPA and Regulation X (including any interpretations issued by HUD) in deciding whether a "written application" has been received. In general, Regulation X requires disclosures "to every person from whom the Lender receives or for whom it prepares a written application on an application form or forms normally used by the Lender for a Federally Related Mortgage Loan" (24 CFR 3500.6(a)). An application is received when it reaches the creditor in any of the ways applications are normally transmitted -- by mail, hand delivery, or through an intermediary agent or broker. If an application reaches the creditor through an intermediary agent or broker, the application is received when it reaches the creditor, rather than when it reaches the agent or broker.

\* \* \* \* \*

§ 226.20 Subsequent disclosure requirements.

\* \* \* \* \*

*20(b) Assumptions*

1. *General definition.* An assumption as defined in section 226.20(b) is a new transaction and new disclosures must be made to the subsequent consumer. An assumption under the regulation requires the following three elements:

-- A residential mortgage transaction.

-- An express acceptance of the subsequent consumer by the creditor.

-- A written agreement.

The assumption of a nonexempt consumer credit obligation requires no disclosures unless all three elements are present. For example, an automobile dealer need not provide Truth in Lending disclosures to a customer who assumes an existing obligation secured by an automobile. However, a residential mortgage transaction with the elements described in § 226.20(b) is an assumption that calls for new disclosures; the disclosures must be given whether or not the assumption is accompanied by changes in the terms of the obligation. (See comment 2(a)(24)-5 for a discussion of assumptions that are not considered residential mortgage transactions.)

\* \* \* \* \*

7. *Abbreviated disclosures.* The abbreviated disclosures permitted for assumptions of transactions involving add-on or discount finance charges must be made clearly and conspicuously in writing in a form that the consumer may keep. However, the creditor need not comply with the segregation requirement of § 226.17(a)(1). The terms "annual percentage rate" and "total of payments," when disclosed according to section 226.20(b) (4) and (5), are not subject to the description requirements of section 226.18 (e) and (h). The term "annual percentage rate" disclosed under section 226.20(b) (4) need not be more conspicuous than other disclosures.

\* \* \* \* \*

§ 226.22 Determination of the annual percentage rate.

\* \* \* \* \*

*References*

* * * * *

*1981 changes:* The section now provides a larger tolerance ( 1/4 of 1 percentage point) for irregular transactions.

* * * * *

§ 226.23 Right of rescission.

* * * * *

*23(a) Consumer's Right to Rescind*

* * * * *

*Paragraph 23(a)(3)*

* * * * *

3. *Unexpired right of rescission.* When the creditor has failed to take the action necessary to start the three-business day rescission period running, the right to rescind automatically lapses on the occurrence of the earliest of the following three events:

-- The expiration of three years after consummation of the transaction.

-- Transfer of all the consumer's interest in the property.

-- Sale of the consumer's interest in the property, including a transaction in which the consumer sells the dwelling and takes back a purchase money note and mortgage or retains legal title through a device such as an installment sale contract.

Transfer of all the consumers' interest includes such transfers as bequests and gifts. A sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind. As provided in section 125 of the act, the three-year limit may be extended by an administrative proceeding to enforce the provisions of this section. A partial transfer of the consumer's interest, such as a transfer bestowing co-ownership on a spouse, does not terminate the right of rescission.

* * * * *

Subpart D -- Miscellaneous

* * * * *

§ 226.28 Effect on state laws.

Search - 11 Results - 48 fr 14882

*28(a) Inconsistent Disclosure Requirements*

\* \* \* \* \*

8. *Preemption determination -- Arizona.* Effective October 1, 1983, the Board has determined that the following provisions in the state law of Arizona are preempted by the Federal law:

-- Section 44-287 B.5 -- Disclosure of final cash price balance. This provision is preempted in those transactions in which the amount of the final cash price balance is the same as the Federal amount financed, since in such transactions the State law requires the use of a term different from the Federal term to represent the same amount.

-- Section 44-287 B.6 -- Disclosure of finance charge. This provision is preempted in those transactions in which the amount of the finance charge is different from the amount of the Federal finance charge, since in such transactions the State law requires the use of the same term as the Federal law to represent a different amount.

-- Section 44-287 B.7 -- Disclosure of the time balance. The time balance disclosure provision is preempted in those transactions in which the amount is the same as the amount of the Federal total of payments, since in such transactions the State law requires the use of a term different from the Federal term to represent the same amount.

