UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMY PALMER,

    Plaintiff,

        v.

CHAMPION MORTGAGE,

    Defendant.

Civil Action No. 04-11-954-RCL

**DEFENDANT CHAMPION MORTGAGE,
A DIVISION OF KEYBANK NATIONAL ASSOCIATION'S
<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

W. Scott O'Connell (#559669)
Patricia L. Peard (#642213)
NIXON PEABODY LLP
889 Elm Street
Manchester, NH 03101
(603) 628-4000
soconnell@nixonpeabody.com
ppeard@nixonpeabody.com

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ..................................................................................ii

RELEVANT PROCEDURAL BACKGROUND....................................................1

ARGUMENT ..........................................................................................................2

   I.     STANDARD OF REVIEW ...........................................................................2

   II.    PLAINTIFF'S ATTEMPT TO RESCIND IS TIME-BARRED AND SHOULD BE DISMISSED........................................................................................3

   III.   PLAINTIFF'S CLAIMS ARE TIME-BARRED AND SHOULD BE DISMISSED..................................................................................................5

   IV.   PLAINTIFF'S CLAIM UNDER MGL CH. 140D CANNOT BE MAINTAINED BECAUSE IT IS PREEMPTED BY THE NATIONAL BANKING ACT AS CLARIFIED BY THE OCC PREEMPTION RULES................................6

       a. State Laws Cannot Impose Obligations on National Banks Beyond Those Set by the OCC ...............................................................................6

       b. State Laws Purporting to Regulate National Banks are Largely Pre-empted by Federal Law………………………………………………………..…10

CONCLUSION.........................................................................................................14

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Barnett Bank, N.A. v. Nelson*,
517 U.S. 25 (1996) ..................................................................................................8, 9

*Botelho v. Citicorp Mortgage*,
195 B.R. 558 (Bankr. D. Mass. 1996) ........................................................................5

*Bourisquot v. Citibank F.S.B.*,
323 F. Supp. 2d 350 (D. Conn. 2004) ........................................................................6

*Conference of State Bank Supervisors v. Conover*,
710 F.2d 878 (D.C. Cir. 1983)....................................................................................7

*Davis v. Elmira Savings Bank*,
161 U.S. 275 (1896) ...................................................................................................9

*In re Desrosiers*,
212 B.R. 716 (Bankr. D. Mass. 1997) ......................................................................11

*In re Fidler*,
226 B.R. 734 (Bankr. D. Mass. 1998) ......................................................................11

*M. Nahas & Co., Inc. v. First National Bank of Hot Springs*,
930 F.2d 608 (8th Cir. 1991) ......................................................................................6

*Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*,
439 U.S. 299 (1978) ...................................................................................................8

*McCulloch v. Maryland*,
17 U.S. 316 (1819) .....................................................................................................9

*Melvin v. United States Bank, N.A.*,
2001 U.S. Dist. LEXIS 24716 (D. Mass. 2001) .......................................................11

*In re Myers*,
175 B.R. 122 (Bankr. D. Mass. 1994) ......................................................................11

*Nationsbank of North Carolina, N.A. v. Variable Annuity life Ins. Co.*,
513 U.S. 251 (1995) ...................................................................................................6

*Nichols v. Mid-Penn Consumer Discount Co.*,
1989 U.S. Dist. LEXIS 4796 (E.D. Pa. 1989) ............................................................5

*Rodrigues v. Members Mortgage Co.*,
323 F. Supp. 2d 202 (D. Mass. 2004)..................................................................................5, 11

*Salois v. Dime Savings Bank*,
1996 U.S. Dist. LEXIS 21901 (D. Mass. 1996) ...............................................................................2

*Semar v. Platte Valley Federal Savings & Loan Ass'n*,
791 F.2d 699 (9th Cir. 1986) ............................................................................................................5

*Smith v. American Financial Systems, Inc.*,
737 F.2d 1549 (11th Cir. 1984) .......................................................................................................5

*Stein v. Royal Bank of Canada*,
239 F.3d 389 (1st Cir. 2001)............................................................................................................2

*Tiffany v. Nat'l Bank of Missouri*,
85 U.S. 409 (1874) ..........................................................................................................................8

*United States v. Harris*,
530 F.2d 576 (4th Cir. 1976) .........................................................................................................12

*United States v. Locke*,
529 U.S. 89 (2000) ..........................................................................................................................8

