UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMY PALMER,

     Plaintiff,

          v.

CHAMPION MORTGAGE,

     Defendant.

Civil Action No. 04-11-954-RCL

**DEFENDANT CHAMPION MORTGAGE,
A DIVISION OF KEYBANK NATIONAL ASSOCIATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
<u>AMENDED COMPLAINT</u>**

W. Scott O'Connell (#559669)
Patricia L. Peard (#642213)
NIXON PEABODY LLP
889 Elm Street
Manchester, NH 03101
(603) 628-4000
soconnell@nixonpeabody.com
ppeard@nixonpeabody.com

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ..................................................................................................... ii

RELEVANT PROCEDURAL BACKGROUND ......................................................................1

ARGUMENT ...........................................................................................................................2

    I.     STANDARD OF REVIEW .......................................................................2

    II.    PLAINTIFF'S ATTEMPT TO RESCIND IS TIME-BARRED AND SHOULD
         BE DISMISSED .......................................................................................3

    III.   PLAINTIFF'S CLAIMS ALLEGING A VIOLATION OF TILA ARE
         TIME-BARRED AND SHOULD BE DISMISSED .............................................7

    IV.   PLAINTIFF'S CLAIM UNDER M.G.L. CH. 140D CANNOT BE
         MAINTAINED BECAUSE IT IS PREEMPTED BY THE NATIONAL
         BANKING ACT AS CLARIFIED BY THE OCC PREEMPTION RULES.........8

         A.     State Laws Cannot Impose Obligations on National Banks Beyond Those
              Set by the OCC .......................................................................8

         B.     State Laws Purporting to Regulate National Banks are Largely Pre-empted
              by Federal Law…………………………………………………………12

CONCLUSION.....................................................................................................................16

CERTIFICATE OF SERVICE .................................................................................................17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Barnett Bank of Marion County, N.A. v. Nelson*,
517 U.S. 25 (1996)................................................................................11, 12

*Botelho v. Citicorp Mortgage, Inc.*,
195 B.R. 558 (Bankr. D. Mass. 1996) ....................................................5

*Bourisquot v. Citibank F.S.B.*,
323 F. Supp. 2d 350 (D. Conn. 2004)......................................................8

*Christensen v. Kingston School Committee.*,
2005 U.S. Dist. LEXIS 3484 (D. Mass. 2005) ........................................2

*Conference of State Bank Supervisors v. Conover*,
710 F.2d 878 (D.C. Cir. 1983) ................................................................9

*Davis v. Elmira Savings Bank*,
161 U.S. 275 (1896)................................................................................11

*Desrosiers v. Transamerica Financial Corp.*,
212 B.R. 716 (D. Mass. 1997) .........................................................13, 14

*In re Fidler*,
226 B.R. 734 (Bankr. D. Mass. 1998) ....................................................13

*Ford Motor Credit Co. v. Milhollin*,
44 U.S. 555 (1980)..................................................................................10

*M. Nahas & Co., Inc. v. First National Bank of Hot Springs*,
930 F.2d 608 (8th Cir. 1991) ...................................................................8

*Marquette National Bank of Minneapolis v. First of Omaha Serv. Corp.*,
439 U.S. 299 (1978)...........................................................................10, 11

*McCulloch v. Maryland*,
17 U.S. 316 (1819)..................................................................................11

*Melvin v. United States Bank, N.A. N.D.*,
2001 U.S. Dist. LEXIS 24716 (D. Mass. 2001) .....................................13

*Mourer v. EquiCredit Corp. of America*,
309 B.R. 502 (W.D. Mich. 2004) ......................................................4, 5, 6

*In re Myers,*
175 B.R. 122 (Bankr. D. Mass. 1994) ................................................................13

*Nationsbank of North Carolina, N.A. v. Variable Annuity life Insurance Co.,*
513 U.S. 251 (1995).............................................................................................9

*Nichols v. Mid-Penn Consumer Discount Co.,*
1989 U.S. Dist. LEXIS 4796 (E.D. Pa.), *aff'd*, 893 F.2d 1331 (1989)...............5, 6

*Rodrigues v. Members Mortgage Co. Inc.,*
323 F. Supp. 2d 201 (D. Mass. 2004) .............................................................8, 13

*Salois v. The Dime Savings Bank of N.Y. FSB,*
1996 U.S. Dist. LEXIS 21901 (D. Mass. 1996) ....................................................2

*Semar v. Platte Valley Federal Savings & Loan Association,*
791 F.2d 699 (9th Cir. 1986) ............................................................................5, 6

*Smith v. American Financial Systems, Inc.,*
737 F.2d 1549 (11th Cir. 1984) .......................................................................5, 6