9. *Preemption determination -- Florida.* Effective October 1, 1983, the Board has determined that the following provisions in the State law of Florida are preempted by the Federal law:

-- Sections 520.07(2)(f) and 520.34(2)(f) -- Disclosure of amount financed. This disclosure is preempted in those transactions in which the amount is different from the Federal amount financed, since in such transactions the State law requires the use of the same term as the Federal law to represent a different amount.

-- Sections 520.07(2)(g), 520.34(2)(g), and 520.35(2)(d) -- Disclosure of finance charge and a description of its components. The finance charge disclosure is preempted in those transactions in which the amount of the finance charge is different from the Federal amount, since in such transactions the State law requires the use of the same term as the Federal law to represent a different amount. The requirement to describe or itemize the components of the finance charge, which is also included in these provisions, is not preempted.

-- Sections 520.07(2)(h) and 520.34(2)(h) -- Disclosure of total of payments. The total of payments disclosure is preempted in those transactions in which the amount differs from the amount of the Federal total of payments, since in such transactions the State law requires the use of the same term as the Federal law to represent a different amount than the Federal law.

-- Sections 520.07(2)(i) and 520.34(2)(i) -- Disclosure of deferred payment price. This disclosure is preempted in those transactions in which the amount is the same as the Federal total sale price, since in such transactions the State law requires the use of a different term than the Federal law to represent the same amount as the Federal law.

10. *Preemption determination -- Missouri.* Effective October 1, 1983, the Board has determined that the following provisions in the State law of Missouri are preempted by the Federal law:

-- Sections 365.070-6(9) and 408.260-5(6) -- Disclosure of principal balance. This disclosure is preempted in those transactions in which the amount of the principal balance is the same as the Federal amount financed, since in such transactions the State law requires the use of a term different from the Federal term to represent the same amount.

-- Sections 365.070-6(10) and 408.260-5(7) -- Disclosure of time price differential and time charge, respectively. These disclosures are preempted in those transactions in which the amount is the same as the Federal finance charge, since in such transactions the State law requires the use of a term

different from the Federal law to represent the same amount.

-- Sections 365.070-2 and 408.260-2 -- Use of the terms "time price differential" and "time charge" in certain notices to the buyer. In those transactions in which the State disclosure of the time price differential or time charge is preempted, the use of the terms in this notice also is preempted. The notice itself is not preempted.

-- Sections 365.070-6(11) and 408.260-5(8) -- Disclosure of time balance. The time balance disclosure is preempted in those transactions in which the amount is the same as the amount of the Federal total of payments, since in such transactions the State law requires the use of a different term than the Federal law to represent the same amount.

-- Sections 365.070-6(12) and 408.260-5(9) -- Disclosure of time sale price. This disclosure is preempted in those transactions in which the amount is the same as the Federal total sale price, since in such transactions the State law requires the use of a different term from the Federal law to represent the same amount.


* * * * *

§ 226.29 State exemptions.


*29(a) General Rule*


* * * * *

4. *Exemptions granted.* Effective October 1, 1982, the Board has granted the following exemptions from portions of the revised Truth in Lending Act:

-- *Maine.* Credit or lease transactions subject to the Maine Consumer Credit Code and its implementing regulations are exempt from chapters 2, 4 and 5 of the Federal act. (The exemption does not apply to transactions in which a federally chartered institution is a creditor or lessor.)

-- *Connecticut.* Credit transactions subject to the Connecticut Truth in Lending Act are exempt from chapters 2 and 4 of the Federal act. (The exemption does not apply to transactions in which a federally chartered institution is a creditor.)

-- *Massachusetts.* Credit transactions subject to the Massachusetts Truth in Lending Act are exempt from chapters 2 and 4 of the Federal act. (The exemption does not apply to transactions in which a federally chartered institution is a creditor.)

-- *Oklahoma.* Credit or lease transactions subject to the Oklahoma Consumer Credit Code are exempt from chapters 2 and 5 of the Federal act. (The exemption does not apply to §§ 132 through 135 of the Federal act, nor does it apply to transactions in which a federally chartered institution is a creditor or lessor.)

-- *Wyoming.* Credit transactions subject to the Wyoming Consumer Credit Code are exempt from chapter 2 of the Federal act. (The exemption does not apply to transactions in which a federally chartered institution is a creditor.)