*Wells Fargo Bank, N.A. v. Boutris*,
265 F. Supp. 2d 1162 (E.D. Cal. 2003) ...........................................................................................8

## STATE CASES

*Mayo v. Key Financial Services, Inc.*,
1994 WL. 879676 (Ma. Super. 1994)..............................................................................................5

## FEDERAL STATUTES

12 U.S.C. § 24 ..............................................................................................................................6, 9

12 U.S.C. § 93a .................................................................................................................................7

15 U.S.C. § 1633 ........................................................................................................................10, 11

15 U.S.C. § 1635 ....................................................................................................................3, 4, 10

15 U.S.C. § 1640 ...........................................................................................................5, 6, 10, 14

12 C.F.R. § 5.34..............................................................................................................................12

12 C.F.R. § 34.1 ........................................................................................................................12

12 C.F.R. § 226.15......................................................................................................................4

12 C.F.R. § 226.23......................................................................................................................3

12 C.F.R. § 226.28....................................................................................................................12

12 C.F.R. § 226.29.............................................................................................................10, 11

48 Fed. Reg. 14882..................................................................................................................10

48 Fed. Reg. 14890 (April 6, 1983).........................................................................................10

69 Fed. Reg. at 1904....................................................................................................7, 10, 11, 12

69 Fed. Reg. at 1906................................................................................................................12

69 Fed. Reg. at 1907..............................................................................................................6, 7

69 Fed. Reg. 1908 ....................................................................................................................7

69 Fed. Reg. at 1917, § 34.3(a) ..............................................................................................13

## STATE STATUTES

M.G.L. ch. 140D............................................................................................................. passim

## OTHER AUTHORITIES

Ralph J. Rohrer,
*The Law of Truth in Lending* 833, 8.03[2][a] (1984) .........................................................5

Charles A. Wright & Arthur R. Miller,
*Federal Practice & Procedure*, § 1277 n.13 (1990) .........................................................2

Defendant Champion Mortgage, a Division of KeyBank National Association ("Champion"), by and through its attorneys, Nixon Peabody LLP, moves to dismiss the plaintiff's Complaint because she has failed to state a claim upon which relief can be granted.

### RELEVANT FACTUAL BACKGROUND[1]

In order to consolidate her debt, including her existing mortgage, the plaintiff obtained a loan in the amount of $220,000 from Champion and executed a promissory note in its favor. *See* Plaintiff's Complaint, at ¶¶ 9-10. The closing occurred on March 28, 2003. The plaintiff admits that at the closing she signed a note, a mortgage, a Truth in Lending Statement, and a HUD-1 Settlement Statement. *See* Complaint, at ¶ 10. She also admits that several days after the closing she received the "required material disclosures and copies of other pertinent closing documents." *See* Complaint, at ¶ 11.

By this action, the plaintiff attempts to rescind the loan transaction more than a year after Champion made the "required material disclosures." In particular, on or about August 6, 2004, the plaintiff allegedly sent a notice to the office where the closing on her loan transaction occurred indicating her intent to rescind the loan. *See* Complaint, at ¶¶ 11. For the reasons set forth below, the plaintiff's attempt to rescind, and any claimed damages, cannot be maintained as a matter of law, and this Court should dismiss the Complaint.

### ARGUMENT

**I.  STANDARD OF REVIEW**

Although this Court must construe the plaintiff's Complaint liberally on a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), it is well-established that the

---

[1] Champion assumes the truth of the plaintiff's well-pleaded facts solely for the purpose of this motion to dismiss.

M116837.1                                            1

Complaint still must allege the material elements of a cause of action cognizable under the law. Indeed, under Rule 12(b)(6), it is still essential that the pleading enable the defendant to determine the nature of the plaintiff's grievances and the relief she seeks in consequence of the alleged wrongs. The rule that the facts alleged are presumed to be true does not apply, however, to legal conclusions or to factual claims which are either inherently incredible or flatly contradicted by documentary evidence. *Stein v. Royal Bank of Canada*, 239 F.3d 389, 392 (1st Cir. 2001) (court will not accept a complainant's unsupported conclusions or interpretations of law).

A statute of limitations defense may be addressed in a Rule 12(b)(6) motion where—as here—the defense is obvious on the face of the pleadings. *Salois v. Dime Savings Bank*, 1996 U.S. Dist. LEXIS 21901, *14 (D. Mass. 1996) (citing 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, § 1277 n.13 (1990)). As the plaintiff's Complaint is time-barred, it fails to state a claim upon which relief can be granted and must be dismissed. As the plaintiff's claim is preempted, it also should be dismissed.