*Stein v. Royal Bank of Canada,*
239 F.3d 389 (1st Cir. 2001)..................................................................................2

*Tiffany v. National Bank of Missouri,*
85 U.S. 409 (1874)..............................................................................................10

*United States v. Locke,*
529 U.S. 89 (2000)...............................................................................................11

*United States of America v. Harris,*
530 F.2d 576 (4th Cir. 1976) .............................................................................15

*Wells Fargo Bank, N.A. v. Boutris,*
265 F. Supp. 2d 1162 (E.D. Cal. 2003)..............................................................10

## STATE CASES

*Mayo v. Key Financial Services, Inc.,*
1994 WL 879676 (Ma. Super. 1994)....................................................................5

## FEDERAL STATUTES

12 U.S.C. § 24 ...........................................................................................9, 12

12 U.S.C. § 93a ...............................................................................................9

15 U.S.C. § 1633.............................................................................................13

15 U.S.C. § 1635.................................................................................3, 4, 13, 14

15 U.S.C. § 1640..........................................................................7, 8, 13, 14, 16

15 U.S.C. § 1641.......................................................................................13, 14

12 C.F.R. § 5.34.............................................................................................15

12 C.F.R. § 7.4006.........................................................................................15

12 C.F.R. § 34.1.............................................................................................15

12 C.F.R. § 226.15...........................................................................................6

12 C.F.R. 226, Supp. I § 29(a)(4) ...............................................................13, 14

12 C.F.R. § 226.23 (a)(3) ................................................................................3, 4

12 C.F.R. § 226.28...........................................................................................14

12 C.F.R. § 226.29(b)(1)...........................................................................13, 14

48 Fed. Reg. 14882 .......................................................................................13

48 Fed. Reg. 14890 .......................................................................................13

69 Fed. Reg. 1904 ...........................................................................10, 12, 14, 15

69 Fed. Reg. 1906 .........................................................................................15

69 Fed. Reg. 1907 ...........................................................................................9

69 Fed. Reg. 1908 ...........................................................................................9

69 Fed. Reg. 1917, § 34.3(a).........................................................................15

69 Fed. Reg. 1917, § 34.4 .............................................................................16

National Bank Act § 92.............................................................................12

## STATE STATUTES

Massachusetts General Laws ch. 140D ........................................ *passim*

## OTHER AUTHORITIES

R. J. Rohrer, THE LAW OF TRUTH IN LENDING 833, 8.03[2][a] (1984) ...................5

5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCE*dure*, § 1227 (1990)...............................................................2, 3

5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDUR*e*, § 1327 (1990).......................................................2

Cong. Globe, 38th Cong., 1st Sess., 1451 (1864)...............................11

Federal Rule of Civil Procedure 12(b)(6) ...........................................2

Defendant Champion Mortgage, a Division of KeyBank National Association ("Champion"), by and through its attorneys, Nixon Peabody LLP, moves to dismiss the plaintiff's Amended Complaint because she has failed to state a claim upon which relief can be granted.

## RELEVANT FACTUAL BACKGROUND[1]

In order to consolidate her debt, including her existing mortgage, the plaintiff obtained a loan in the amount of $220,000 from Champion and executed a promissory note in its favor. *See* Amended Complaint, at ¶¶ 9-10. The closing occurred on March 28, 2003. *See* Amended Complaint, at ¶ 10. The plaintiff admits that at the closing she signed a note, a mortgage, a Truth in Lending Statement, and a HUD-1 Settlement Statement. *See* Amended Complaint, at ¶ 10. She also admits that several days after the closing she received the "required material disclosures and copies of other pertinent closing documents." *See* Amended Complaint, at ¶ 12.

In fact, the plaintiff attached to her Amended Complaint, a Notice of Right to Cancel, which provided in pertinent part:

**Your Right to Cancel:**

. . . .You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1) the date of the transaction, which is March 28, 2003; or (date)

(2) the date you receive your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

(emphasis added).[2]

---

[1] Champion assumes the truth of the plaintiff's well-pleaded facts solely for the purpose of this motion to dismiss.

[2] Plaintiff attached an unexecuted copy of the Notice of the Right to Cancel to her Amended Complaint. Defendant has attached an executed copy of that same document wherein she "acknowledge[s] receipt of two (2) completed copies of this notice on . . . March 28, 2003." *See* Exhibit A. Thus, as this Court is aware, it may

1

By this action, the plaintiff attempts to rescind the loan transaction more than a year after Champion made the "required material disclosures."  In particular, on or about August 6, 2004, the plaintiff allegedly sent a notice to the office where the closing on her loan transaction occurred indicating her intent to rescind the loan.  *See* Amended Complaint, at ¶ 15.  For the reasons set forth below, the plaintiff's attempt to rescind, and any claimed damages, cannot be maintained as a matter of law, and this Court should dismiss the Amended Complaint.