* * * * *

Appendix D -- Multiple-Advance Construction Loans

1. *General rule.* Appendix D provides a special procedure that creditors may use, at their option, to estimate and disclose the terms of multiple-advance construction loans when the amounts or timing

of advances is unknown at consummation of the transaction. This appendix reflects the approach taken in section 226.17(c)(6)(ii), which permits creditors to provide separate or combined disclosures for the construction period and for the permanent financing, if any; i.e., the construction phase and the permanent phase may be treated as one transaction or more than one transaction. Appendix D may also be used in multiple-advance transactions other than construction loans, when the amounts or timing of advances is unknown at consummation.

2. *Variable-rate multiple-advance loans.* The hypothetical disclosure required in most variable-rate transactions by § 226.18(f)(4) is not required for miltiple-advance loans disclosed pursuant to Appendix D, Part I.


* * * * *


*References*


* * * * *


*1981 Changes:* The use of Appendix D is limited to miltiple-advance loans for construction purposes or analogous types of transactions.


* * * * *


Appendix H -- Closed-End Model Forms and Clauses


* * * * *


17. *HRSA-500-1 9-82.* Pursuant to section 113(a) of the Truth in Lending Act, Form HRSA-500-1 9-82 issued by the U.S. Department of Health and Human Services for certain student loans has been approved. The form may be used for all Health Education Assistance Loans (HEAL) with a variable interest rate that are interim student credit extensions as defined in Regulation Z.

18. *HRSA-500-2 9-82.* Pursuant to section 113(a) of the Truth in Lending Act, Form HRSA-500-2 9-82 issued by the U.S. Department of Health and Human Services for certain student loans has been approved. The form may be used for all HEAL loans with a fixed interest rate that are interim student credit extensions as defined in Regulation Z.

19. *HRSA-502-1 9-82.* Pursuant to section 113(a) of the Truth in Lending Act, Form HRSA-502-1 9-82 issued by the U.S. Department of Health and Human Services for certain student loans has been approved. The form may be used for all HEAL loans with a variable interest rate in which the borrower has reached repayment status and is making payments of both interest and principal.

20. *HRSA-502-2 9-82.* Pursuant to section 113(a) of the Truth in Lending Act, Form HRSA-502-2 9-82 issued by the U.S. Department of Health and Human Services for certain student loans has been approved. The form may be used for all HEAL loans with a fixed interest rate in which the borrower has reached repayment status and is making payments of both interest and principal.


* * * * *


By order of the Board of Governors of the Federal Reserve System, March 31, 1983.


William W. Wiles,

Secretary of the Board.
[FR Doc. 83-8874 Filed 4-1-83; 2:13 pm]

BILLING CODE 6210-01-M

Source: Legal > Federal Legal - U.S. > FR - Federal Register ⓘ
Terms: **48 fr 14882**  (Edit Search)
View: Full
Date/Time: Tuesday, December 7, 2004 - 3:49 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Source: Legal > Federal Legal - U.S. > FR - Federal Register ⓘ
Terms: **48 fr 14890** (Edit Search)

*48 FR 14890*

SMALL BUSINESS ADMINISTRATION

AGENCY: Small Business Administration.

13 CFR Part 113

Nondiscrimination in Federally Assisted Programs of SBA; Effectuation of Policies of Federal Government and SBA

[Rev. 1, Amdt. 3]

**48 FR 14890**

April 6, 1983

ACTION: Final rule.

SUMMARY: In accordance with the requirement of 28 CFR 42.403(d) and in effectuation of Federal government and Small Business Administration policies against discrimination, the Small Business Administration is revising Appendix A of Part 113 by updating its listing of programs that receive Federal financial assistance and by including all nonfinancial programs. In addition, we are amending our definition of "Federal financial assistance" to coincide with the definition which appears at 28 CFR 42.102(c).

DATE: Effective April 6, 1983.

FOR FURTHER INFORMATION CONTACT: Adelino Sanchez, Chief, Office of Civil Rights Compliance, Small Business Administration, 1441 L Street, NW, Room 501, Washington, D.C. 20416, (202) 653-6054.