II.   **PLAINTIFF'S ATTEMPT TO RESCIND IS TIME-BARRED AND SHOULD BE DISMISSED.**

The plaintiff's claim for rescission is likewise time-barred. As set forth in Section IV, *infra*, the plaintiff's rescission claim is preempted. Regardless of whether the federal or the state statutory scheme applies to the plaintiff's rescission claim, she is not entitled to rescission as a matter of law. She admits in her complaint that she received the "required material disclosures and copies of other pertinent closing documents" several days after the March 28, 2003 closing. Yet, she admits waiting until August 6, 2004—more than a year after the required material disclosures were made—to attempt to rescind the loan transaction. *See* Complaint at ¶ 13.

Section 1635(a) imposes a three business day deadline on consumers to exercise their rescission rights. In particular, 15 U.S.C. § 1635 provides:

Right of rescission as to certain transactions

(a) . . . the obligor shall have the right to rescind the transaction until midnight of the third business day following consummation of the transaction or the delivery of the information and rescission forms required . . . together with a statement containing the material disclosure required under this title, <u>whichever</u> <u>is</u> <u>later</u>. . . .

15 U.S.C. § 1635(a) (emphasis added). Likewise, 12 CFR § 226.23 (a)(3) provides:

Right of Rescission.

. . . .

The consumer may exercise the right to rescind until midnight of the third business day following the occurrence . . . that gave rise to the right of rescission, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. <u>If</u> the required notice and material disclosures are not delivered, the right to rescind shall expire 3 years after the occurrence giving rise to the right to rescission . . .

Regulation Z, 12 CFR § 226.23 (emphasis added). Thus, Regulation Z grants certain consumers a right to rescind until midnight of the third business day after delivery of the notice of the right to rescind or delivery of all material disclosures, <u>whichever</u> <u>occurs</u> <u>last</u>. The Massachusetts corollary to 15 U.S.C. § 1635 and Regulation Z also imposes a three day deadline on the consumer to rescind:

the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required . . . together with a statement containing the material disclosures required . . ., whichever is later. . . .

MGL ch. 140D, § 10(a).

Where a statute, such as the MCCDA, is drafted to parallel a federal statute, such as TILA, it should be construed in accordance with federal law. *Mayo v. Key Financial Services, Inc.*, 1994 WL 879676, *3 (Ma. Super. 1994). Thus, the Court must look to federal case law to

determine if relief is available by way of rescission. *See Botelho v. Citicorp Mortgage*, 195 B.R. 558, 565 (Bankr. D. Mass. 1996). Federal cases dealing with this issue have read TILA to require the borrower to rescind within three business days after the lender makes the requisite material disclosures under TILA.

The right to rescind "will not expire until three business days after the *correct* disclosure is finally provided." R.J. Rohrer, THE LAW OF TRUTH IN LENDING, 8-33, ¶ 8.03[2][a] (1984). TILA only grants a "consumer . . . a continuous right to rescind for as long as the creditor fails to comply"—up to three years—with the Disclosure Statement or the Notice of Right to Cancel. *Nichols v. Mid-Penn Consumer Discount Co.*, 1989 U.S. Dist. LEXIS 4796, *9 (E.D. Pa.) (aff'd, 893 F.2d 1331 (1989)). It is only if the required notice and material disclosures are not delivered—unlike here where plaintiff admits that she received the requisite material disclosures—that the plaintiff would have three years to rescind.

The plaintiff's right to rescind only extended until three business days after Champion complied with its disclosure requirements. 12 CFR § 226.15; *Nichols*, 1989 U.S. Dist. LEXIS 4796, *9; *Smith v. American Financial Systems, Inc.*, 737 F.2d 1549, 1552 (11th Cir. 1984) (noting that right to rescind continues only for three years if the disclosures remain deficient); *Semar v. Platte Valley Federal Savings & Loan Ass'n*, 791 F.2d 699, 701-02 (9th Cir. 1986) (borrower only entitled to rescind loan within three years after it was consummated if lending institution fails to make required disclosure and does not cure such failure).