## ARGUMENT

### I.     STANDARD OF REVIEW

Although this Court must construe the plaintiff's Amended Complaint liberally on a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), it is well-established that the Amended Complaint still must allege the material elements of a cause of action cognizable under the law.  Indeed, under Rule 12(b)(6), it is still essential that the pleading enable the defendant to determine the nature of the plaintiff's grievances and the relief she seeks in consequence of the alleged wrongs.  The rule that the facts alleged are presumed to be true does not apply, however, to legal conclusions or to factual claims which are either inherently incredible or flatly contradicted by documentary evidence.  *Stein v. Royal Bank of Canada*, 239 F.3d 389, 392 (1st Cir. 2001) (court will not accept a complainant's unsupported conclusions or interpretations of law).

A statute of limitations defense may be addressed in a Rule 12(b)(6) motion where—as here—the defense is obvious on the face of the pleadings.  *Salois v. The Dime Savings Bank of New York FSB*, 1996 U.S. Dist. LEXIS 21901, *14 (D. Mass. 1996) (citing 5 Charles A. Wright

consider the attachment without converting Defendant's motion to dismiss into one for summary judgment. *See Christensen v. Kingston School Committee.*, 2005 U.S. Dist. LEXIS 3484, **5-6 (D. Mass. 2005); 5 Charles A. Wright & Arthur R. Miller, *FEDERAL PRACTICE AND PROCEDURE*, § 1327 (1990) (plaintiff is not required to attach to complaint documents upon which action is based, but a defendant may introduce pertinent documents if the plaintiff fails to do so).

& Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, § 1277 n.13 (1990)).  Because the

plaintiff's Amended Complaint is time-barred, it fails to state a claim upon which relief can be

granted and must be dismissed.  Moreover, as the plaintiff's claim is preempted, it also should be

dismissed.

## II.    PLAINTIFF'S ATTEMPT TO RESCIND IS TIME-BARRED AND SHOULD BE DISMISSED.

The plaintiff's claim for rescission is time-barred because she failed to seek rescission

within the three day period after receiving the applicable notice.  She admits receiving the

"required material disclosures and copies of other pertinent closing documents" several days

after the March 28, 2003 closing.  *See* Amended Complaint, at ¶ 12.[3]  Yet, she admits waiting

until August 6, 2004—more than a year after the required material disclosures were received—to

attempt to rescind the loan transaction.  *See* Amended Complaint at ¶ 12.

Section 1635(a) imposes a three business day deadline on consumers to exercise their

rescission rights.  In particular, 15 U.S.C. § 1635 provides:

Right of rescission as to certain transactions

(a) . . . the obligor shall have the right to rescind the transaction until midnight of the third business day following consummation of the transaction or the delivery of the information and rescission forms required . . . together with a statement containing the material disclosure required under this title, whichever is later. . . .

15 U.S.C. § 1635(a) (emphasis added).  Likewise, 12 CFR § 226.23 (a)(3) provides:

Right of Rescission.

. . . .

The consumer may exercise the right to rescind until midnight of the third business day following the occurrence . . . that gave rise to the right of rescission, delivery of the notice required by paragraph (b) of this section, or delivery of all

---

[3] It is noteworthy that the plaintiff does not allege—because she cannot—that the disclosures were not made to her during the closing.  Instead, she alleges that she did not leave the closing with copies of the documents.

> material disclosures, whichever occurs last.   If the required notice and material disclosures are not delivered, the right to rescind shall expire 3 years after the occurrence giving rise to the right to rescission . . .

Regulation Z, 12 CFR § 226.23 (emphasis added).  Thus, Regulation Z grants certain consumers a right to rescind until midnight of the third business day after delivery of the notice of the right to rescind or delivery of all material disclosures, whichever occurs last.  The Massachusetts corollary to 15 U.S.C. § 1635 and Regulation Z also imposes a three day deadline on the consumer to rescind:

> the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required . . . together with a statement containing the material disclosures required . . . , whichever is later. . . .

MGL ch. 140D, § 10(a) (emphasis added).

The statutory language is disjunctive, meaning that the three-day rescission period can be triggered in one of two ways, either by the:  (1) consummation of the transaction; **or** (2) delivery of the information and rescission forms required, together with a statement containing the material disclosures required, whichever is the later event to occur.  Thus, the plaintiff's rescission period expired three business days after the material disclosures were delivered to her.  To read the statute in any other way would be to overlook the "letter of the law" in order to enforce the "spirit of the law."  *Mourer v. EquiCredit Corp. of America*, 309 B.R. 502, 505 (W.D. Mich. 2004) (construing TILA and Regulation Z).