**TEXT:**
SUPPLEMENTARY INFORMATION: In accordance with the requirements of 28 CFR 42.403(d), published December 1, 1976, there was published in the Federal Register (47 FR 49851-49852) a notice that the Small Business Administration proposed the amendment of its Appendix A to include an updated listing of all financial assistance programs, and by adding a listing of nonfinancial assistance programs which are subject to the nondiscrimination provisions of this part. The definition of "financial assistance" was also amended to coincide with the definition of "Federal financial assistance" as it appears at § 42.102(c) of Title 28 of the Code of Federal Regulations.

Interested parties were given until December 3, 1982, to submit comments, suggestions or objections concerning this proposed amendment. No comments were received.

SBA hereby certifies that this rule, will not constitute a major rule for the purposes of Executive Order 12291. In addition, for purposes of the Regulatory Flexibility Act, this rule will not have a significant economic impact on a substantial number of small entities. The rule constitutes a nonsubstantive procedural change, and by its terms will not significantly affect the administration of any of SBA's financial assistance programs.

**14**

List of Subjects in 13 CFR Part 113

Aged, Civil rights, handicapped, Loan programs -- business, Marital status discrimination, Religious discrimination, Sex discrimination, Small businesses.

PART 113 -- [AMENDED]

Accordingly, pursuant to the authority contained in 5(b)(6) of the Small Business Act (15 U.S.C. 634 (b)(6)), Part 113, Chapter I, Title 13 of the Code of Federal Regulations, is amended as follows:

1. Section 113.2(a) is revised to read as follows:

§ 113.2 Definitions.

\* \* \* \* \*

(a) The term "Federal financial assistance" includes (1) grants and loans of Federal funds, (2) the grant or donation of Federal property and interests in property, (3) the detail of Federal personnel, (4) the sale and lease of, and the permission to use (on other than a casual or transient basis), Federal property or any interest in such property without consideration, or at a nominal consideration, or at a consideration which is reduced for the purpose of assisting the recipient, or in recognition of the public interest to be served by such sale or lease to the recipient, and (5) any Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance.

\* \* \* \* \*

2. Appendix A of Part 113 of Title 13 of the Code of Federal Regulations is revised to read as follows:

## Appendix A

| Name of program | Authority |
| --- | --- |
| Business Loans | Small Business Act, Section 7(a) |
| Debtor State Development companies (501) and their small business concerns | Small Business Investment Act, Title V |
| Debtor State Development companies (502) and their small business concerns | Small Business Investment Act, Title V |
| Debtor certified development companies (503) and their small business concerns | Small Business Investment Act, Title V |
| Debtor small business investment companies and their small business concerns | Small Business Investment Act, Title III |
| Pollution Control | Small Business Investment |
| Surety Bond Guarantees | Small Business Investment Act, Title IV, Part B |
| Disaster Loans: | |
| Physical, including riot | Small Business Act, Section 7(b)(1) |
| Economic Injury (EIDL) | Small Business Act, Section 7(b)(2) |
| Federal Action Loan Program | Small Business Act, Section 7(b)(3) (No funds have been authorized for this programs for FY 1982 through FY 1984) |
| Women's Business Enterprise | Executive Order 12138 |
| Procurement Automated source System | Small Business Act, Section 8 |
| Business Development Program | Small Business Act, Section 8(a) |
| Subcontracting Program | Small Business Act, Section 8(d) |
| Small Business Institute | Small Business Act, Section 8(b)(1) |

| | |
|---|---|
| Certificate of Competency | Small Business Act, Section 8(b)(7) |
| Technology Assistance Program | Small Business Act, Section 9 |
| Small Business Development Centers | Small Business Act, Section 21 |
| International Trade Program | Small Business Act, Section 22 |
| Technical and Management Assistance | Small Business Act, Stection 7(j) |
| Service Corps of Retired Executives and Active Corps of Executive | Small Business Act, Section 8(b)(1) |

(Catalog of Federal Domestic Assistance Programs No. 59.001 through 59.031.)

Dated: March 25, 1983.


James C. Sanders,

Administrator.
[FR Doc. 83-8881 Filed 4-5-83; 8:45 am]

BILLING CODE 8025-01-M


Source: Legal > Federal Legal - U.S. > FR - Federal Register ⓘ
Terms: 48 fr 14890  (Edit Search)
View: Full
Date/Time: Tuesday, December 7, 2004 - 3:45 PM EST


About LexisNexis | Terms and Conditions


Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.