Here, the last of the events to occur was the delivery of all material disclosures, and that event occurred "several days" after the March 29, 2003 closing. *See* Complaint, at ¶ 11. As the plaintiff concedes that KeyBank complied with its TILA obligations several days after the March

M116837.1                                        4

28, 2003 closing, her rescission rights terminated three business days thereafter. In light of the plaintiff's admissions, this Court should grant Champion's motion to dismiss.

### III. PLAINTIFF'S CLAIMS ARE TIME-BARRED AND SHOULD BE DISMISSED.

Any claim relating to a TILA violation is time-barred. The statute of limitations for the plaintiff to bring any claim under TILA is one year, as 15 U.S.C. § 1640(e) provides in pertinent part:

> Jurisdiction of courts; limitation of actions. Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction within one year from the date of the occurrence of the violation.

15 U.S.C. § 1640(e).

The one year statute of limitations contained in 15 U.S.C. § 1640(e) is not extended by virtue of the fact that a borrower—when, unlike here, the lender never makes the proper disclosures—has three years to rescind. *Rodrigues v. Members Mortgage Co.*, 323 F. Supp. 2d 201, 210 (D. Mass. 2004) (noting that three year rescission period does not extend period of limitations to bring action under 15 U.S.C. § 1640(e)).

Furthermore, a TILA "violation occurs when the transaction is consummated." *Bourisquot v. Citibank F.S.B.*, 323 F. Supp. 2d 350, 354 (D. Conn. 2004). "Nondisclosure [under TILA] is not a continuing violation for purposes of the statute of limitations." *Id*.

Here, the plaintiff claims that the violation occurred on March 28, 2003, yet she admits that it was cured several days thereafter. *See* Complaint, at ¶¶ 10-11. As the plaintiff did not file this action until September 8, 2004, more than a year after the alleged violation occurred, her claim is barred by 15 U.S.C. § 1640(e).

IV. **PLAINTIFF'S CLAIM UNDER MGL CH. 140D CANNOT BE MAINTAINED BECAUSE IT IS PREEMPTED BY THE NATIONAL BANKING ACT AS CLARIFIED BY THE OCC PREEMPTION RULES.**

   A. <u>State Laws Cannot Impose Obligations on National Banks Beyond Those Set by OCC.</u>

Champion, as a national bank, exists because of federal legislation. *M. Nahas & Co., Inc. v. First National Bank of Hot Springs*, 930 F.2d 608, 610 (8th Cir. 1991). Federal law is the exclusive source of all of national banks' powers and authorities. Among the powers granted to national banks are the powers:

> To exercise by its board of directors or duly authorized officers or agents, subject to law, <u>all</u> <u>such</u> <u>incidental</u> <u>powers</u> <u>as</u> <u>shall</u> <u>be</u> <u>necessary</u> <u>to</u> <u>carry</u> <u>on</u> <u>the</u> <u>business</u> <u>of</u> <u>banking</u>; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; <u>by loaning money on personal security</u>; and by obtaining, issuing, and circulating notes according to the provisions of this title.

12 U.S.C. § 24 (Seventh) (emphasis added). Vital to these powers is national banks' authority to exercise all such incidental powers as shall be necessary to carry on the business of banking. 69 FR at 1907. The Supreme Court has held that the "business of banking" is not limited to the powers enumerated in 12 U.S.C. § 24 (Seventh) and that the OCC has the discretion to authorize activities beyond those specifically enumerated in the statute. *Nationsbank of North Carolina, N.A. v. Variable Annuity life Ins. Co.*, 513 U.S. 251, 258 (1995).

The OCC is charged with the fundamental responsibility of ensuring that national banks operate on a "safe and sound basis," and that they are able to do so . . . to the full extent of their powers under Federal law. This responsibility includes enabling the national banking system to operate as authorized by Congress, consistent with the essential character of a national banking system and without undue confinement of their powers. Federal law gives the OCC broad

rulemaking authority in order to fulfill these responsibilities.  69 FR at 1907; *see also* Title 12 U.S.C. § 93a.  The OCC is authorized "to prescribe rules and regulations to carry out the responsibilities of the office" and to "prescribe by regulation or order" the "restrictions and requirements" on national banks' real estate lending power without state-imposed conditions.  69 FR 1908.  In fact, 12 U.S.C. § 93a vests the OCC with authority to issue regulations preempting state law.  *See Conference of State Bank Supervisors v. Conover*, 710 F.2d 878, 887 (D.C. Cir. 1983) (holding that 12 U.S.C. § 93a authorized the OCC to issue the regulation because the legislative scheme contemplates the operation of state law only in the absence of federal law and where such state law does not conflict with the policies of the National Banking Act).