"[A]lthough the courts are obliged to construe the law so as to effectuate its purpose, this duty does not include the license to ignore the law's clear and unambiguous terms or to refrain from enforcing them in accordance with their plain meaning."  *Mourer*, 309 B.R. at 505.  "To impose requirements on lenders at odds with the plain meaning of the express terms of Regulation Z is simply not fair and is contrary to law."  *Id.*

Here, the last of the events to occur was the delivery of all material disclosures, and that event occurred "several days" after the March 29, 2003 closing. *See* Amended Complaint, at ¶ 12. As the plaintiff concedes that Champion complied with its TILA obligations several days after the March 28, 2003 closing, her rescission rights terminated three business days thereafter. The plaintiff admittedly did not attempt to rescind until on or about August 6, 2004, *see* Amended Complaint, at ¶ 15, well beyond the three-day rescission period. In light of the plaintiff's admissions, this Court should grant Champion's motion to dismiss.

Where a statute, such as the MCCDA, is drafted to parallel a federal statute, such as TILA, it should be construed in accordance with federal law. *Mayo v. Key Financial Services, Inc.*, 1994 WL 879676, *3 (Ma. Super. 1994). Thus, the Court must look to federal case law to determine if relief is available by way of rescission. *See Botelho v. Citicorp Mortgage, Inc.*, 195 B.R. 558, 565 (Bankr. D. Mass. 1996). Federal cases dealing with this issue have read TILA to require the borrower to rescind within three business days after the lender makes the requisite material disclosures under TILA. *See, e.g., Nichols v. Mid-Penn Consumer Discount Co.*, 1989 U.S. Dist. LEXIS 4796, *9 (E.D. Pa.), *aff'd*, 893 F.2d 1331 (1989); *Smith v. American Financial Systems, Inc.*, 737 F.2d 1549, 1552 (11th Cir. 1984) (noting that right to rescind continues only for three years if the disclosures remain deficient); *Semar v. Platte Valley Federal Savings & Loan Ass'n*, 791 F.2d 699, 701-02 (9th Cir. 1986) (borrower only entitled to rescind loan within three years after it was consummated if lending institution fails to make required disclosure and does not cure such failure); *Mourer*, 309 B.R. at 506-07 (where material disclosures delivered to borrower several weeks after closing, the right to rescind expired three business days following such disclosure).

The right to rescind "will not expire until three business days after the *correct* disclosure is finally provided."  R.J. Rohrer, THE LAW OF TRUTH IN LENDING, 8-33, ¶ 8.03[2][a] (1984). TILA only grants a "consumer . . . a continuous right to rescind for as long as the creditor fails to comply"—up to three years—with the Disclosure Statement or the Notice of Right to Cancel. *Nichols*, 1989 U.S. Dist. LEXIS 4796, at \*9; *Mourer*, 309 B.R. at 506-07 ("the three-year extension (or limitation) [under 12 CFR § 226.23(a)(3)] would have come to play only if the disclosures were not delivered . . . .").  It is only if the required notice and material disclosures are not delivered—unlike here where plaintiff admits that she received the requisite material disclosures—that the plaintiff would have three years to rescind.  Thus, the plaintiff's right to rescind only extended until three business days after Champion complied with its disclosure requirements.  12 CFR § 226.15; *Nichols*, 1989 U.S. Dist. LEXIS 4796, \*9; *Smith v. American Financial Systems, Inc.*, 737 F.2d at 1552; *Semar v. Platte Valley Federal Savings & Loan Ass'n*, 791 F.2d at 701-02; *Mourer*, 309 B.R. at 506-07.

Moreover, the plaintiff's claim that she received the Notice of the Right to Cancel after the March 28, 2003 closing is contradicted by the very Notice of Right to Cancel form in which she signed the following acknowledgment:

> The undersigned customer(s) acknowledge receipt of two (2) completed copies of this notice on . . . March 28, 2003."
>
> /s/Amy Palmer
> AMY PALMER.

*See* Exhibit A attached hereto (emphasis added).  The plaintiff's acknowledgement gives rise to a presumption of disclosures at the time of the closing.  *See Mourer*, 309 B.R. 505 (where borrower signed statement that it received copies of disclosure forms at closing, court improperly ignored statutory presumption when it accepted borrower's testimony that it did not receive the

documents to keep at the closing). There are no allegations in the Complaint which prevent the application of this presumption.

Moreover, the Notice of the Right to Cancel would not be rendered defective even if the plaintiff received it more than three days after the March 28, 2003 date of the transaction.

The Notice of Right to Cancel provided in pertinent part:

**Your Right to Cancel:**

. . . .You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(4) the date of the transaction, which is March 28, 2003; or (date)

(5) the date you receive your Truth-in-Lending disclosures; or

(6) the date you received this notice of your right to cancel.