    The Preemption Rules make clear that a state law is preempted if:  (1) the Preemption Rules specify that the state law in question is the type of law that is preempted; or (2) if the state law is not specifically listed in the Preemption Rules, but the law obstructs, impairs, or conditions a national bank's exercise of its lending, deposit-taking, or other powers granted to it under Federal law.  69 Fed. Reg. at 1904.

    The Preemption Rules merely codify what federal courts have long held:  state laws which attempt to interfere with the manner in which national banks conduct their business are preempted by federal law.  Here, the application of MGL ch. 140D to national banks is specifically preempted as it increases a bank's exposure to liability by extending a borrower's ability to bring a claim to four years.  As such, MGL 140D represents a dramatic intrusion on a national bank's exposure to claims, and the plaintiff's MGL ch. 140D claims are preempted by the National Bank Act.

    Because Congress chose to establish a national banking system, "[i]t could not have been intended . . . to expose [national banks] to the hazard of unfriendly legislation by the States."

*Tiffany v. Nat'l Bank of Missouri*, 85 U.S. 409, 412-413 (1874); *Wells Fargo Bank, N.A. v. Boutris*, 265 F. Supp. 2d 1162, 1166 (E.D. Cal. 2003) ("The Act was enacted to "facilitate . . . 'a national banking system,'" *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 314-15 (1978) (quoting Cong. Globe, 38th Cong., 1st Sess., 1451 (1864)), and "to protect national banks against intrusive regulation by the States."). Thus, it is no surprise that courts have consistently found that a national bank exercising its federally-authorized powers is ordinarily not subject to state law.

In fact, congressional "grants of both enumerated and incidental powers to national banks are not normally limited by, but rather ordinarily pre-empt contrary state law." *Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 32 (1996); *see also United States v. Locke*, 529 U.S. 89, 106-07 (2000) (holding that assumption of non-preemption is not triggered when the state regulates in an area where there has been a history of significant federal presence). Because of this, it is not surprising that there is a long history of federal courts finding that state laws are preempted when they frustrate the exercise of a national bank's powers:

> National Banks are instrumentalities of the Federal government. . . . It follows that an attempt, by a State, to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the Federal government to discharge the duties, for the performance of which they were created.

*Davis v. Elmira Savings Bank*, 161 U.S. 275, 283 (1896).

The long-established rule, reflected in numerous United States Supreme Court cases, establishes that congressional "grants of both enumerated and incidental `powers' to national banks [are] not normally limited by, but rather <u>ordinarily</u> <u>pre-empt</u> contrary state law." *Barnett Bank*, 517 at 32 (emphasis added). The preemption of state law attempting to regulate national

banks dates back to the earliest days of the Republic.  *See, e.g., McCulloch v. Maryland*, 17 U.S. 316, 426 (1819).  The OCC rules do no more than codify long-standing case law that prohibits states from interfering with the powers of national banks.

In addition, it is not necessary that the state and federal statues conflict in order for the state law to be preempted.  In *Barnett Bank*, the United States Court held that Section 92 of the National Bank Act pre-empted a state law prohibiting national banks serving small towns from selling insurance policies.  In doing so, the Court acknowledged that the two statutes did not impose directly conflicting duties on national banks, but found that there was a history of "interpreting grants of both enumerated and incidental powers to national banks as grants of authority not normally limited by but rather ordinarily pre-empting, contrary state law." *Barnett Bank*, 517 U.S. at 32.  Thus, "Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." *Id*. at 33.  As Congress has explicitly granted to national banks the power to negotiate promissory loans, lend money, and collect on money lent, *see* 12 U.S.C. § 24 (Seventh), and application of MGL ch. 140D affects and interferes with these powers, it must be preempted.

By the plaintiff's MGL ch. 140D claim, she would have this Court impose requirements on a national bank beyond those set forth by Congress.  To so rule would impermissibly obstruct Champion's expressly authorized exercise of "safe and sound" banking practices in making its loans and such a ruling would obstruct, impair, or condition Champion's exercise of its lending, deposit-taking, or other powers granted to it under Federal law.  69 Fed. Reg. at 1904.  Simply put, federal law preempts state law in this regard.