(emphasis added). Here, the Notice of the Right to Cancel gave the plaintiff three alternative events that would trigger the three-day rescission period. Namely, the date of the transaction, **OR** the date she received the TILA disclosures, **OR** the date she received this Notice of the Right to Cancel, whichever is later. This notice informed the plaintiff of the date on which the three-day rescission period expired, and any suggestion that it did not give the plaintiff a meaningful opportunity to exercise her rescission rights three business days after receipt of the material disclosures should be rejected as a matter of law.

## III.  PLAINTIFF'S CLAIMS ALLEGING A VIOLATION OF TILA ARE TIME-BARRED AND SHOULD BE DISMISSED.

Any claim relating to a TILA violation is time-barred. The statute of limitations for the plaintiff to bring any claim under TILA is one year, as 15 U.S.C. § 1640(e) provides in pertinent part:

> Jurisdiction of courts; limitation of actions. Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction within one year from the date of the occurrence of the violation.

15 U.S.C. § 1640(e).

The one year statute of limitations contained in 15 U.S.C. § 1640(e) is not extended by virtue of the fact that a borrower—under circumstances not present here—may have three years to rescind. *Rodrigues v. Members Mortgage Co., Inc.*, 323 F. Supp. 2d 201, 210 (D. Mass. 2004) (noting that three year rescission period does not extend period of limitations to bring action under 15 U.S.C. § 1640(e)).

Furthermore, a TILA "violation occurs when the transaction is consummated." *Bourisquot v. Citibank F.S.B.*, 323 F. Supp. 2d 350, 354 (D. Conn. 2004). "Nondisclosure [under TILA] is not a continuing violation for purposes of the statute of limitations." *Id.*

Here, the plaintiff claims that the violation occurred on March 28, 2003, yet she admits the necessary disclosures were made several days thereafter. *See* Amended Complaint, at ¶ 12. As the plaintiff did not file this action until September 8, 2004, more than a year after the alleged violation occurred, her claim is barred by 15 U.S.C. § 1640(e).

## IV. PLAINTIFF'S CLAIM UNDER MGL CH. 140D CANNOT BE MAINTAINED BECAUSE IT IS PREEMPTED BY THE NATIONAL BANKING ACT AS CLARIFIED BY THE OCC PREEMPTION RULES.

### A. State Laws Cannot Impose Obligations on National Banks Beyond Those Set by OCC.

Champion, as a national bank, exists because of federal legislation. *M. Nahas & Co., Inc. v. First National Bank of Hot Springs*, 930 F.2d 608, 610 (8th Cir. 1991). Federal law is the exclusive source of all of national banks' powers and authorities. Among the powers granted to national banks are the powers:

> To exercise by its board of directors or duly authorized officers or agents, subject to law, <u>all</u> <u>such</u> <u>incidental</u> <u>powers</u> <u>as</u> <u>shall</u> <u>be</u> <u>necessary</u> <u>to</u> <u>carry</u> <u>on</u> <u>the</u> <u>business</u> <u>of</u> <u>banking</u>; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; <u>by loaning</u> <u>money on personal security</u>; and by obtaining, issuing, and circulating notes according to the provisions of this title.

12 U.S.C. § 24 (Seventh) (emphasis added).  Vital to these powers is national banks' authority to exercise all such incidental powers as shall be necessary to carry on the business of banking.  69 F.R. at 1907.  The Supreme Court has held that the "business of banking" is not limited to the powers enumerated in 12 U.S.C. § 24 (Seventh) and that the OCC has the discretion to authorize activities beyond those specifically enumerated in the statute.  *Nationsbank of North Carolina, N.A. v. Variable Annuity life Ins. Co.*, 513 U.S. 251, 258 (1995).

The OCC is charged with the fundamental responsibility of ensuring that national banks operate on a "safe and sound basis," and that they are able to do so . . . to the full extent of their powers under Federal law.  This responsibility includes enabling the national banking system to operate as authorized by Congress, consistent with the essential character of a national banking system and without undue confinement of their powers.  Federal law gives the OCC broad rulemaking authority in order to fulfill these responsibilities.  69 F.R. at 1907; *see also* Title 12 U.S.C. § 93a.  The OCC is authorized "to prescribe rules and regulations to carry out the responsibilities of the office" and to "prescribe by regulation or order" the "restrictions and requirements" on national banks' real estate lending power without state-imposed conditions.  69 FR 1908.  In fact, 12 U.S.C. § 93a <u>vests</u> <u>the</u> <u>OCC</u> <u>with</u> <u>authority</u> <u>to</u> <u>issue</u> <u>regulations</u> <u>preempting</u> <u>state</u> <u>law</u>.  *See Conference of State Bank Supervisors v. Conover*, 710 F.2d 878, 887 (D.C. Cir. 1983) (holding that 12 U.S.C. § 93a authorized the OCC to issue the regulation because the legislative scheme contemplates the operation of state law only in the absence of federal law and