    B.    <u>State Laws Purporting to Regulate National Banks Are Largely Pre-empted by Federal Law.</u>

Massachusetts' Consumer Credit Cost Disclosure Act, MGL ch. 140D, *et seq.*,

M116837.1                                                              9

("MCCDA") is preempted by the National Bank Act as it impermissibly imposes liability upon national banks beyond those allowable under TILA. In particular, MGL ch. 140D, § 10(f), among other things, allows a borrower to bring a claim for damages as well as to rescind a transaction four years after the date of consummation, while under TILA, a borrower must bring a claim for damages within one year, *see* 15 U.S.C. § 1640(e), and an action to rescind the transaction within three years after consummation of the transaction, 15 U.S.C. § 1635(f).

While the Board of Govenors of the Federal Reserve System (the "Board"), pursuant to authority granted in 15 U.S.C. § 1633, has granted an exemption for certain credit transactions within Massachusetts from TILA's disclosure requirements, *see* 12 C.F.R. pt. 226, Supp. I § 29(a)(4), that exemption is limited. The Board exempted disclosures associated with credit transactions subject to MCCDA "from chapters 2 and 4 of the Federal act." *See* 48 Fed. Reg. 14882, 14890 (April 6, 1983). This exemption, however, does not extend to the liability provisions of TILA. 12 C.F.R. § 226.29(b)(1) ("No exemptions granted under this section shall extend to the civil liability provisions of sections [1640] and [1641] of the Act."). *See* 12 C.F.R. pt. 226, Supp. I § 29(b) ("The provision that an exemption may not extend to sections [1640 and 1641] of the Act assures that consumers retain access to both Federal and State Courts ...."). Thus, while Massachusetts may be exempt from TILA for purposes of certain disclosure requirements, there is nothing in TILA or the applicable regulations which empowers Massachusetts to impose civil liability in addition to, or different from that imposed by TILA.

The National Bank Act preempts MGL ch. 140D except for purposes of the limited disclosure exemption contained in 12 CFR § 226.29. The well-established authority holding that Massachusetts borrowers have a state cause of action for rescission is not inapposite. *See, e.g.*, *In re Fidler*, 226 B.R. 734, 736 (Bankr. D. Mass. 1998); *In re Myers*, 175 B.R. 122, 125-26

(Bankr. D. Mass. 1994); *Rodrigues*, 323 F. Supp. 2d at 210-11; *Melvin v. United States Bank, N.A.,* 2001 U.S. Dist. LEXIS 24716, *4 (D. Mass. 2001) (concluding that plaintiff had no viable rescission claims under TILA); 15 U.S.C. § 1633; 12 C.F.R. § 226.29; *Desrosiers v. Transamerica Financial Corp.*, 212 B.R. 716, 722 (D. Mass. 1997) ("a Massachusetts resident . . . cannot rescind a credit transaction under § 1635 of [TILA]."),[2] The National Bank Act preempts MGL 140D to the extent that it allows a borrower to recover damages more than one year after the transaction was consummated. This exemption, however, does not extend to the liability provisions of TILA. 12 C.F.R. § 226.29(b)(1) ("No exemptions granted under this section shall extend to the civil liability provisions of sections [1640] and [1641] of the Act."). *See* 12 C.F.R. pt. 226, Supp. I § 29(b) ("The provision that an exemption may not extend to sections [1640 and 1641] of the Act assures that consumers retain access to both Federal and State Courts ....").

It is beyond the power of the Commonwealth to regulate national banks in this way. *See* 69 F.R. 1904, § IV (noting that federal law authorized the OCC to issue rules that preempt state law in further of its responsibility to ensure that national banks are able to operate to the full extent authorized under federal law, notwithstanding inconsistent state restrictions, and in furtherance of their safe and sound operations). Even if the Massachusetts disclosure requirements are substantially the same to the federal disclosure requirements in content, the extended period to bring an action constitutes an inconsistency with federal law, which is thereby preempted. 12 CFR § 226.28.

12 CFR § 226.28(a) provides in pertinent part:

Inconsistent disclosure requirements. (1) Except as provided in paragraph (d) of

---

[2] This Court can also dismiss the plaintiff's claim for rescission brought under § 1635 of TILA. *See, e.g., Desrosiers,* 212 B.R. at 722 (holding that a claim for rescission under § 1635 of TILA is not a remedy available to a Massachusetts resident).