where such state law does not conflict with the policies of the National Banking Act); *cf. Ford Motor Credit Co. v. Milhollin*, 44 U.S. 555, 566 (1980) (quotation omitted) (the United States Supreme Court "has often repeated the general proposition that considerable respect is due the interpretation given [a] statute by the officers or agency charged with its administration. . . .This traditional acquiescence in administrative expertise is particularly apt under TILA, because the Federal Reserve Board has played a pivotal role in setting the [statutory] machine in motion.").

The Preemption Rules make clear that a state law is preempted if: (1) the Preemption Rules specify that the state law in question is the type of law that is preempted; or (2) if the state law is not specifically listed in the Preemption Rules, but the law obstructs, impairs, or conditions a national bank's exercise of its lending, deposit-taking, or other powers granted to it under Federal law. 69 Fed. Reg. at 1904.

The Preemption Rules merely codify what federal courts have long held: state laws which attempt to interfere with the manner in which national banks conduct their business are preempted by federal law. Here, the application of MGL ch. 140D to national banks is specifically preempted as it increases a bank's exposure to liability by extending a borrower's ability to bring a claim to four years. As such, MGL 140D represents a dramatic intrusion on a national bank's exposure to claims, and the plaintiff's MGL ch. 140D claims are preempted by the National Bank Act.

Because Congress chose to establish a national banking system, "[i]t could not have been intended . . . to expose [national banks] to the hazard of unfriendly legislation by the States." *Tiffany v. Nat'l Bank of Missouri*, 85 U.S. 409, 412-413 (1874); *Wells Fargo Bank, N.A. v. Boutris*, 265 F. Supp. 2d 1162, 1166 (E.D. Cal. 2003) ("The Act was enacted to "facilitate . . . 'a national banking system,'" *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*,

439 U.S. 299, 314-15 (1978) (quoting Cong. Globe, 38th Cong., 1st Sess., 1451 (1864)), and "to protect national banks against intrusive regulation by the States.").  Thus, it is no surprise that courts have consistently found that a national bank exercising its federally-authorized powers is ordinarily not subject to state law.

In fact, congressional "grants of both enumerated and incidental powers to national banks are not normally limited by, but rather ordinarily pre-empt contrary state law." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32 (1996); *see also United States v. Locke*, 529 U.S. 89, 106-07 (2000) (holding that assumption of non-preemption is not triggered when the state regulates in an area where there has been a history of significant federal presence).  Because of this, it is not surprising that there is a long history of federal courts finding that state laws are preempted when they frustrate the exercise of a national bank's powers:

> National Banks are instrumentalities of the Federal government. . . .
> It follows that an attempt, by a State, to define their duties or control
> the conduct of their affairs is absolutely void, wherever such attempted
> exercise of authority expressly conflicts with the laws of the United States,
> and either frustrates the purpose of the national legislation or impairs the
> efficiency of these agencies of the Federal government to discharge the duties,
> for the performance of which they were created.

*Davis v. Elmira Savings Bank*, 161 U.S. 275, 283 (1896).

The long-established rule, reflected in numerous United States Supreme Court cases, establishes that congressional "grants of both enumerated and incidental `powers' to national banks [are] not normally limited by, but rather <u>ordinarily</u> <u>pre-empt</u> contrary state law." *Barnett Bank*, 517 U.S. at 32 (emphasis added).  The preemption of state law attempting to regulate national banks dates back to the earliest days of the Republic.  *See, e.g., McCulloch v. Maryland*, 17 U.S. 316, 426 (1819).  The OCC rules do no more than codify long-standing case law that prohibits states from interfering with the powers of national banks.

11

In addition, it is not necessary that the state and federal statues conflict in order for the state law to be preempted. In *Barnett Bank*, the United States Court held that Section 92 of the National Bank Act pre-empted a state law prohibiting national banks serving small towns from selling insurance policies. In doing so, the Court acknowledged that the two statutes did not impose directly conflicting duties on national banks, but found that there was a history of "interpreting grants of both enumerated and incidental powers to national banks as grants of authority not normally limited by but rather ordinarily pre-empting, contrary state law." *Barnett Bank*, 517 U.S. at 32. Thus, "Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." *Id*. at 33. As Congress has explicitly granted to national banks the power to negotiate promissory loans, lend money, and collect on money lent, *see* 12 U.S.C. § 24 (Seventh), and application of MGL ch. 140D affects and interferes with these powers, it must be preempted.