M116837.1                                11

> this section, state law requirements that are inconsistent with the requirements contained in chapter 1 (General Provisions), chapter 2 (Credit Transactions) . . . of the act and the implementing provisions of this regulation are preempted to the extent of the inconsistency. . . .

Under 12 CFR § 226.28(a), "A State law is inconsistent [with federal law] if it requires a creditor to make disclosures or take actions that contradict the requirements of the Federal law." By its own terms, allowing a borrower to bring a claim for a period greater than that allowed by federal law, contradicts federal law and is preempted.

In addition, effective February 12, 2004, the OCC—the federal regulator for Champion—issued regulations which codify common law preemption for certain actions (hereinafter "the Preemption Rules"), including the MGL 140D claims in this case. 69 FR 1904. The new rules apply with equal force to KeyBank—a national bank[3]—and to Champion—a division of KeyBank. *See* 12 CFR 5.34(e)(3) and 7.4006; *see also* 12 CFR 34.1(b); 69 Fed. Reg. at 1906.

In the instant case, the plaintiff's damage claims under MGL ch. 140D are preempted because they are both specifically preempted by federal law, not specifically exempted from TILA, and because applying MGL ch. 140D under these circumstances would obstruct, impair, or condition Champion's ability to fully exercise its Federally authorized real estate lending powers. 69 Fed. Reg. at 1917, § 34.3(a). The MGL ch. 140D claims arises from the allegation that the bank provided the plaintiff with incomplete material disclosures at the time of the closing of the loan secured by real estate, and several days thereafter, provided the plaintiff with all material disclosures. As set forth in section II *supra,* the bank is entitled to cure such alleged defects and the plaintiff can only rescind within three days from the bank having made the

---

[3] This Court can take judicial notice that KeyBank National Association, as indicated by its name, is a national bank. *See United States v. Harris*, 530 F.2d 576, 578 (4th Cir. 1976) ("If a bank is described by its chartered name as a 'national bank,' the district court and this court can take judicial notice that the bank is, in fact, a national bank.").

necessary disclosures.  Specifically, the Preemption Rules authorize national banks to make real estate loans <u>without regard to state law limitations</u> concerning:

1) Licensing, registration (except for purposes of service of process), filings, or reports by creditors;
2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements or risk mitigants, in furtherance of safe and sound banking practices;
3) Loan-to-value ratios;
4) The terms of credit, amortizations of loans, balance, payments due, minimum payments, or term to maturity of the loan;
5) The aggregate amount of funds that may be loaned upon the security of real estate;
6) Escrow accounts, or similar accounts;
7) Security property, including leaseholds;
8) Access to, and use of, credit reports;
9) <u>Disclosure</u> and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or <u>other credit related documents</u>;
10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
11) Disbursements and repayments;
12) Rates of interest on loans;
13) Due-on-sale clauses; and
14) Covenants and restrictions that must be contained in a lease.

69 Fed. Reg. 1917, § 34.4 (emphasis added).  What these rules make clear is that a bank must be allowed to perform its daily business activities without interferences by state law.

Here, MGL ch. 140D—a state disclosure law—is specifically preempted by federal law, particularly in light of the fact that it imposes a burden by increasing a national bank's exposure to a rescission claim and a claim for damages, for up to three years more than the federal law allows a borrower to bring a claim.  *Compare* 15 U.S.C. § 1640 (one year statute of limitations) *with* MGL ch. 140D (four year statute of limitations).

## CONCLUSION

As the claims are time-barred and preempted, this Court should grant Champion's Motion to Dismiss.

M116837.1                              13

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | CHAMPION MORTGAGE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION |
|  | By its attorneys, |
|  | NIXON PEABODY LLP |
| Dated:  December 13, 2004 | By:  /s/ W. Scott O'Connell_____<br>W. Scott O'Connell, BBO No. 559669<br>Patricia L. Peard, BBO No. 642213<br>889 Elm Street<br>Manchester, NH  03101<br>soconnell@nixonpeabody.com<br>ppeard@nixonpeabody.com<br>(603) 628-4000 |

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2004 a copy of the forgoing Memorandum of Law was forwarded by the Court's ECF system to Christopher M. Lefebvre, Esquire, counsel of record, at Post Office Box 479, Pawtucket, Rhode Island 02862, counsel for the plaintiff.

/s/W. Scott O'Connell
W. Scott O'Connell