By the plaintiff's MGL ch. 140D claim, she would have this Court impose requirements on a national bank beyond those set forth by Congress. To so rule would impermissibly obstruct Champion's expressly authorized exercise of "safe and sound" banking practices in making its loans and such a ruling would obstruct, impair, or condition Champion's exercise of its lending, deposit-taking, or other powers granted to it under Federal law. 69 Fed. Reg. at 1904. Simply put, federal law preempts state law in this regard.

    B.    <u>State Laws Purporting to Regulate National Banks Are Largely Pre-empted by Federal Law.</u>

Massachusetts' Consumer Credit Cost Disclosure Act, MGL ch. 140D, *et seq.*, ("MCCDA") is preempted by the National Bank Act as it impermissibly imposes liability upon national banks beyond those allowable under TILA. In particular, MGL ch. 140D, § 10(f), among other things, allows a borrower to bring a claim for damages as well as to rescind a

transaction four years after the date of consummation, while under TILA, a borrower must bring a claim for damages within one year, *see* 15 U.S.C. § 1640(e), and an action to rescind the transaction within three years after consummation of the transaction, 15 U.S.C. § 1635(f).

While the Board of Govenors of the Federal Reserve System (the "Board"), pursuant to authority granted in 15 U.S.C. § 1633, has granted an exemption for certain credit transactions within Massachusetts from TILA's disclosure requirements, *see* 12 C.F.R. pt. 226, Supp. I § 29(a)(4), that exemption is limited. The Board exempted disclosures associated with credit transactions subject to MCCDA "from chapters 2 and 4 of the Federal act." *See* 48 Fed. Reg. 14882, 14890 (April 6, 1983). This exemption, however, does not extend to the liability provisions of TILA. 12 C.F.R. § 226.29(b)(1) ("No exemptions granted under this section shall extend to the civil liability provisions of sections [1640] and [1641] of the Act."). *See* 12 C.F.R. pt. 226, Supp. I § 29(b) ("The provision that an exemption may not extend to sections [1640 and 1641] of the Act assures that consumers retain access to both Federal and State Courts ...."). Thus, while Massachusetts may be exempt from TILA for purposes of certain disclosure requirements, there is nothing in TILA or the applicable regulations which empowers Massachusetts to impose civil liability in addition to, or different from that imposed by TILA.

The National Bank Act preempts MGL ch. 140D except for purposes of the limited disclosure exemption contained in 12 CFR § 226.29. The well-established authority holding that Massachusetts borrowers have a state cause of action for rescission is not inapposite. *See, e.g.*, *In re Fidler*, 226 B.R. 734, 736 (Bankr. D. Mass. 1998); *In re Myers*, 175 B.R. 122, 125-26 (Bankr. D. Mass. 1994); *Rodrigues*, 323 F. Supp. 2d at 210-11; *Melvin v. United States Bank, N.A. N.D.,* 2001 U.S. Dist. LEXIS 24716, *4 (D. Mass. 2001) (concluding that plaintiff had no viable rescission claims under TILA); 15 U.S.C. § 1633; 12 C.F.R. § 226.29; *Desrosiers v.*

13

*Transamerica Financial Corp.*, 212 B.R. 716, 722 (D. Mass. 1997) ("a Massachusetts resident…cannot rescind a credit transaction under § 1635 of [TILA])."[4]  The National Bank Act preempts MGL 140D to the extent that it allows a borrower to recover damages more than one year after the transaction was consummated.  This exemption, however, does not extend to the liability provisions of TILA. 12 C.F.R. § 226.29(b)(1) ("No exemptions granted under this section shall extend to the civil liability provisions of sections [1640] and [1641] of the Act.").  *See* 12 C.F.R. pt. 226, Supp. I § 29(b) ("The provision that an exemption may not extend to sections [1640 and 1641] of the Act assures that consumers retain access to both Federal and State Courts ....").

It is beyond the power of the Commonwealth to regulate national banks in this way.  *See* 69 F.R. 1904, § IV (noting that federal law authorized the OCC to issue rules that preempt state law in further of its responsibility to ensure that national banks are able to operate to the full extent authorized under federal law, notwithstanding inconsistent state restrictions, and in furtherance of their safe and sound operations).  Even if the Massachusetts disclosure requirements are substantially the same as the federal disclosure requirements in content, the extended period to bring an action constitutes an inconsistency with federal law, which is thereby preempted.  12 CFR § 226.28.

12 CFR § 226.28(a) provides in pertinent part:

Inconsistent disclosure requirements. (1) Except as provided in paragraph (d) of this section, state law requirements that are inconsistent with the requirements contained in chapter 1 (General Provisions), chapter 2 (Credit Transactions) . . . of the act and the implementing provisions of this regulation are preempted to the extent of the inconsistency.  . . .

Under 12 CFR § 226.28(a), "A State law is inconsistent [with federal law] if it requires a creditor

---

[4] This Court can also dismiss the plaintiff's claim for rescission brought under § 1635 of TILA.  *See, e.g.,*
   *Desrosiers,* 212 B.R. at 722 (holding that a claim for rescission under § 1635 of TILA is not a remedy
   available to a Massachusetts resident).

to make disclosures or take actions that contradict the requirements of the Federal law." By its own terms, allowing a borrower to bring a claim for a period greater than that allowed by federal law, contradicts federal law and is preempted.

In addition, effective February 12, 2004, the OCC—the federal regulator for Champion—issued regulations which codify common law preemption for certain actions (hereinafter "the Preemption Rules"), including the MGL 140D claims in this case. 69 FR 1904. The new rules apply with equal force to KeyBank—a national bank[5]—and to Champion—a division of KeyBank. *See* 12 CFR 5.34(e)(3) and 7.4006; *see also* 12 CFR 34.1(b); 69 Fed. Reg. at 1906.

In the instant case, the plaintiff's damage claims under MGL ch. 140D are preempted because they are both specifically preempted by federal law, not specifically exempted from TILA, and because applying MGL ch. 140D under these circumstances would obstruct, impair, or condition Champion's ability to fully exercise its Federally authorized real estate lending powers. 69 Fed. Reg. at 1917, § 34.3(a). The MGL ch. 140D claims arises from the allegation that the bank provided the plaintiff with incomplete material disclosures at the time of the closing of the loan secured by real estate, and several days thereafter, provided the plaintiff with all material disclosures. As set forth in section II *supra,* the bank is entitled to cure such alleged defects and the plaintiff can only rescind within three days from the bank having made the necessary disclosures. Specifically, the Preemption Rules authorize national banks to make real estate loans <u>without</u> <u>regard</u> <u>to</u> <u>state</u> <u>law</u> <u>limitations</u> concerning:

1)    Licensing, registration (except for purposes of service of process), filings, or reports by creditors;

---

[5] This Court can take judicial notice that KeyBank National Association, as indicated by its name, is a national bank. *See United States v. Harris*, 530 F.2d 576, 578 (4th Cir. 1976) ("If a bank is described by its chartered name as a 'national bank,' the district court and this court can take judicial notice that the bank is, in fact, a national bank.").

2)   The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements or risk mitigants, in furtherance of safe and sound banking practices;

3)   Loan-to-value ratios;

4)   The terms of credit, amortizations of loans, balance, payments due, minimum payments, or term to maturity of the loan;

5)   The aggregate amount of funds that may be loaned upon the security of real estate;

6)   Escrow accounts, or similar accounts;

7)   Security property, including leaseholds;

8)   Access to, and use of, credit reports;

9)   <u>Disclosure</u> and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or <u>other</u> <u>credit</u> <u>related</u> <u>documents</u>;

10)  Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

11)  Disbursements and repayments;

12)  Rates of interest on loans;

13)  Due-on-sale clauses; and

14)  Covenants and restrictions that must be contained in a lease.

69 Fed. Reg. 1917, § 34.4 (emphasis added).  What these rules make clear is that a bank must be allowed to perform its daily business activities without interferences by state law.

Here, MGL ch. 140D—a state disclosure law—is specifically preempted by federal law, particularly in light of the fact that it imposes a burden by increasing a national bank's exposure to a rescission claim and a claim for damages, for up to three years more than the federal law allows a borrower to bring a claim.  *Compare* 15 U.S.C. § 1640 (one year statute of limitations) *with* MGL ch. 140D (four year statute of limitations).

## CONCLUSION

As the claims are time-barred and preempted, this Court should grant Champion's Motion to Dismiss.

Respectfully submitted,

CHAMPION MORTGAGE, A DIVISION OF
KEYBANK NATIONAL ASSOCIATION

By its attorneys,

NIXON PEABODY LLP

Dated:  March 24, 2005                By:  /s/ W. Scott O'Connell
                                            W. Scott O'Connell, BBO No. 559669
                                            Patricia L. Peard, BBO No. 642213
                                            889 Elm Street
                                            Manchester, NH  03101
                                            soconnell@nixonpeabody.com
                                            ppeard@nixonpeabody.com
                                            (603) 628-4000

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March, 2005 a copy of the forgoing
Memorandum of Law was forwarded by the Court's ECF system to Christopher M. Lefebvre,
Esquire, counsel of record, at Post Office Box 479, Pawtucket, Rhode Island 02862, counsel for
the plaintiff.

/s/W. Scott O'Connell
W. Scott O'Connell

M119788.1

17